**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARÇELIK, A.Ş,        )<br>               )<br>     Plaintiff,     )<br>               )<br>     v.              )<br>               )<br>E. I. DU PONT DE NEMOURS AND COMPANY, )<br>               )<br>     Defendant.    )<br>               ) | Civil Action No.: 1:15-cv-00961 (LPS) |

**OPENING BRIEF IN SUPPORT OF DEFENDANT E.I. DU PONT DE NEMOURS AND
COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Dated: November 13, 2015

OF COUNSEL:

Peter L. Haviland (*pro hac to be filed*)
Scott S. Humphreys (*pro hac to be filed*)
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: havilandp@ballardspahr.com
      humphreyss@ballardspahr.com

Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: moskowb@ballardspahr.com
      caesare@ballardspahr.com

*Counsel for Defendant E.I. du Pont de
Nemours and Company*

# TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 1

III.  STATEMENT OF FACTS .............................................................................................. 3

IV.  ARGUMENT ................................................................................................................. 5

A.  Arcelik Has Failed to Join Necessary and Indispensable Parties Whose
Presence Would Destroy Diversity Jurisdiction ...................................................... 5

1.  Foreign Entities are Necessary Parties to this Lawsuit ............................... 6

a.  DuPont China ................................................................................... 7

b.  DuPont India .................................................................................... 8

c.  EPCOS India and EPCOS AG ........................................................ 8

2.  These Foreign Entities are Indispensable ................................................... 9

B.  Alternatively, the Complaint May Be Dismissed on *Forum Non Conveniens*
Grounds ................................................................................................................. 11

C.  Each of Arcelik's Six Causes of Action Must be Dismissed for Failure to State
a Claim .................................................................................................................. 12

1.  Arcelik's Claim for Breach of Implied Warranty Fails as a Matter
of Law (Claim Three) ............................................................................... 12

2.  Arcelik's Claim for Negligent Manufacturing Fails Because
DuPont Did Not Manufacture Any Product at Issue (Claim Five) ........... 14

3.  Arcelik's Claim for Negligent Misrepresentation Fails because
Arcelik had no Business Relationship with any DuPont Entity
(Claim One) .............................................................................................. 15

4.  Arcelik's Fraud Claims Fail on the Face of the Complaint ...................... 16

a.  Fraudulent Misrepresentation (Claim Two) .................................. 16

b.  Delaware Consumer Fraud Act (Claim Four) ............................... 17

5.  Arcelik Has Failed to Plead a Claim for Tortious Interference with
a Contract (Claim Six) .............................................................................. 18

V.  CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*A&M Gregos Inc. v. Robertory*,
384 F. Supp. 187 (E.D. Pa. 1974) ........................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 19

*Aspen Advisors LLC v. United Artists Theatre Co.*,
861 A.2d 1251 (Del. 2004) ................................................................. 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... 19, 20

*Castaldo v. Pittsburgh-Des Moines Steel Co.*,
376 A.2d 88 (Del. 1977) ...................................................................... 9

*Cropper v. Rego Distrib. Ctr., Inc.*,
542 F. Supp. 1142 (D. Del. 1982) ........................................................ 9

*D.R.R., L.L.C. v. Sears, Roebuck and Co.*,
949 F. Supp. 1132 (D. Del. 1996) ....................................................... 17

*Danforth v. Acorn Structures, Inc.*,
608 A.2d 1194 (Del. 1992) ................................................................. 15

*Delmarva Power & Light v. Meter-Treater, Inc.*,
218 F. Supp. 2d 564 (D. Del. 2002) .................................................... 15

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
619 F.3d 288 (3d. Cir. 2010) ............................................................. 11

*DiIenno v. Libby Glass Div.*,
668 F. Supp. 373 (D. Del. 1987) ........................................................ 13

*Eames v. Nationwide Mut. Ins. Co.*,
2008 WL 4455743 (D. Del. Sept. 30, 2008) ...................................... 4, 16

*Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters, Inc.*,
506 F.2d 757 (5th Cir. 1975) ............................................................. 10

*Ethypharm S.A. France v. Bentley Pharm., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005) ........................................ 6, 7, 8, 9, 10

*Field v. Volkswagenwerk AG*,
626 F.2d 293 (3d Cir. 1980) .............................................................. 10

*Freeman v. Northwest Acceptance Corp.*,
754 F.2d 553 (5th Cir. 1985) .............................................................. 7

*Gay v. AVCO Fin. Serv., Inc.*,
769 F. Supp. 51 (D.P.R. 1991) ............................................................ 7

*Goodrich v. E.F. Hutton Group, Inc.*,
542 A.2d 1200 (Del. Ch. 1988) ......................................................... 18

*In re Asbestos Litig.*,
  2015 WL 5168121 (Del. Super. Ct. Sept. 1, 2015); ............................................. 20

*In re TMJ Implants Prod. Liab. Litig.*,
  872 F. Supp. 1019 (D. Minn. 1995) ...................................................................... 15

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
  532 A.2d 983 (Del. Ch. 1987) .............................................................................. 19

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
  456 F. Supp. 831 (D. Del. 1978) ............................................................................. 9

*Jardel Co., Inc. v. Hughes*,
  523 A.2d 518 (Del. Super. Ct. 1987) ..................................................................... 17

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
  201 F.R.D. 337 (D. Del. 2001) ........................................................................... 6, 9

*Kuhn Constr. Co. v. Ocean and Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012) ...................................................................... 15

*Layfield v. Beebe Med. Ctr., Inc.*,
  1997 WL 716900 (Del. Super. Ct. July 18, 1997) ................................................. 19

*Lecates v. Hertrich Pontiac Buick Co.*,
  515 A.2d 163 (Del. Super. Ct. 1986) ..................................................................... 14

*Lincoln Nat. Life Ins. Co. v. Snyder*,
  722 F. Supp. 2d 546 (D. Del. 2010) ................................................................. 15, 16

*Lloyd v. Jefferson*,
  53 F. Supp. 2d 643 (D. Del. 1999) ........................................................................ 19

*Lopez v. Shearson Am. Express, Inc.*,
  684 F. Supp. 1144 (D.P.R. 1988) ............................................................................ 7

*Marnavi S.p.A v. Keehan*,
  900 F. Supp. 2d 377 (D. Del. 2012) ........................................................................ 6

*Marshall v. Priceline.com, Inc.*,
  2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ............................................... 18

*Martinez v. E.I. du Pont De Nemours and Co.*,
  82 A.3d 1 (Del. Super. Ct. 2012) ..................................................... 7, 8, 9, 10, 11, 14

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) ............................................................................. 6

*Outdoor Techs., Inc. v. Allfirst Fin. Inc.*,
  2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001) ................................................. 15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .................................................................................. 4

*Polanco v. H.B. Fuller Co.*,
  941 F. Supp. 1512 (D. Minn. 1996) ......................................................................... 7

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968)................................................................................... 11

*Raytheon Co. v. Cont'l Cas. Co.*,
   123 F. Supp. 2d 22 (D. Mass 2000) ........................................................... 6

*S&R Assocs. v. Shell Oil Co.*,
   725 A.2d 431 (Del. Super. Ct. 1998) ....................................................... 12

*Sellon v. General Motors Corp.*,
   571 F. Supp. 1094 (D. Del. 1983) ............................................................ 20

*Stephenson v. Capano Dev., Inc.*,
   462 A.2d 1069 (Del. 1983) ...................................................................... 16

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   872 A.2d 611 (Del. Ch. 2005) ................................................................. 18

*Windt v. Qwest Commc'ns Int'l*,
   529 F.3d 183 (3d Cir. 2008) ............................................................... 11, 12

**Statutes**

28 U.S.C. § 1332 ............................................................................................. 9

Fed. R. Civ. P. 9(b) ....................................................................................... 16

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 12

Fed. R. Civ. P. 12(b)(7) ................................................................................. 1

Fed. R. Civ. P. 19(b) ..................................................................................... 10

**Other Authorities**

6 *Del. C.* § 2-103(1)(d) ................................................................................. 18

6 *Del. C.* § 2-315 ......................................................................................... 13

6 *Del. C.* § 2-318 ......................................................................................... 13

6 *Del. C.* § 2512 ........................................................................................... 12

6 *Del. C.* §§ 2511-2527 ............................................................................... 16

10 *Del. C.* § 8121 ......................................................................................... 20

Article 187 of the Implementing Regulations of
   China's General Principles of the Civil Law ............................................ 20

Article 45 of the Product Quality Law of the People's Republic of China ............... 20

India Limitation Act, 1963,
   Part VII, Section 78 .................................................................................. 20

# I. NATURE AND STAGE OF PROCEEDINGS

Plaintiff Arcelik, A.S. ("Arcelik") filed this action against E.I. du Pont de Nemours and Company ("the U.S. Parent" or "DuPont") on October 22, 2015, seeking damages related to Arcelik's recall of faulty clothing dryers. DuPont moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(7) for failure to join a party under Rule 19. This is DuPont's Opening Brief in support of its Motion to Dismiss.

# II. SUMMARY OF ARGUMENT

Plaintiff Arcelik, an alien Turkish entity, has filed a meritless product liability suit against DuPont, with no good faith basis for prosecuting its action against the U.S. Parent in a United States Court.[1]

Although obfuscated by Arcelik's pleading, none of Arcelik's alleged product failures took place in the United States. A German entity, EPCOS A.G. ("EPCOS"), allegedly sold faulty capacitors to Arcelik which caused Arcelik clothing dryers sold outside of the United States to catch fire. EPCOS in turn bought nylon resin material from a foreign subsidiary of DuPont. Arcelik alleges that the nylon resin, rather than manufacturing, design or testing failures by either EPCOS or Arcelik, was the source of the EPCOS capacitor failure and in turn the Arcelik dryer failure.

Yet Arcelik has failed to name as defendants EPCOS, its direct supplier, or either of the foreign subsidiaries of DuPont that actually manufactured and sold nylon resin to EPCOS. The reason is transparent: if any of these indispensable foreign entities were added it would destroy diversity jurisdiction and Arcelik's claimed access to this Court. Fed. R. Civ. P. 19.

---

[1] Arcelik's complaint ("Complaint") begins with a knowing falsehood: that certain "batches" of the nylon resin Zytel® FR50 NC010 sold to an Arcelik component supplier were "defective" and that "DuPont has itself concluded that its product was defective." In fact, the Zytel® nylon resin at issue at all times met all specifications for which it was warranted. It was, by no applicable legal standard, "defective."

The U.S. Parent that Arcelik has sued was neither the manufacturer nor the seller of the nylon resin about which Arcelik complains. *See* Declaration of Richard Mayo ("Mayo Decl."), attached as Exhibit A. Arcelik has improperly and without justification disregarded the corporate form, failing even to mention the U.S. Parent's foreign subsidiaries who were the actual parties to foreign contracts governing the manufacture and sale of the products at issue.

*Forum non conveniens* standards also apply. Sales of EPCOS capacitors to Arcelik occurred in Europe. Sales of nylon resin to EPCOS occurred in India, governed by contractual remedies limitations requiring dispute resolution in the India Courts. Alleged manufacturing "defects" of the nylon resin implicate manufacturing operations in China, where the manufacturer of the nylon resin operates. Arcelik's alleged economic losses arose from dryer failures which occurred entirely outside of the United States. Witnesses, including executives of Arcelik, EPCOS and DuPont subsidiaries in India and Asia, as well as physical evidence, are outside of the United States.

Beyond these dispositive jurisdictional bars, blackletter product liability law requires dismissal of each of Arcelik's causes of action. The public materials cited by Arcelik as "representations" by DuPont expressly disclaimed the product's suitability for any particular purpose, and further disclaimed that data published could be relied upon to create specifications for its use as a material for any other product. Arcelik's implied warranty claim fails because Delaware law does not permit corporate entities to assert third-party warranty claims, and its negligent manufacturing claim fails for the simple reason that the U.S. Parent did not manufacture the product at issue. Arcelik's negligent misrepresentation claim must be dismissed because Delaware law does not permit such a claim in the absence of a business relationship, which Arcelik did not have with the U.S. Parent or any subsidiary regarding the actual product at

issue, Zytel® FR50 NC010.

Arcelik's boilerplate allegations of fraud, wholly devoid of any factual basis, fare no better.  Notwithstanding more than one hundred paragraphs of pleading, the Complaint contains no allegations – not one – that the U.S. Parent or any of the foreign subsidiaries was aware of the alleged manufacturing "defect" prior to selling the supposedly "defective" lots of Zytel®.

In short, Arcelik's Complaint fails as a matter of procedure, jurisdiction and substance, and should be dismissed in its entirety, with prejudice.

## III.   STATEMENT OF FACTS

There are approximately 600 different nylon resin products that carry the brand name Zytel®, which are typically sold in pellet form to customers around the world.  *See* Mayo Decl. at ¶ 2.  Customers process the resin for use in a wide variety of products.  *Id*.  Those products often are sold to third parties who have no contractual relationship with the Zytel® manufacturer. *Id*.  For that reason, among others, no warranty is given for the suitability of any particular Zytel® products  for any particular purpose.  *Id*.  In fact, publications regarding Zytel® contain express disclaimers identical or similar to the following:

> The information provided in this data sheet corresponds to our knowledge on the subject at the date of its publication.  This information may be subject to revision as new knowledge and experience becomes available.  The data provided fall within the normal range of product properties and relate only to the specific material designated; these data may not be valid for such material used in combination with any other materials, additives or pigments or in any process, unless expressly indicated otherwise.  The data provided should not be used to establish specification limits or used alone as the basis of design; they are not intended to substitute for any testing you may need to conduct to determine for yourself the suitability of a specific material for your particular purposes.  Since DuPont cannot anticipate all variations in actual end-use conditions DuPont makes no warranties and assumes no liability in connection with any use of this information….

[*See, e.g.,* the *DuPont™ Zytel® FR50 NC010 Product Information,* the *DuPont™ Zytel® FR50 BK505 Product Information,* the March 2003 *DuPont*^TM *Zytel® Product Guide and Properties*, and the June 2001 *DuPont™ Minlon® and Zytel® Design Information – Module II,* cited in

paragraphs 41-42, 47-48, and 50 of the Complaint, and attached hereto as Exhibits B, C, D, and E, respectively].[2]

The particular lots of Zytel® at issue here, Zytel® FR50 NC010, were manufactured in China between October 2010 and August 2012 by E.I. DuPont China Holding Co. Ltd. ("DuPont China"), an indirect DuPont subsidiary organized under the laws of and operating in China. Mayo Decl. at ¶¶ 4-5. The seller of these lots was E.I. Du Pont India Private Ltd. ("DuPont India"), which purchased the lots from DuPont China and sold them to EPCOS India Private Ltd., ("EPCOS India") pursuant to specific terms and conditions. *Id.* at ¶¶ 4-8. Those conditions reflect that the Zytel® FR50 NC010 was sold according to "DuPont Standard Specifications," which were limited to "Ash Content Percentage" and "Water Content at Packout Percentage." *Id.* at ¶ 8. The terms also included the following venue provision: "All contracts of the Company are subject to the jurisdiction of the Courts of the State of Haryana [India] and all claims, actions and petitions arising out of or in connection with this contract shall be instituted in the courts at Gurgaon [India]." *Id.* EPCOS India apparently used the Zytel® FR50 NC010 to manufacture electrical capacitors, which EPCOS AG, a German entity and subsidiary of TDK Corporation, a Japanese corporation, thereafter sold to Arcelik. *Id.* ¶¶ 7, 11; Compl. at ¶¶ 16, 104. The Zytel® FR50 NC010 was sold to EPCOS, not Arcelik. Mayo Decl. ¶¶ 4, 9.

Arcelik allegedly used the EPCOS capacitors as component parts in consumer appliances sold in numerous countries, but not in the United States. *Id.* ¶¶ 10-11; Compl. at ¶ 14.

Although the Complaint alleges that misrepresentations were made concerning the specifications for Zytel®, the Complaint reveals that Arcelik has confused the product specification sheets for different grades of Zytel®. For example, the specifications cited in

---

[2]      "A court may consider an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Eames v. Nationwide Mut. Ins. Co.,* 2008 WL 4455743 (D. Del. Sept. 30, 2008) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).

paragraph 50 of the Complaint are not from Zytel® FR50 NC010 but instead appear to be taken from the specification sheet for Zytel® FR50 BK505, a different grade than the FR50 NC010 at issue here. *Compare* Ex. B, the Product Information sheet for Zytel® FR50 NC010, *with* Ex. C, the Product Information sheet for Zytel® FR50 BK505. Similarly, the March 2003 document titled *DuPont™ Zytel® Product Guide and Properties*, and the June 2001 document titled *DuPont™ Minlon® and Zytel® Design Information – Module II,* cited in paragraphs 41-42 and 47-48 of the Complaint do not include *Zytel®* FR50 NC010 in the list of grades addressed in those documents. *See* Exs. D and E.

Although DuPont India supplied the Zytel® FR50 NC010 at issue to EPCOS India between October 2010 and August 2012, it was not until in or around November of 2012 that EPCOS made any complaint to DuPont India concerning the affected Zytel®, and not until early 2013 that Arcelik complained concerning their alleged product failures. Mayo Decl. at ¶ 12. Since 2012, EPCOS has continued to assert claims for damages related to the Zytel® FR50 NC010 lots arising out of EPCOS' sale of capacitors containing Zytel® FR50 NC010 to Arcelik. Although EPCOS has not commenced litigation, those claims have not been withdrawn. *Id.* at ¶ 13. Since early 2013 – more than two years ago – Arcelik has also intermittently asserted claims against DuPont for damages related to its use of the EPCOS capacitors. *Id.* Arcelik's delay in filing suit raises yet another procedural bar to its claim: violation of the applicable statutes of limitations. (*See infra* at note 9.)

IV. **ARGUMENT**

A. **Arcelik Has Failed to Join Necessary and Indispensable Parties Whose Presence Would Destroy Diversity Jurisdiction**

Arcelik's complaint disregards the corporate form and wrongly seeks to hold the U.S. Parent liable for the manufacture, sale and alleged warranty of product carried out by DuPont's

foreign subsidiaries.  "Under Delaware law, '[d]isregard of the corporate entity is appropriate only in exceptional circumstances'" *Marnavi S.p.A v. Keehan,* 900 F. Supp. 2d 377, 392 (D. Del. 2012) (quoting *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 270 (D. Del. 1989)).  "Under ordinary circumstances, a parent corporation will not be held liable for the obligations of its subsidiary." *Mobil Oil Corp.*, 718 F. Supp. at 270 (dismissing claims against the parent company premised on its out-of-state subsidiary's alleged patent infringement)). The party who seeks to disregard the corporate form bears the burden of establishing "fraud or injustice" in the use of the corporate form, which "must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *Marnavi S.p.A.,* 900 F. Supp. 2d at 392 (citations omitted).  Arcelik's complaint is wholly devoid of any allegations of fraud or misuse of the corporate form, and fails to state a claim against the U.S. Parent.

Arcelik's attempt to disregard the corporate form additionally fails because each of the foreign entities – the DuPont foreign subsidiaries and the foreign manufacturer of the capacitors which allegedly caused Arcelik's claimed damages – is necessary and indispensable under Rule 19 of the Federal Rules of Civil Procedure.  Rule 19 governs when potential parties to an action must be joined.  *See Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 431 (D. Del. 2005).  "When making a Rule 19 determination, the Court may consider evidence outside the pleadings." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001) (citing *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass 2000); *A&M Gregos Inc. v. Robertory*, 384 F. Supp. 187, 193 (E.D. Pa. 1974)).

### 1.     Foreign Entities are Necessary Parties to this Lawsuit

Rule 19(a) dictates that a party is "necessary," and therefore must be joined to a litigation, if:  (1) complete relief is not possible in the party's absence, or (2) that party claims an interest in the subject of the litigation, and resolution without that party's involvement would

(i) impair or impede that party's ability to protect its own interests, or (ii) subject an existing party to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. *See Ethypharm*, 388 F. Supp. 2d at 431. Applying these factors, Arcelik has failed to name multiple necessary parties.

### a. DuPont China

Arcelik alleges that particular "batches" of Zytel® FR50 NC010 were defectively manufactured. *See* Compl. ¶¶ 95-102. Complete relief, therefore, is not possible without the manufacturer, DuPont China. In *Martinez v. E.I. du Pont De Nemours and Co.*, 82 A.3d 1, 21 (Del. Super. Ct. 2012)[3], as here, plaintiff sued the U.S. Parent for injuries allegedly caused by a foreign subsidiary. The Court concluded that the foreign subsidiary was a necessary party:

> If the jury accepts DuPont's argument that [the foreign subsidiary] was responsible for the plant and work site, [the foreign subsidiary] will be at least partially liable for damages. In a potential later trial in the appropriate forum, [the foreign subsidiary] would claim that DuPont should be solely responsible for [plaintiff's] injuries. This circumstance would leave both DuPont and [the foreign subsidiary] subject to a substantial risk of incurring double or otherwise inconsistent obligations, the precise result that Rule 19 seeks to prevent.

*Id.* at 21. Because the plaintiff's claims were directed at the foreign subsidiary, the Court concluded that the subsidiary had "a paramount interest in the subject of [the] litigation," and "[i]ts presence is crucial to the determination of the important issue of liability." *Id.* As the Court succinctly concluded, "[the subsidiary] is more than a witness to the activities at issue in this case – it is an active participant." *Id.* (emphasis added).

---

[3]    *Martinez* is based on Delaware Superior Court Civil Rule 19, which mirrors its federal counterpart, and *Martinez* expressly relies upon federal precedent in interpreting it. *See Martinez*, 82 A.3d at 21-22. *Martinez* observes that federal courts in similar cases "have consistently held that a subsidiary is a necessary party in a suit against the subsidiary's parent corporation where the subsidiary is an active participant in the activity that is alleged as the basis for the recovery." *Id.* (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559-60 (5th Cir. 1985); *Ethypharm*, 388 F. Supp. 2d at 431; *Jurimex*, 201 F.R.D. at 340; *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1520-23 (D. Minn. 1996); *Gay v. AVCO Fin. Serv., Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991); *Lopez v. Shearson Am. Express, Inc.*, 684 F. Supp. 1144 (D.P.R. 1988)).

The same result is required here, where DuPont China, as the manufacturer of the allegedly defective product, is "more than a witness to the activities" but rather "is an active participant." *Martinez*, 82 A.3d at 21. As such, its presence is necessary to this litigation.

### b. DuPont India

Arcelik also seeks to prove that delivery of the allegedly defective Zytel® FR50 NC010 breached an implied warranty of fitness for a particular purpose. *See* Compl. ¶¶ 80-88. Complete relief, therefore, is not possible without the seller and alleged warrantor, DuPont India. Arcelik cannot deny that an alleged warrantor of a product has a direct interest in the issue of whether that alleged warranty was breached. Indeed, to the extent that DuPont India warranted the product, it would be the only party with any potential liability on that claim. That fact alone renders it a necessary party. *See Ethypharm*, 388 F. Supp. 2d at 431 (holding that complete relief cannot be afforded in absence of the only party liable for an obligation under contract).

Moreover, DuPont India's terms and conditions of sale with EPCOS India contain a venue provision requiring all claims to be adjudicated in India. *See* Mayo Decl. ¶ 8. DuPont India inarguably has an interest in any decisions regarding that provision.

### c. EPCOS India and EPCOS AG

Arcelik did not purchase Zytel® FR50 NC010. EPCOS India purchased it, and allegedly used it as a component part in the manufacture of electrical capacitors that its German affiliate, EPCOS AG, then sold to Arcelik. Mayo Decl. at ¶¶ 4-9. Those two entities – EPCOS India and EPCOS AG – are necessary parties under Rule 19(a).

Arcelik does not allege that it had any contractual relationship with, or actually met with or engaged in direct communications concerning Zytel® FR50 NC010's use in its clothing dryers with either the U.S. Parent or any subsidiary prior to the commencement of this dispute. Instead, by its own admission, Arcelik's communications regarding the electrical capabilities of

the capacitors were with EPCOS AG. *See* Compl. ¶¶ 104-05. Moreover, Arcelik alleges that

EPCOS AG relied on DuPont's alleged representations regarding the electrical characteristics of

Zytel® FR50 NC010. *Id.* ¶ 107. Clearly, the EPCOS entities are "more than a witness to the

activities at issue in this case – [they are] active participant[s]." *Martinez*, 82 A.3d at 21; *see*

*also Ethypharm*, 388 F. Supp. at 431 (concluding that absent party was necessary because

plaintiffs' interactions were almost entirely with the absent party and not with defendant);

*Jurimex*, 201 F.R.D. at 340 (same).

If Arcelik were to recover damages in this case, involved foreign subsidiaries of the U.S.

Parent could be subject to additional liability through a subsequent action filed by the EPCOS

entities. Similarly, EPCOS has a direct interest in the determination of whether the Zytel® FR50

NC010 it purchased was defective, or if any implied warranties existed or were breached.[4]

Although it has not filed a lawsuit, EPCOS has demanded recoveries involving DuPont China

and DuPont India, including indemnification for damages asserted by Arcelik against EPCOS.

*See* Mayo Decl. at ¶¶ 12-13.

## 2. These Foreign Entities are Indispensable

Although necessary, the EPCOS entities and the foreign DuPont entities cannot be joined

without destroying this Court's jurisdiction. "When an alien sues a citizen of a state and another

alien, the rule of complete diversity divests a court of jurisdiction under 28 U.S.C. § 1332."

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 835-36, n. 6 (D. Del.

---

[4]     On this point, it should be noted that DuPont India was a raw material supplier to EPCOS India, and EPCOS AG was a component part supplier to Arcelik. As such, this case implicates the raw material and component part supplier defenses, to which EPCOS India and EPCOS AG are crucial. Indeed, the determination of whether the Zytel® FR50 was inherently defective turns, at least in part, on the purpose for which EPCOS India purchased it, and the extent of DuPont India's involvement, if any, in EPCOS India's decision. *See Cropper v. Rego Distrib. Ctr., Inc.,* 542 F. Supp. 1142, 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby" (citing *Castaldo v. Pittsburgh-Des Moines Steel Co.,* 376 A.2d 88, 90 (Del. 1977)).

1978) (citations omitted); *see also Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980) (the requirement of complete diversity "has been applied to deny jurisdiction in an action by an alien against citizens of a state and another alien" (citing *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters, Inc.*, 506 F.2d 757 (5th Cir. 1975)).[5]

Because the necessary parties cannot be joined, the Court must next determine if they are indispensable, i.e., whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Ethypharm*, 388 F. Supp. 2d at 431.

Equity and good conscience – not to mention logic and common sense – dictate that all four necessary parties are indispensable. A dispute premised upon allegedly defective products plainly requires the entities that manufactured, sold and allegedly warranted the products.

"Any judgment entered without the presence of [the foreign entities] subjects DuPont to being judged solely responsible for a liability which, if it exists at all, it undoubtedly shares." *Martinez*, 82 A.3d at 23. In that event, the U.S. Parent may be forced to pursue a separate lawsuit for indemnity or contribution, "an unnecessary waste of time and expense that would not be incurred if these claims were litigated in the appropriate forum against the proper defendant." *Id*. at 24. The EPCOS and foreign DuPont entities would also suffer prejudice if a judgment adverse to their interests were used against them in a subsequent action. *Id*.

As to the second factor – whether the prejudice can be eliminated by shaping the relief – no modification to a judgment could reasonably or adequately protect either the U.S. Parent or the foreign entities from prejudice. *Id*. In order to prevail on its claims, Arcelik will have to prove, at a minimum, that (1) the Zytel® FR50 NC010 and the EPCOS capacitors were

---

[5]     Additionally, this Court lacks personal jurisdiction over these foreign entities. No events involving those entities occurred in the United States, let alone in Delaware.

defective; and (2) that DuPont India, EPCOS India and EPCOS AG breached various contracts and warranties. Those findings are unavoidable, and inarguably prejudicial to the absent entities.

Regarding the third factor – whether a judgment rendered in the absence of the necessary parties would be adequate – the U.S. Supreme Court has interpreted that element as referring to the interests of the court and the public "in settling disputes by wholes, wherever possible." *Martinez*, 82 A.3d at 24 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)). Although no court may be able to hear all interested parties in a single dispute, EPCOS India and DuPont India must resolve their claims in an Indian court in accordance with the terms of their contract. *See* Mayo Dec. ¶ 8. And Arcelik and EPCOS AG can resolve their claims in the European Union. But there is no justification for the expenditure of U.S. judicial resources on a lawsuit against only the U.S. Parent, which was not a party to the relevant transactions.

The conclusion is inescapable: all four foreign entities (EPCOS AG, EPCOS India, DuPont India and DuPont China) are necessary and indispensable parties to the claims that Arcelik has asserted in this action. Because joining even one of them would destroy this Court's jurisdiction, the Complaint must be dismissed with prejudice.

**B.      Alternatively, the Complaint May Be Dismissed on *Forum Non Conveniens* Grounds**

A complaint should be dismissed for *forum non conveniens* if (1) an adequate forum exists in which the parties can litigate the claim, and (2) the balance of private and public interest factors favor dismissal. *See Delta Air Lines, Inc. v. Chimet, S.p.A.,* 619 F.3d 288, 294-95 (3d. Cir. 2010); *Windt v. Qwest Commc'ns Int'l,* 529 F.3d 183, 189 (3d Cir. 2008).

India is an alternative adequate forum to litigate this action. DuPont India is amenable to process in India, and its terms of sale with EPCOS India included an express forum provision

which provides that all disputes shall be litigated in India.

Not only is India proper, but the private and public factors weigh in favor of litigating the case in India or are neutral. Nearly all evidence and witnesses are located in India, where the sale occurred, or in China, where the Zytel® resin was manufactured. Additional witnesses regarding the dryers and alleged capacitor malfunctions are located primarily in Europe, and Arcelik itself is located in Turkey and does business in India. As a foreign citizen, Arcelik's decision to file suit in the United States is afforded little or no deference. *See Windt,* 529 F.3d at 190 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

**C.     Each of Arcelik's Six Causes of Action Must be Dismissed for Failure to State a Claim**

Under product liability law, each of Arcelik's causes of action fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

**1.     Arcelik's Claim for Breach of Implied Warranty Fails as a Matter of Law (Claim Three)**

Arcelik attempts to state a third-party claim under the Delaware Uniform Commercial Code ("U.C.C.") for a breach of the implied warranty of fitness for a particular purpose. *See* Compl. ¶¶ 80-88. The relevant section of U.C.C. states:

> A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.
>
> [6 *Del. C.* § 2-318.]

Arcelik's implied warranty claim fails for at least four independent reasons.

First, Arcelik lacks standing to bring a claim under Section 2-318, which, by its plain language, is limited to "natural person[s]." *Id.* That limitation reflects a deliberate choice by the

Delaware legislature among competing versions of the U.C.C., evidencing "an intention to exclude legal entities from protection." *S&R Assocs. v. Shell Oil Co.*, 725 A.2d 431, 438 (Del. Super. Ct. 1998) (dismissing limited partnership's implied warranty claim for lack of standing because plaintiff was not a "natural person.").

Second, even if Arcelik had standing, it has asserted its claim against the wrong party. Delaware's U.C.C. imposes an implied warranty of fitness for a particular purpose in the following circumstance:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

[6 *Del. C.* § 2-315.]

"Seller" is a defined term, limited to "a person who sells or contracts to sell goods." 6 *Del. C.* § 2-103(1)(d). The U.S. Parent did not sell the Zytel® FR50 NC010 used in the EPCOS capacitors. *See* Mayo Decl. ¶¶ 6-9. That product was sold by DuPont India, which is not a party to this case. *Id.*

Third, Arcelik has not adequately pled an implied warranty claim. To establish an implied warranty for a particular purpose, a plaintiff must prove that: (1) the buyer has a special purpose for certain goods; (2) the seller knew or had reason to know of that purpose; (3) the seller knew or had reason to know that the buyer was relying on the seller's superior skill to select goods that fulfilled that purpose; and (4) the buyer in fact relied on the seller's superior skill. *See DiIenno v. Libby Glass Div.*, 668 F. Supp. 373, 376 (D. Del. 1987).

The complaint fails to allege a single communication specifically between the U.S. Parent and either Arcelik or EPCOS India regarding Zytel® FR50 NC010. Moreover, there are no allegations that any DuPont entity was apprised of the purpose for which either EPCOS India or

13

Arcelik intended to use the product, or that either EPCOS India or Arcelik was relying on any DuPont entity's superior skill to select goods that fit that intended use.[6]

Fourth, Arcelik's implied warranty claim is subject to the same disclaimers, limitations and conditions contained in the original sale agreement between DuPont India and EPCOS India. As explained in *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 166 (Del. Super. Ct. 1986).

> A secondary purchaser who claims the protection of a warranty is subject to the same disclaimers, modifications or remedy limitation clauses that were the basis of the underlying sales agreement between the original purchaser and seller. Although warranties that a seller extends to its immediate purchaser also reach any person "who may reasonably be expected to use" the goods, § 2-318, modifications or exclusions of warranty rights are equally operative against subsequent purchasers who claim to be beneficiaries of such warranties.

In other words, whatever limitations – including limitations on remedies – apply to a claim by EPCOS India apply to a claim by Arcelik.

### 2. Arcelik's Claim for Negligent Manufacturing Fails Because DuPont Did Not Manufacture Any Product at Issue (Claim Five)

Arcelik's negligent manufacturing claim relies on the allegation that the U.S. Parent manufactured the allegedly defective Zytel®. *See* Compl. ¶¶ 96-97. But the Zytel® FR50 NC010 at issue here was manufactured by DuPont China. Mayo Decl. at ¶¶ 4-5. There is no basis to ignore the distinction between those separate legal entities. *Martinez*, 82 A.3d at 14

---

[6]      The alleged generic representations by the U.S. Parent regarding "Zytel" do not save Arcelik's claim. *See* Compl. ¶¶ 41-57. Zytel® is not a single product, but rather a trademark name encompassing approximately 600 different products manufactured by various DuPont entities. *See* Mayo Decl. ¶ 2. The specific product at issue here is Zytel® FR50 NC010, manufactured by DuPont China and sold by DuPont India. *Id*. ¶¶ 4-5.

Even if the alleged representations were relevant to Zytel® FR50 NC010, the various documents cited by Arcelik contain express disclaimers of any warranties and instruct purchasers not to rely on the information in assessing a specific application of the product.  For example, the specification sheets for Zytel® FR50 NC010 and Zytel® FR50 BK505, the March 2003 *DuPont - Zytel® Product Guide And Properties*, and the June 2001 *DuPont-Minlon® and Zytel® Product Guide and Properties,* cited in paragraphs 41-42, 47-48, and 50 of the complaint, and attached hereto as Exhibits B, C, D and E, respectively, contain express disclaimers of warranties and expressly disclaim that any data concerning Zytel® may be relied upon to create specifications for its use.

("Referring to DuPont interchangeably with [the foreign subsidiary] in the Complaint, where the allegations are obviously intended to apply to the entity that owned and operated the plant, does not alter the reality of the entities' corporate structures.").[7]

### 3. Arcelik's Claim for Negligent Misrepresentation Fails because Arcelik had no Business Relationship with any DuPont Entity (Claim One)

To prove negligent misrepresentation, a plaintiff must establish: (1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance upon the false information. *See Kuhn Constr. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012) (citing *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 564 (D. Del. 2010)). Importantly, a "pecuniary duty" arises only "when the parties are in … a 'business relationship,' from which they expect 'pecuniary' benefits." *Id.* (citing *Outdoor Techs., Inc. v. Allfirst Fin. Inc.*, 2001 WL 541472, at *5 (Del. Super. Ct. Apr. 12, 2001)).

Arcelik has not pled – and cannot plead – that it was in a contractual/business relationship with the U.S. Parent or any of its subsidiaries concerning the Zytel® FR50 NC010 from which it expected to derive a pecuniary benefit. To the contrary, Arcelik admits that its contract was with EPCOS AG only. *See* Compl. ¶¶ 103-110. Furthermore, as a mere provider of nylon resin – in the nature of a raw material – DuPont did not owe Arcelik any duty to provide any information for Zytel®. *See, e.g., In re TMJ Implants Prod. Liab. Litig.,* 872 F. Supp. 1019,

---

[7]     To the extent Arcelik's alleged damages are for purely economic loss—including alleged recall expenses and damage to the dryers themselves – Arcelik's negligent manufacturing and negligent misrepresentation claims are also barred by the economic loss doctrine. *See Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992). That doctrine "is a complete bar to the recovery of economic loss caused by qualitatively defective products." *Id.* at 1198. Indeed, to the extent that the economic damages constitute the bulk of Arcelik's alleged harm, its tort claims are barred entirely. *See Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564 (D. Del. 2002) (dismissing tort claims where damage to "other property" was incidental to commercial dispute) (citations omitted).

1027 (D. Minn. 1995) ("[The manufacturer] provided a solvent … to [seller], who combined the solvent with other ingredients, packaged it, and sold it … [The manufacturer] had no opportunity or duty to warn the ultimate consumer.  It neither packaged nor placed the product on the market….") (citation omitted).

### 4.    Arcelik's Fraud Claims Fail on the Face of the Complaint

Arcelik has alleged both common law fraud and violation of the Delaware Consumer Fraud Act, 6 *Del. C.* §§ 2511-2527 ("CFA").  When fraud is alleged, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The heightened pleading standard applies with equal force to claims under the CFA.  *See Eames*, 2008 WL 4455743 (dismissing CFA claim for failure to plead fraud with specificity).  Arcelik has utterly failed to satisfy this standard.

### a.    Fraudulent Misrepresentation (Claim Two)

To establish fraud, a plaintiff must prove: (1) a false representation by the defendant; (2) with knowledge or belief that the representation was false, or made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as the result of such reliance.  *See Lincoln*, 722 F. Supp. 2d at 559-60 (citing *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983)).  Arcelik has failed to adequately plead at least the first two elements.

Critically, Arcelik has not alleged that Zytel® FR50 NC010 suffers from a design defect.  To the contrary, Arcelik has alleged only that particular batches of Zytel® FR50 NC010 were defectively manufactured based on an issue with a particular supplier.  *See* Compl. ¶¶ 30, 98.  In other words, Arcelik has not alleged – and cannot allege – that any of the supposed representations by DuPont, to the extent they apply to Zytel® FR50 NC010 generally, were

false.  In fact, the dates alleged by Plaintiff for DuPont's alleged representations about Zytel®

predate by many years the alleged manufacturing concern (*see* Compl. ¶¶ 41-50, alleging that

DuPont made certain representations from 2001 through 2007)[8], which proves fatal to the second

element of Arcelik's fraud claim: knowledge.

Arcelik must plead with specificity that the alleged misrepresentations by DuPont were

made with knowledge that they were false, or with reckless indifference to their truth.  The

reckless indifference standard is not an invitation to ignore the knowledge element.  To the

contrary, in this context, reckless indifference requires a "<u>conscious</u> indifference to the decision's

foreseeable results."  *D.R.R., L.L.C. v. Sears, Roebuck and Co.*, 949 F. Supp. 1132, 1138 (D. Del.

1996) (quoting  *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. Super. Ct. 1987)) (emphasis

added).  Arcelik's Complaint fails to include any allegation that any DuPont entity, including the

U.S. Parent, had any knowledge of any issues with any allegedly defective Zytel® FR50 NC010

prior to selling the product to EPCOS India.  In the absence of such pleading, the Complaint falls

well short of pleading fraud, even under the more forgiving standards of Rule 8.

### b.        Delaware Consumer Fraud Act (Claim Four)

Arcelik's CFA claim fails for the same fundamental reasons as its fraud claim:  it has not

---

[8]        In addition to alleged misrepresentations made by DuPont , the Complaint also alleges that
certain misrepresentations were made in "Yellow Cards" issued from 1996 to 2012 by Underwriters
Laboratories LLC ("UL")  (*see* Compl. ¶¶ 50-55.)  However, as Arcelik correctly notes in its Complaint,
"UL is an independent safety science company" (*Id.* ¶ 51) and therefore its Yellow Cards cannot be
attributed to DuPont.  Furthermore, Yellow Cards issued by UL include the following disclaimer:

> This Yellow Card, the database from which it was generated, and all related materials,
> support, and services, are made available by UL for use only by permission and "as is",
> without any representation or warranty of any kind, express or implied, including but not
> limited to any implied warranties of merchantability, fitness for a particular purpose or
> that the products identified in this Yellow Card will satisfy the user's requirements.  UL
> cannot and does not warrant that the data contained in this Yellow Card is current,
> accurate, or complete.  The user must independently confirm the conformance of any
> product to the applicable standards or requirements with the manufacturer of that product
> …."

An exemplar UL Yellow Card for Zytel® FR50 is attached hereto as Exhibit F.

alleged that any statements by DuPont were false as to Zytel® FR50 NC010 properly

manufactured, nor has it alleged that any DuPont entity was aware of any alleged manufacturing

defect prior to the sale of the product. But the CFA claim fails for an even more basic reason:

no transactions occurred in Delaware.

The CFA was enacted to "protect consumers and legitimate business enterprises from

unfair or deceptive merchandising practices in the conduct of any trade or commerce <u>in part or</u>

<u>wholly within this State</u>." 6 *Del. C.* § 2512 (emphasis added). Based on that express purpose,

Delaware courts have held that where "no transaction occurred in Delaware, the Delaware

Consumer Fraud Act cannot apply." *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203

(Del. Ch. 1988); *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 631 (Del. Ch.

2005) (same); *Marshall v. Priceline.com, Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31,

2006) (CFA not applicable "to fraudulent transactions which did not occur in Delaware.").

Arcelik, a Turkish company, purchased capacitors from EPCOS AG, a German company,

containing raw material manufactured in China and sold in India. Arcelik used those capacitors

to manufacturer appliances, none of which were sold in the U.S., and no U.S. entity was a party

to those transactions. *See* Mayo Decl. at ¶¶ 4-11. There is no credible argument that those facts

implicate trade or commerce within the State of Delaware, or in any way impact Delaware

consumers.

### 5. Arcelik Has Failed to Plead a Claim for Tortious Interference with a Contract (Claim Six)

Arcelik claims that the sale to EPCOS of allegedly defective Zytel® "caused EPCOS not

to perform its contractual obligations" with Arcelik.[9] *See* Compl. ¶ 107. Based on that

---

[9]      This claim is particularly instructive on the indispensability of EPCOS AG to this litigation.
To prevail on this claim, Arcelik must prove that EPCOS failed to perform its contractual obligations.
EPCOS undoubtedly would be prejudiced by such a ruling, and no modification of the judgment can

allegation, Arcelik attempts to state a claim for tortious interference with a contract. To establish tortious interference with a contract, a plaintiff must prove: (1) the existence of a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury. *Aspen Advisors LLC v. United Artists Theatre Co.,* 861 A.2d 1251, 1265-66 (Del. 2004) (citing *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 993 (Del. Ch. 1987)). Arcelik cannot satisfy these elements.

First, Arcelik's only attempt to plead that DuPont was aware of the Arcelik-EPCOS contract consists of a boilerplate allegation, "on information and belief," that "DuPont, its subsidiaries, and/or its agents were aware of this contract." Compl. ¶ 106. This is precisely the type of formulaic recitation of an element of a cause of action that is not permitted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.').

Second, Arcelik has not alleged, and cannot allege, that DuPont intended to interfere with the Arcelik-EPCOS contract. "A defendant acts intentionally by desiring his act to cause the breach or by being substantially certain that the act will result in a breach." *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 676 (D. Del. 1999) (citing *Layfield v. Beebe Med. Ctr., Inc.*, 1997 WL 716900, at *5 (Del. Super. Ct. July 18, 1997)). Here again, Arcelik merely parrots the element of the cause of action, alleging that "DuPont knew that the interference was certain or substantially certain to occur." Compl. ¶ 108. That assertion is entirely unburdened by any facts, let alone "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

---

prevent that prejudice.

Additionally, the alleged misrepresentations by DuPont, which purportedly caused EPCOS not to perform its contract, occurred years before the Arcelik-EPCOS contract existed. *See, e.g.,* Compl. ¶¶ 41, 42, 50. To state the obvious, DuPont could not have intended to interfere with a contract that did not exist. Similarly, Arcelik cannot allege that any of the representations by DuPont were false. Arcelik has simply alleged that a particular batch of Zytel® FR50 NC010 was defectively manufactured years after those representations. Thus, DuPont could not have intended to interfere with a contract by misrepresenting its products.[10]

## V.    CONCLUSION

For the reasons stated herein – and primarily because Arcelik has failed to join necessary and indispensable parties – the U.S. Parent, DuPont, respectfully requests that the Court dismiss Arcelik's Complaint in its entirety, with prejudice.

---

[10]    Arcelik's product defect and tortious interference with contract claims are also barred by the applicable statute of limitations in the foreign countries where those causes of action arose. Delaware's "borrowing statute," which a federal court sitting in diversity should apply, requires that a court apply the shortest statute of limitations available "[w]here a cause of action arises outside of this State." *See* 10 *Del. C.* § 8121; *see also In re Asbestos Litig.,* 2015 WL 5168121 (Del. Super. Ct. Sept. 1, 2015); *Sellon v. General Motors Corp.,* 571 F. Supp. 1094, 1097 (D. Del. 1983). Arcelik alleges that it learned of the basis for its claims at least as early as February 2013. (*See* Compl. ¶ 36) Therefore, any claim subject to a limitation period of two years or less is time barred.

Arcelik's claims for breach of implied warranty and negligent manufacturing (Claims Three and Five) arose in China because that is where the allegedly defective Zytel® was manufactured. *See* Article 187 of the Implementing Regulations of China's General Principles of the Civil Law ("The place where an infringing act is committed includes the manufacturing place of the defective product...."). Those claims are time barred by China's Product Quality Law, which sets forth a two-year statute of limitation for product defect claims. *See* Article 45 of the Product Quality Law of the People's Republic of China ("the limitation period for bringing an action claiming compensation for the damage done by the defect in a product is two years, counting from the date on which the party knew or should have known that his rights and interests had been infringed.")

Arcelik's claim for tortious interference with a contract (Claim Six) arose in India, when DuPont India allegedly made certain misrepresentations concerning Zytel®'s electrical capabilities. That claim is barred by India's Limitation Act, which sets forth a one-year statute of limitations for tort based claims for interference with a contract. *See* India Limitation Act, 1963, Part VII, Section 78, Suits Relating to Torts (a claim for "compensation for inducing a person to break a contract with the plaintiff" must be brought within one year from the date of the alleged breach.").

Dated:  November 13, 2015

*/s/ Beth Moskow-Schnoll*
Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile:  (302) 252-4466
E-mail:  moskowb@ballardspahr.com
        caesare@ballardspahr.com

OF COUNSEL:

Peter L. Haviland (*pro hac to be filed*)
Scott S. Humphreys (*pro hac to be filed*)
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone:  (424) 204-4400
Facsimile:  (424) 204-4350
E-mail: havilandp@ballardspahr.com
      humphreyss@ballardspahr.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*