## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARÇELIK, A.Ş.<br><br>        Plaintiff,<br><br>  v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>        Defendant. | C.A. No.: 1:15-cv-00961 (LPS) |

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

OF COUNSEL:

Jonathan L. Greenblatt
Keith R. Palfin
SHEARMAN & STERLING LLP
801 Pennsylvania Ave. NW
Suite 900
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
jgreenblatt@shearman.com
kpalfin@shearman.com

Dated:  December 9, 2015

John M. Seaman (DE Bar # 3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone:  (302) 778-1000
Facsimile:   (302) 778-1001
seaman@abramsbayliss.com

*Attorneys for Plaintiff Arçelik A.S.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

ARGUMENT ...................................................................................................................3

I.    Dismissal Under Rule 19 Is Inappropriate Because DuPont Has Failed to Show That
      Any Non-Party is Necessary and Indispensable With Respect to Any Claim....................3

      A.    The Foreign Entities Identified by DuPont are Not Necessary Parties...................4

      B.    Even if the Foreign Entities Are Necessary, They Are Not Indispensable.............7

II.   DuPont Fails to Establish the Requirements for a *Forum Non Conveniens* Dismissal .......9

III.  Arcelik's Complaint Does Not Fail to State a Claim.........................................................11

      A.    Arcelik States a Claim for Negligent Misrepresentation ......................................12

      B.    Arcelik States its Fraud Claims.............................................................................16

            1.    Arcelik States a Fraudulent Misrepresentation Claim ...............................16

            2.    Arcelik States a DCFA Claim...................................................................17

      C.    Arcelik States a Negligent Manufacture Claim .....................................................18

      D.    Arcelik States a Breach of Implied Warranty Claim ............................................18

      E.    Arcelik States a Tortious Interference Claim........................................................19

CONCLUSION...................................................................................................................21

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                 **Page(s)**

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) ...................................................................20

*Atwell v. RHIS, Inc.*,
   C.A. No. 02C-12-003, 2006 WL 2686532 (Del. Super. Ct. Aug. 18, 2006) ..........12

*Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   844 F.2d 1050 (3d Cir. 1988)................................................................................8

*Bassett v. Mashantucket Pequot Tribe*,
   204 F.3d 343 (2d Cir. 2000).............................................................................4, 9

*Bhatnagar v. Surrendra Overseas Ltd.*,
   52 F.3d 1220 (3d Cir. 1995)................................................................................10

*Bilt-Rite Contractors, Inc. v. Architectural Studio*,
   866 A.2d 270 (2005) ...........................................................................................12

*Brandimarti v. Caterpillar Tractor Co.*,
   527 A.2d 134 (Pa. Super. 1987)............................................................................6

*Carello v. PricewaterhouseCoopers LLP*,
   C.A. No. 01C-10-219, 2002 WL 1454111 (Del. Super. Ct. July 3, 2002) .............14

*Childress v. Gresen Mfg. Co.*,
   888 F.2d 45 (6th Cir. 1989) .................................................................................15

*Connelly v. Uniroyal, Inc.*,
   389 N.E.2d 155 (Ill. 1979).....................................................................................6

*In re Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989)..................................................................................7

*Del. Art Museum v. Ann BehaArchitects, Inc.*,
   No. 06-481, 2007 WL 2601472 (D. Del. Sept. 11, 2007).....................................16

*Delmarva Power & Light v. Meter-Treater, Inc.*,
   218 F. Supp. 2d 564 (D. Del. 2002)......................................................................16

*DiIenno v. Libby Glass Div.*,
   668 F. Supp. 373 (D. Del. 1987)..........................................................................18

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
   635 F.3d 87 (3d Cir. 2011).....................................................................................3

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) ........................................................................................10

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*,
    197 F.R.D. 112 (D. Del. 2000) ........................................................................................5, 6

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*,
    361 F.3d 359 (7th Cir. 2004) ...........................................................................................9

*Field v. Volkswagenwerk AG*,
    626 F.2d 293 (3d Cir. 1980) ............................................................................................7

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..........................................................................................11

*Freeman v. Nw. Acceptance Corp.*,
    754 F.2d 553 (5th Cir. 1985) ...........................................................................................5

*Gardiner v. V. I. Water & Power Auth.*,
    145 F.3d 635 (3d Cir. 1998) ............................................................................................9

*Gen. Refractories Co. v. First State Ins. Co.*,
    500 F.3d 306 (3d Cir. 2007) ............................................................................................8

*Gertner v. Hosp. Affiliates Int'l, Inc.*,
    602 F.2d 685 (5th Cir. 1979) ...........................................................................................9

*Gibbons v. Udarasna Gaeltachta*,
    549 F. Supp. 1094 (S.D.N.Y. 1982) ...............................................................................10

*Grynberg v. Total Compagnie Francaise Des Petroles*,
    891 F. Supp. 2d 663 (D. Del. 2012) ...............................................................................20

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003) ........................................................................................16

*Hawkinson v. A.H. Robins Co.*,
    595 F. Supp. 1290 (D. Colo. 1984) ................................................................................17

*Incubadora Mexicana, SA de CV v. Zoetis, Inc.*,
    310 F.R.D. 166 (E.D. Pa. 2015) .................................................................................4, 5, 7

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    66 F. Supp. 3d 495 (D. Del. 2014) ..................................................................................7

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
    11 F.3d 399 (3d Cir. 1993) ..............................................................................................7

*Johnson v. Ace Cash Express Inc.*,
  C.A. No. 13-1186, 2015 WL 4397482 (D. Del. July 17, 2015) ............................16

*Johnson v. Geico Cas. Co.*,
  673 F. Supp. 2d 244 (D. Del. 2009)..................................................................19

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
  723 F. Supp. 2d 676 (D. Del. 2010).............................................................3, 4, 7

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012)..................................................................13

*Lacey v. Cessna Aircraft Co.*,
  862 F.2d 38 (3d Cir. 1988)...........................................................................9, 10

*LaMontagne v. E.I. Du Pont De Nemours & Co.*,
  41 F.3d 846 (2d Cir. 1994)...............................................................................15

*Lecates v. Hertrich Pontiac Buick Co.*,
  515 A.2d 163 (Del. Super. Ct. 1986) ................................................................19

*LoCurto v. LoCurto*,
  C.A. No. 07-823, 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008).............................4

*Lomando v. United States*,
  667 F.3d 363 (3d Cir. 2011)...............................................................................9

*Lony v. E.I. du Pont de Nemours & Co.*,
  821 F. Supp. 956 (D. Del. 1993)........................................................................18

*Lony v. E.I. Du Pont de Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989)..............................................................................11

*Lony v. E.I. Du Pont de Nemours & Co.*,
  935 F.2d 604 (3d Cir. 1991)..............................................................................11

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)..............................................................................11

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ...............................................................................4

*Martinez v. E.I. DuPont De Nemours & Co.*,
  82 A.3d 1 (Del. Super. Ct. 2012)..........................................................................5

*Naidu v. Laird*,
  539 A.2d 1064 (Del. 1988) ................................................................................12

*Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone, M.D., P.A.*,
    524 A.2d 1172 (Del. 1987) ..................................................................................18

*O'Leary v. Telecom Res. Serv., LLC*,
    C.A. No. 10C-03-108, 2011 WL 379300 (Del. Super. Ct. an. 14, 2011) ................19

*Outdoor Techs., Inc. v. Allfirst Fin., Inc.*,
    C.A. No. 99C-09-151, 2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001)...........13, 14

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................................11

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...............................................................................................10

*In re PNC Bank, Del. v. Berg*,
    C.A. No. 94C-09-208, 1997 WL 527978 (Del. Super. Ct. 1997) ...........................20

*Prof'l Hockey Club Cent. Sports Club of the Army v. Detroit Red Wings, Inc.*,
    787 F. Supp. 706 (E.D. Mich. 1992) .......................................................................6

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968)................................................................................................9

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
    924 F.2d 1114 (D.C. Cir. 1991) ..............................................................................5

*In re Quigley Co.*,
    449 B.R. 196 (S.D.N.Y. 2011)................................................................................6

*Reid-Walen v. Hansen*,
    933 F.2d 1390 (8th Cir. 1991) ..............................................................................11

*In re Rio Piedras Explosion Litig.*,
    179 F.R.D. 59 (D.P.R. 1998) ..................................................................................5

*State of Ark. v. State of Tex.*,
    346 U.S. 368 (1953)................................................................................................6

*Stephenson v. Capano Dev., Inc.*,
    462 A.2d 1069 (Del. 1983) ............................................................................. 16, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................16, 19

*In re TMJ Implants Prods. Liab. Litig.*,
    872 F. Supp. 1019 (D. Minn. 1995).......................................................................15

*Tradimpex Egypt Co. v. Biomune Co.*,
    777 F. Supp. 2d 802 (D. Del. 2011) ...................................................................9

*Twin Coach Co. v. Chance Vought Aircraft, Inc.*,
    163 A.2d 278 (Del. Super. Ct. 1960) ...........................................................16

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014) .................................................................12, 13

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ..................................................................18

*Weisel P'rs LLC v. BNP Paribas*,
    C.A. No. 07-6198, 2008 WL 3977887 (N.D. Cal. Aug. 26, 2008) ...........10

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008) ................................................................10, 11

*Wylain v. Kidde Consumer Durables Corp.*,
    74 F.R.D. 434 (D. Del. 1977) ......................................................................9

*Yarger v. ING Bank, fsb*,
    285 F.R.D. 308 (D. Del. 2012) ..................................................................18

*Young v. Joyce*,
    351 A.2d 857 (Del. 1975) ...........................................................................17

**Statutes**

Fed. R. Civ. P. 9(b) ...............................................................................................16

Fed. R. Civ. P. 12(b) ......................................................................................3, 5, 11

Fed. R. Civ. P. 19 .......................................................................................... *passim*

**Other Authorities**

6 Del. C. § 2512 ....................................................................................................17

7 Wright, Miller & Kane, Federal Practice and Procedure: Civ. 3d § 1607 (3d ed.
    2001) ...........................................................................................................7

Restatement (Third) of Torts § 400 .......................................................................6

Plaintiff Arçelik, A.Ş. ("Arcelik") respectfully submits this Opposition to the Motion to Dismiss (D.I. 7) filed by Defendant E.I. Du Pont de Nemours and Company ("DuPont").

<u>**PRELIMINARY STATEMENT**</u>

The gravamen of this lawsuit is that Arcelik relied to its detriment on representations made by *DuPont – i.e.*, the defendant in this case – about a *DuPont* product. The product at issue (Zytel) is marketed by DuPont as a DuPont product developed by DuPont and sold on the strength of the DuPont brand. Every representation about Zytel identified in Arcelik's complaint was made by DuPont in literature published by DuPont for the purpose of convincing direct and indirect purchasers to buy and use this DuPont product. Arcelik's central grievance in this case is thus with DuPont, not with any of its foreign subsidiaries. Indeed, *DuPont* – not its foreign subsidiaries – recognized the defects with *its* Zytel and eventually *DuPont* sent a notice stating that "levels of ionic species now appear to have been elevated" in certain lots of Zytel, causing "incidents . . . under conditions of high humidity and temperature." (Compl. ¶ 35.)

DuPont nonetheless seeks to escape liability for the substantial harm its representations caused Arcelik by hiding behind those subsidiaries. For example, DuPont argues that its Chinese and Indian subsidiaries are necessary and indispensable parties because they allegedly manufactured and sold, respectively, the Zytel at issue. But the fact that DuPont has organized its business such that manufacturing and sales of this DuPont product are handled by its various global subsidiaries has no bearing on the fact that DuPont itself made the representations about Zytel that are at issue in this case. The Arcelik claims that are based on those representations are thus properly asserted in a lawsuit solely against DuPont.

Nor should DuPont's choices about how to structure its global Zytel business support dismissal of any of Arcelik's other claims. The DuPont representations identified in the complaint reflect that DuPont held itself out as the developer and producer of Zytel. This was

not "DuPont China" Zytel or "DuPont India" Zytel – this was *DuPont* Zytel. DuPont is thus

appropriately held liable for Zytel production defects, including under the "apparent

manufacturer" doctrine and agency principles. Moreover, DuPont does not claim – nor could it

credibly – that it would not have access to the files and personnel of its subsidiaries upon request,

undermining any argument that those entities are necessary parties. A company may not

immunize itself from liability associated with a defective product by delegating manufacturing or

sales functions to foreign subsidiaries. In short, no non-party is necessary or indispensable here.

DuPont's half-hearted argument for a *forum non conveniens* dismissal is equally

meritless. The rationale for such a dismissal is that the plaintiff's chosen forum would be of

great inconvenience for the defendant. Where, as here, the defendant *resides in that forum*,

courts are appropriately skeptical of such claims of inconvenience. Moreover, DuPont fails to

satisfy the gateway requirement of identifying an available and adequate alternative forum given

that it asserts only that *a non-party* (one of its foreign subsidiaries) would be amenable to suit in

India. It is well established that a *forum non* dismissal is inappropriate where the defendant has

failed to identify an alternative forum where *the defendant itself* would be amenable to suit.

Finally, for the reasons below, Arcelik has adequately pled each of its claims.

### STATEMENT OF FACTS

Arcelik manufactured clothing dryers that utilized capacitors that contained Zytel – a

plastic resin designed to insulate electricity that is manufactured, marketed, and sold by DuPont,

directly and through subsidiaries. (Compl. ¶¶ 3, 8.) Arcelik had relied on DuPont

representations that Zytel had various characteristics which made it suitable for use in Arcelik's

dryers. (*Id*. ¶¶ 41-50.)[1] Those dryers began catching fire as a result of defective batches of Zytel

---

[1] All of these representations about Zytel were made by DuPont (*i.e.*, the Delaware-based U.S. parent that is the defendant in this action), not by any of DuPont's foreign subsidiaries. (Compl. ¶¶ 41-50, 93.)

which were contaminated in a way that degraded the product's electrical insulation capabilities. (*Id.* ¶¶ 13, 30-37.)  The fires damaged the dryers and homes of Arcelik customers.  (*Id.* ¶ 13.) Arcelik suffered significant damage as a result, including costs associated with a recall of the affected dryers and with compensating customers for damage to their homes.  (*Id.* ¶¶ 60-61.)[2]

## ARGUMENT

**I.    Dismissal Under Rule 19 Is Inappropriate Because DuPont Has Failed to Show That Any Non-Party is Necessary and Indispensable With Respect to Any Claim**

DuPont first seeks dismissal under Rule 12(b)(7) on the grounds that Arcelik failed to join required parties under Rule 19.  (MTD at 6-11.)  "A court, in evaluating such a motion, applies the two-part test found in Rule 19:" (1) "whether the absent party is necessary;" and, if so, (2) "whether a necessary party is indispensable to a fair resolution of the issues."  *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010). "For the purpose of Rule 12(b)(7), the court accepts as true the factual allegations of the complaint."  *Id.*  The moving party "bears the burden of showing why an absent party should be joined under Rule 19."  *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011).

DuPont argues that the following parties were required to be joined under Rule 19: DuPont China (alleged manufacturer of the Zytel), DuPont India (alleged direct seller of the

---

[2] DuPont asserts that "Arcelik has confused the product specification sheets for different grades of Zytel" because a few of the DuPont representations cited by Arcelik purportedly relate to "a different grade than the FR50 NC010 at issue here."  (D.I. 7 ("MTD") at 4.)  This is not only an inappropriate factual challenge, but it is wrong.  All of DuPont's representations reflect information about Zytel FR50 NC010 (*i.e.*, the grade Arcelik used) or Zytel generally.  For example, DuPont claims the specifications cited in paragraph 50 relate to Zytel FR50 <u>BK505</u>, not Zytel FR50 <u>NC010</u>.  (MTD at 5.)  But the NC010 grade shares all of the specifications Arcelik cited with the BK505 grade.  The other representations cited in the complaint that DuPont claims relate to "a different grade" of Zytel in fact concern "Zytel nylon resins" generally (*see* Compl. ¶¶ 42, 47-48); in other words, these DuPont representations concern all grades of Zytel, including FR50 NC010.  In any event, DuPont does not (and cannot) claim that there are relevant distinctions in the specifications or functionality of the different grades of Zytel that would be meaningful here.  Moreover, DuPont claims only that a small handful of the many representations cited in the complaint relate to "a different grade," effectively conceding that most concern FR50 NC010.

Zytel), EPCOS India (alleged direct purchaser of the Zytel), and EPCOS AG (which sold Arcelik capacitors incorporating Zytel). (MTD at 6-11.) As none of these parties can be joined "without destroying this Court's jurisdiction" (MTD at 9), DuPont argues dismissal is required.

A threshold error in DuPont's Rule 19 argument lies in its lumping together of Arcelik's claims. Courts "determine whether individual claims should proceed or should be dismissed under a claim-by-claim application of Rule 19." *LoCurto v. LoCurto*, C.A. No. 07-823, 2008 WL 4410091, at *9 (S.D.N.Y. Sept. 25, 2008); *see Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358-59 (2d Cir. 2000) (evaluating Rule 19 challenge claim-by-claim); *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) (finding absent party necessary to some claims but not others).

### A. The Foreign Entities Identified by DuPont are Not Necessary Parties

A party is "necessary" if (a) "the court cannot accord complete relief among existing parties" or (b) the absent party has an interest and proceeding in its absence may cause certain specified prejudice. Fed. R. Civ. P. 19(a)(1); *see Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 171 (E.D. Pa. 2015) ("[A] party is necessary only when nonjoinder precludes the court from effecting relief not in some overall sense, but between current parties only.").

The Misrepresentation Claims. With respect to at least three of Arcelik's claims – *i.e.*, negligent misrepresentation, fraudulent misrepresentation, and violation of the DCFA – DuPont has no colorable argument that any non-party is "necessary." These claims are all based on representations that were made by *DuPont*, not by any of its foreign subsidiaries. (Compl. ¶¶ 62-79.) Moreover, DuPont's assertion that EPCOS has been demanding relief from its foreign subsidiaries (*see* MTD at 9) has no impact on these claims: the liability of those subsidiaries for manufacturing defects or contract breaches has no bearing on DuPont's liability to Arcelik for its misrepresentations about Zytel. No absent party would need to be joined in order for the Court

to "accord complete relief among existing parties" with respect to the Misrepresentation Claims.

*See, e.g., Kuhn*, 723 F. Supp. 2d at 687 ("Because the elements of negligent misrepresentation rely upon the defendants' actions, and not upon the relationship between the defendants and [the absent entity], complete relief can be granted on this count without [the absent entity] in the case.").[3]  DuPont's Rule 12(b)(7) motion should thus be denied with respect to these claims.[4]

<u>Tortious Interference Claim</u>.  DuPont's representations are a key basis for the tortious interference claim (*see* Compl. ¶ 107), and thus its foreign subsidiaries are not necessary parties with respect to this claim for the same reasons set forth above.  Nor is EPCOS AG rendered

---

[3] *See also E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 124 (D. Del. 2000) (finding DuPont China was not necessary where plaintiff "does not claim damages as a result of a breach of the . . . Contract [to which DuPont China was a party], rather, it claims damages as a result of fraud and misrepresentation"); *Incubadora*, 310 F.R.D. at 171 (absent Mexican subsidiaries in privity with plaintiff were not necessary because the existing parties could "effectively resolve *their* entire controversy despite the Mexican entities' absence").

DuPont's heavy reliance on *Martinez v. E.I. DuPont De Nemours & Co.*, 82 A.3d 1 (Del. Super. Ct. 2012) is misplaced given the inapposite nature of the decision.  *See id.* at 20-21 (action for wrongful death of employee resulting from asbestos exposure at Argentinian plant needed to be brought against the Argentinian employer).  Indeed, whereas Arcelik identified statements made *by DuPont* that are the basis for liability here, the *Martinez* plaintiff had "failed to identify any specific actions by DuPont" in the complaint.  *Id.* at 13; *see id.* at 21 ("[T]he allegations in Plaintiff's Complaint refer directly to [the decedent's] employer, [an Argentinian company], and not to its corporate great-great grandparent, DuPont").

[4] DuPont cites cases for the proposition that a subsidiary must be joined "where the subsidiary is an active participant in the activity that is alleged as the basis for the recovery."  (MTD at 7, n.3)  That has no bearing on the Misrepresentation Claims, given that DuPont made the representations that are "alleged as the basis for recovery" with respect to these claims.  *See, e.g., In re Rio Piedras Explosion Litig.*, 179 F.R.D. 59, 63 (D.P.R. 1998) (distinguishing "*Lopez* and *Gay*" on this issue – two of the cases DuPont cites – on grounds that they "are contract actions").  Moreover, there is substantial reason to doubt that the "active participant" theory of joinder is an accurate statement of the law.  These "active participant" cases rely on, and seem to be based on a misinterpretation of, a Fifth Circuit decision, *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985).  The *Freeman* decision had *not* found that merely being an "active participant" required joinder; instead, it found joinder required because the subsidiary "was *more than an active participant* in the conversion alleged by the [plaintiffs]; it was *the primary participant.*"  *Id.* at 559-60 (emphasis added).  Finally, courts have cast doubt on the propriety of even this "primary participant" theory of joinder.  *See, e.g., Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1121 (D.C. Cir. 1991) (finding that the *Freeman* decision had improperly "rested indispensability only on the 'primary participant' theory, with no review of Rule 19's checklist of possible risks of non-joinder"); *Rio Piedras*, 179 F.R.D. at 63 ("[T]he primary participant argument has no place in this case. The joint tortfeasor rule, as it relates to Rule 19, does not allow for gradations in participation.  To hold otherwise would destroy the long established rule against compelled joinder of joint tortfeasors[.]").

necessary due to it being the counterparty to the contract that was the subject of interference. Tortious interference claims require only the injured party and the party who caused the interference. *See, e.g.*, *State of Ark. v. State of Tex.*, 346 U.S. 368, 370 (1953) (counterparty was not indispensable in tortious interference case); *Prof'l Hockey Club Cent. Sports Club of the Army v. Detroit Red Wings, Inc.*, 787 F. Supp. 706, 716 (E.D. Mich. 1992) (same).

Negligent Manufacture and Implied Warranty Claims. DuPont's foreign subsidiaries are also not necessary for these claims because DuPont should be held liable for their conduct under the apparent manufacturer doctrine or agency principles. Under the apparent manufacturer doctrine, liability can be imposed on a company where its trademark is associated with a product. *See, e.g., Brandimarti v. Caterpillar Tractor Co.*, 527 A.2d 134, 139-40 (Pa. Super. Ct. 1987) ("Caterpillar could expect others to purchase the product in reliance on the skill and reputation associated with the Caterpillar name . . . [and] could be held strictly liable if the product bearing the Caterpillar name proved defective[.]").[5] DuPont's representations about Zytel (*see* Compl. ¶¶ 41-50) indicate that DuPont held itself out as the apparent manufacturer of Zytel.

Agency principles would also render DuPont liable for the acts of its subsidiaries here. This is not a case where a subsidiary is engaging in a business separate and distinct from that of the parent. Rather, the allegations in the complaint indicate that these subsidiaries were DuPont agents that were part of DuPont's global Zytel business. (*See, e.g.*, Compl. ¶ 17 (Zytel "was developed, manufactured, and marketed by DuPont and sold by DuPont, *including through its*

---

[5] *See also* Restatement (Third) of Torts § 400 (describing apparent manufacture doctrine); *In re Quigley Co.*, 449 B.R. 196, 203 (S.D.N.Y. 2011) ("[C]ourts have also applied § 400 liability to a parent company such as Pfizer that neither sold, nor manufactured a product, but marked the product with its own name."); *Connelly v. Uniroyal, Inc.*, 389 N.E.2d 155, 162 (Ill. 1979) (holding that participation in the distribution chain is not required under the apparent manufacturer doctrine).

*global subsidiaries*") (emphasis added).)[6]  DuPont should not be permitted to escape liability –
especially at the motion to dismiss stage[7] – by farming out discrete pieces of its Zytel business to
foreign subsidiaries and then proclaiming that a plaintiff cannot obtain relief outside of the
jurisdictions where those subsidiaries are based.[8]

DuPont also attempts to show that absent parties are necessary by speculating that a
judgment here may affect possible future claims by or among those non-parties relating to the
bad batches of Zytel.  (MTD at 9.)  But it is well established that "[m]ere presentation of an
argument that issue preclusion is possible is not enough to trigger Rule 19."  *Janney Montgomery
Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993).[9]

### B.      Even if the Foreign Entities Are Necessary, They Are Not Indispensable

Even if any absent entity were found necessary as to any of Arcelik's claims, the affected
claim should not be dismissed because none are "indispensable."  Four factors inform whether
dismissal is appropriate on grounds that an absent party is indispensable: (1) prejudice to absent

---

[6] *Rhodia Fiber*, 197 F.R.D. at 117 ("Although DuPont China had been in existence since 1989, DuPont, not DuPont China, participated in the early stages of negotiating the potential joint venture [involving DuPont China].").

[7] *See, e.g., Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 499 (D. Del. 2014) (rejecting argument that "plaintiffs fail to allege any facts relevant to determining whether an agency relationship exists" where plaintiffs alleged that "Toshiba Corp. operates in the United States through its [subsidiaries]," and observing that "[t]he court must take plaintiffs' factual allegations as true, especially where, as here, the information resides with defendants").

[8] Notably, the information about Zytel published by DuPont (as its own exhibits reflect) refer only to "DuPont Zytel."  DuPont does not allege that Arcelik knew or could have discovered that DuPont China manufactured the Zytel at issue before DuPont disclosed that in its motion to dismiss.  *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (at the pleading stage, "plaintiffs cannot be expected to have personal knowledge of the details of [the defendant's] corporate internal affairs").

[9] *See also Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980) ("the possibility of a subsequent adjudication that may result in a judgment that is inconsistent" does not "trigger the application of Rule 19"); *Incubadora*, 310 F.R.D. at 172 ("Absent pending litigation between Defendants and the absent parties, there is no real risk of multiple or inconsistent obligations."); *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 691 (D. Del. 2010) (Rule 19 is not triggered "simply because of the possible effect of *stare decisis* on the absent person's rights; rather, the court need only require joinder when the persuasive effect is not speculative, is direct and immediate, and is encompassed by the rules of collateral estoppel or issue preclusion").

or existing parties; (2) whether any such prejudice could be lessened; (3) the adequacy of a judgment rendered in the non-party's absence; and (4) whether the plaintiff would have an adequate remedy if dismissal was ordered. Fed. R. Civ. P. 19(b); *see* 7 Wright, Miller & Kane, Federal Practice and Procedure: Civ. 3d § 1607 (3d ed.) (courts "evaluate the degree of actual prejudice to the nonparty as opposed to the theoretical possibility that injury will occur").

Factor No. 1: Actual Prejudice. Neither DuPont nor the absent entities would be prejudiced by allowing Arcelik's claims to proceed. DuPont argues that it "may be forced to pursue a separate lawsuit for indemnity or contribution." (MTD at 10.) The Third Circuit, however, has held that "[a] defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19." *Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d Cir. 1988).

Factor No. 2: Court's Ability to Lessen Prejudice. This factor is irrelevant as there would be no cognizable prejudice for purposes of Rule 19.

Factor No. 3: Judgment Adequacy. A judgment rendered between the existing parties would be adequate for Arcelik. *See, e.g., Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 320-21 (3d Cir. 2007) ("[T]his element allows the court to consider whether the relief it grants will prove an adequate remedy *for the plaintiff*.") (emphasis added). Ignoring the ample Third Circuit case law establishing that the adequacy of the remedy *for the plaintiff* is the proper focus, DuPont claims that this factor supports dismissal because it reflects an interest "in settling disputes by wholes, whenever possible." (MTD at 11.) But DuPont does not suggest that such a resolution is "possible:" it does not identify one jurisdiction that could handle all possible claims that could theoretically be raised by all absent and existing parties concerning DuPont's bad Zytel batches. To the contrary, DuPont concedes that there is no such jurisdiction. (*Id.* at 11

("[N]o court may be able to hear all interested parties in a single dispute"); *id.* (asserting that "EPCOS India and DuPont India must resolve their claims in an Indian court" and "Arcelik and EPCOS AG can resolve their claims in the European Union").)  Moreover, as to claims *between Arcelik and DuPont*, this forum would settle the dispute between the parties in whole.[10]

*     *     *

There are two additional principles relevant here.  First, it "is well-established that [Rule] 19 does not require the joinder of joint tortfeasors[;] [n]or does it require joinder of principal and agent." *Lomando v. United States*, 667 F.3d 363, 384 (3d Cir. 2011) (citation omitted).[11] Second, courts have rejected arguments that a subsidiary is indispensable in light of the practical reality that the defendant will protect its subsidiary's interests in the lawsuit.  *See, e.g., Wylain v. Kidde Consumer Durables Corp.*, 74 F.R.D. 434, 437 (D. Del. 1977) (denying Rule 19 motion where absentees were "wholly within defendant's corporate family").[12]  In short, no absent parties are necessary or indispensable with respect to any of Arcelik's claims in this lawsuit.

## II.     DuPont Fails to Establish the Requirements for a *Forum Non Conveniens* Dismissal

A *forum non conveniens* dismissal requires: (i) "the existence and adequacy of an alternative forum"; and (ii) that public and private interest factors strongly favor dismissal, when

---

[10] Tellingly, DuPont does not even mention the fourth factor (adequacy of plaintiff's remedy post-dismissal), which "counsels strongly against dismissal" where – as here – a plaintiff does not have an adequate alternative forum. *Gardiner v. V. I. Water & Power Auth.*, 145 F.3d 635, 642 (3d Cir. 1998); *see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109 (1968) ("[T]he strength of this interest obviously depends upon whether a satisfactory alternative forum exists.").

[11] *See also Bassett*, 204 F.3d at 360 ("There is also abundant authority to the effect that, in a tort case, an aggrieved party is not compelled to sue all joint tortfeasors, but may proceed against as few or as many as he wishes.") (citing various authorities).

[12] *See also Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 361 F.3d 359, 364 (7th Cir. 2004) ("[G]iven the complete identity of interests by virtue of Case's being the sole owner of Case Brasil, we find it hard to see how Case Brasil can be harmed by not being made a party. . . Indeed, we have great difficulty seeing how a 100 percent subsidiary could *ever* be an indispensable party.") (emphasis in original); *Gertner v. Hosp. Affiliates Int'l, Inc.*, 602 F.2d 685, 688 (5th Cir. 1979) ("[T]he subsidiary is not an indispensable party.").

balanced against the deference accorded to the plaintiff's forum choice. *See, e.g., Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 806 (D. Del. 2011). "[T]he defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988). DuPont's *forum non* argument – to which it devotes a total of eight sentences (MTD at 11-12) – does not come close to satisfying its burden.

**Adequate Alterative Forum.** A court considering a *forum non* challenge "must first decide whether an adequate alternative forum exists to hear the case." *Lacey*, 862 F.2d at 43. DuPont's assertion that "India is an alternative adequate forum" is belied by the fact that DuPont claims only that *a non-party* (its Indian subsidiary) could be sued there. (MTD at 11.) The well-settled rule that *the defendant itself* must be amenable to suit in the alternative forum thus forecloses a *forum non* dismissal. *See, e.g., Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 88 (D.D.C. 2014) ("Exxon's argument that Indonesia is available as an alternative forum because [a foreign Exxon subsidiary] is amenable to service there is incorrect. An alternative forum is only available if 'the entire case and all parties can come within the jurisdiction of that forum.'").[13]

**Forum Choice Deference.** Arcelik's forum choice deserves deference. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed."). DuPont argues that "a foreign plaintiff's choice deserves less deference." (MTD at 12 (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008)).

---

[13] *See also Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, 1120 (S.D.N.Y. 1982) ("[A] *forum non conveniens* dismissal is only available if there exists an adequate alternative forum that possesses jurisdiction over the entire action and over all the named defendants." (citation omitted)). Even if DuPont had established that it would be amenable to suit in India, DuPont provides no argument or evidence whatsoever to support the conclusion that India would be an adequate forum. Courts—including the Third Circuit—have found that India is not adequate for reasons that apply here. *See, e.g., Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995) (India was inadequate due to cases taking longer than 20 years to resolve); *Weisel P'rs LLC v. BNP Paribas*, C.A. No. 07-6198, 2008 WL 3977887, at *10 (N.D. Cal. Aug. 26, 2008) ("delays in the Mumbai Bench would essentially provide 'no remedy at all'").

The very case DuPont cites for this proposition, however, provides that foreign plaintiffs "may bolster the amount of deference due their choice by making a strong showing of convenience." *Windt*, 529 F.3d at 190.  The fact that DuPont is headquartered in Delaware (Compl. ¶ 9) – and that DuPont made the representations that are the basis for liability in this case from Delaware (*id.* ¶¶ 41-50, 93) – demonstrates the convenience of this forum.[14]  Indeed, courts have held that, "[i]n this unusual situation, where the forum resident seeks [a *forum non*] dismissal, this fact should weigh strongly against dismissal."  *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991).  As the Third Circuit commented when DuPont sought such a dismissal in another case:

> This case is puzzling in that frequently the *forum non conveniens* issue is raised by a defendant sued away from home who seeks to convince the court that the balance of relevant factors should be tipped against requiring it to defend in a forum far from its home jurisdiction.  Here, in contrast, Du Pont, which is headquartered in Wilmington, Delaware, and is the largest employer in that state, seeks to move the action against it to a forum more than 3,000 miles away.  It is, as Alice said, "curiouser and curiouser."

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991) (citations omitted).

<u>Public and Private Interest Factors</u>.  DuPont does not come close to showing that these factors "tip[] decidedly in favor of trial in the foreign forum."  *Windt*, 529 F.3d at 192.[15]

## III.     Arcelik's Complaint Does Not Fail to State a Claim

Arcelik has adequately pled its claims in accordance with applicable pleading standards.[16]

---

[14] *See, e.g., Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) (the fact that "[t]he foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located . . . in itself has considerable weight in showing that the plaintiff's choice of forum was based on convenience").

[15] Indeed, given the Delaware connections noted above, there is good reason to believe that much of the relevant evidence will be found in Delaware.  Moreover, Delaware has a strong interest in ensuring that companies based in the State are making accurate representations about their products—especially when inaccuracies risk causing property damage and personal injury.

[16] When considering a Rule 12(b)(6) motion, a court accepts "all of the complaint's well-pleaded facts as true," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and draws all reasonable inferences in favor of the plaintiff.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.").

## A.     Arcelik States a Claim for Negligent Misrepresentation

Of the four elements of a negligent misrepresentation claim, *see Atwell v. RHIS, Inc.*, C.A. No. 02C-12-003, 2006 WL 2686532, at *1 (Del. Super. Ct. Aug. 18, 2006), DuPont challenges only one: the existence of "a pecuniary duty to provide accurate information."  (MTD at 15-16.)  DuPont argues that, because Arcelik did not purchase Zytel directly from DuPont, Arcelik was not in a "contractual/business relationship with [DuPont] or any of its subsidiaries concerning the Zytel® FR50 NC010 from which it expected to derive a pecuniary benefit."  (*Id.* at 15.)  Courts, however, do not restrict the circumstances that give rise to this duty so narrowly:

> The purpose of the pecuniary duty requirement is 'to shield those who gratuitously provide information from liability under the negligent misrepresentation doctrine,' by limiting liability to situations in which 'the defendant has a pecuniary interest in the transaction in which the information is given.'  Thus, to succeed on a negligent misrepresentation claim, a plaintiff must show that the source of the allegedly misleading information was a defendant who 'expect[ed] to profit from the course of conduct in which he provide[d] the information, [such that] he c[ould] reasonably be expected to take reasonable care in providing that information.'

*Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 763 (Del. Ch. 2014) (citations omitted) (alterations in original).[17]

Arcelik's allegations suffice.  DuPont made the representations about Zytel at issue for the purpose of encouraging the purchase and use of Zytel by both direct purchasers and end-users like Arcelik.  (Compl. ¶¶ 56-57.)  DuPont has a pecuniary interest in sales of components that incorporate Zytel (such as the capacitors Arcelik purchased from EPCOS), as those sales create demand for Zytel.  In other words, DuPont "expect[ed] to profit from the course of conduct in which [it] provide[d] the information, [such that it] c[ould] reasonably be expected to take reasonable care in providing that information."  *Vichi*, 85 A.3d at 763.  That suffices.

---

[17] *See also Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 286 (Pa. 2005) (the claim does not require that the defendant knew that the plaintiff was a recipient of the information); *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) ("The determination by the court of that duty must be formulated in each particular case in light of its peculiar facts.").

DuPont argues that the required "pecuniary duty" can only arise when the parties are in a "business relationship." (MTD at 15.) But DuPont does not explain what constitutes a "business relationship" in this context, instead assuming – without establishing – that the parties' relationship here would not qualify. (*Id*.) DuPont's restrictive interpretation of what constitutes a "business relationship" is at odds with how Delaware courts have articulated the nature and purpose of the pecuniary duty requirement. *See, e.g., Vichi*, 85 A.3d at 763. To the extent a "business relationship" is required, it exists here by virtue of Arcelik having been an indirect purchaser of DuPont's Zytel; neither privity nor a more direct relationship than this is necessary. *See, e.g.*, *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012) ("A pecuniary duty is not dependent on contractual privity").

Moreover, it is highly questionable whether a "business relationship" is in fact a required element of a negligent misrepresentation claim of the type that Arcelik has asserted. DuPont relies on an unpublished Delaware Superior Court decision for the proposition that such a requirement exists. *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, C.A. No. 99C-09-151, 2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001).[18] *Outdoor*, however, had involved a different type of claim, *i.e.*, that the defendant had "negligently misrepresented facts *by omission*." *Id*. at *5 (emphasis added). Claims of liability for *omissions* are generally subject to higher burdens and standards than claims of liability for *false statements*. Indeed, *Outdoor* had found that, to state a misrepresentation-by-omission claim, the plaintiff must plead facts showing "a duty of *complete disclosure*" – not merely a duty "to provide accurate information." *Id*. (emphasis added). In concluding that the claim required a "business relationship," *Outdoor* had examined the text of

---

[18] DuPont also cites a Delaware District Court decision that had stated, in *dicta*, that there was such a requirement. *Kuhn Constr.*, 844 F. Supp. 2d 519. However, *Kuhn* cited only to *Outdoor* for this proposition. *Id*. at 525.

Section 551 of the Restatement, which is entitled "Liability for Nondisclosure." *Id.* While

*Outdoor* asserts in *dicta* that both the duties of "complete disclosure" and "to provide accurate

information" require such a relationship,[19] it provides no analysis or citations to support that

conclusion with respect to the lesser "accurate information" duty. *Id.*[20]

Despite the fact that *Outdoor* was issued nearly 15 years ago, few courts since then have

cited to it for the proposition that negligent misrepresentation requires a "business relationship."

Indeed, Arcelik has identified only one decision that both did so and resolved a challenge to a

negligent misrepresentation claim on this basis: *Carello v. PricewaterhouseCoopers LLP*, C.A.

No. 01C-10-219, 2002 WL 1454111, at *7 (Del. Super. Ct. July 3, 2002). *Carello* further

illustrates that, even if a "business relationship" is required, that element would be satisfied here.

In *Carello*, plaintiffs brought a negligent misrepresentation claim against an auditor relating to

financial statements for Lason, a third party company. The auditor did not work for the plaintiffs

– it worked for Lason – and the auditor argued that it "could not possibly have known" that the

plaintiffs would rely on its work. *Id.* at *3. The auditor moved for summary judgment, arguing

that the *Outdoor* "business relationship" did not exist. *Id.* The court disagreed, finding that the

indirect connection between the parties did not foreclose finding such a relationship. *Id.* at *7

(finding that "it is possible that [the auditor] knew or should have known that third parties might

be relying on the [auditor's] work product Plaintiffs claim was negligently prepared" and that "a

business relationship between the class members and [the auditor] via Lason and its utilization of

---

[19] *Outdoor*, 2001 WL 541472 at *5 ("In each instance, the law contemplates that a duty of disclosure will arise when the parties are in the midst of a 'business relationship' from which they expect to derive 'pecuniary' benefits.").

[20] *Outdoor* is also distinguishable on its facts. The plaintiff had sued banks for refusing to cash a check, despite having had no relationship whatsoever with those banks. 2001 WL 541472 at *1-3. The check had been given to the plaintiff by a third party that went bankrupt. *Id.* The court's finding that no "business relationship" existed between the banks and plaintiff under those circumstances has no bearing here, and does not suggest that any "business relationship" requirement is as restrictive as DuPont urges.

[the auditor's] auditing services for the purpose of acquiring members of the class might well impliedly establish the requisite business relationship").  DuPont cannot credibly deny that the representations it made were intended to persuade market participants like Arcelik to purchase products that incorporate Zytel.  The Court should thus find that DuPont was subject to a "pecuniary duty to provide accurate information" with respect to such representations.

Other than challenging the "pecuniary duty" element, DuPont raises only two other grounds for dismissal of Arcelik's negligent misrepresentation claim: (1) the raw material supplier defense; and (2) the economic loss doctrine.  Neither supports dismissal.

Raw Material Supplier Defense.  DuPont argues that the fact that it was "a mere provider" of a raw material immunizes it from a negligent misrepresentation claim.  (MTD at 15-16.)  The premise for this defense, however, is that it would be unreasonable to hold the supplier of a raw material or component liable for dangers of a final product for which the supplier was not responsible.  *See, e.g.*, *LaMontagne v. E.I. Du Pont De Nemours & Co.*, 41 F.3d 846, 856-57 (2d Cir. 1994) ("When the defendant has sold an item that is only a component of the product that allegedly caused the plaintiff's injury, circumstances may well indicate that the seller had no knowledge or ability to know the hazards posed by the finished product.").  The defense is inapplicable if the *raw material or component itself* was defective.  *See id.* at 857 (the defense applies "to the manufacturer of a *non-defective* component part") (emphasis added).[21]  Here, Arcelik alleges that it was DuPont's Zytel itself that was defective and caused its injury (Compl. ¶¶ 99-101); indeed, DuPont had recognized the problems with its Zytel, as reflected by the cautionary notices it sent (*id.* ¶¶ 34-36).  The raw material supplier defense is thus inapplicable.

---

[21] *See also Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989) (noting this defense was rejected in a prior case against a component supplier because "there was an actual defect in the component" there, "whereas in this case the [component] was alleged to be misapplied rather than defectively designed"); *In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019, 1027 (D. Minn. 1995) (this defense applies "[w]here a supplier furnishes a component part *free of defects*") (citation omitted; emphasis added).

Economic Loss Doctrine.  DuPont's economic loss challenge should be rejected because "[d]ecisions as to whether a defendant falls within the exception to the economic loss doctrine are typically made at summary judgment in Delaware."  *Del. Art Museum v. Ann BehaArchitects, Inc.*, C.A. No. 06-481, 2007 WL 2601472, at *4 (D. Del. Sept. 11, 2007).  In any event, the doctrine only bars purely economic recovery "where a product has damaged only itself"; it does not bar recovery when there was damage to "other property."  *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564, 568-69 (D. Del. 2002); *see id.* ("[I]n tort, such purely economic recovery cannot occur *in the absence of damage to 'other property.'*") (emphasis added).  Arcelik's complaint alleges that the defective Zytel had not "damaged only itself," but rather had damaged the dryers using that Zytel and the homes of Arcelik's customers.  (Compl. ¶¶ 13, 60.)

### B.    Arcelik States its Fraud Claims

Arcelik has satisfied the requirements of Rule 9(b) with respect to its fraud claims.[22]

### 1.    Arcelik States a Fraudulent Misrepresentation Claim

Arcelik has pled the elements of this claim.  *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) ("Malice, intent, knowledge, and other condition[s] of mind of a person may be averred generally.").  Scienter is satisfied where the defendant "recklessly makes the representation, without heed for its validity, or makes it under circumstances not justifying belief in its truth." *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278, 284 (Del. Super. Ct. 1960).

---

[22] "Rule 9(b) does not require an exhaustive catalog of facts[;] it merely requires sufficient factual specificity to provide assurance that plaintiff has investigated and reasonably believes that a fraud has occurred." *Johnson v. Ace Cash Express Inc.*, C.A. No. 13-1186, 2015 WL 4397482, at *3 (D. Del. July 17, 2015); *see also H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 146 (Del. Ch. 2003) ("less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party").

DuPont's argument that Arcelik has not alleged a false statement (MTD at 16-17) is baseless. Arcelik has pled that DuPont's representations that Zytel had certain characteristics were false with respect to the bad batches that caused Arcelik's dryers to catch fire. (*See, e.g.*, Compl. ¶¶ 30-37 (DuPont produced bad batches of Zytel); *id.* ¶¶ 35-36 (DuPont sent notices acknowledging problems with these batches); *id.* ¶¶ 41-50 (various DuPont representations about the characteristics and qualities of Zytel); *id.* ¶¶ 30-36 (the bad batches did not function consistently with DuPont's representations and caused fires).) Arcelik's allegations indicate that DuPont's representations about Zytel were indeed false.

The facts alleged in the complaint also suffice to plead scienter, including by showing that the representations were made recklessly. (*Id.* ¶ 75.) Despite making numerous representations that Zytel had certain qualities and characteristics (*id.* ¶¶ 39-50), "DuPont did not test, sample, or take any other action to determine whether the Zytel it was producing complied with the representations [it] made" (*id.* ¶ 59). These allegations show reckless disregard. *See, e.g.*, *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1312 (D. Colo. 1984) (finding that the defendant's "representations concerning the safety and effectiveness of the [product] . . . were made with reckless ignorance of their truth or falsity because of the failure to test the [product]").

### 2. Arcelik States a DCFA Claim

DuPont's sole challenge unique to Arcelik's DCFA claim is that it lacks the requisite connection to Delaware. (MTD at 18.)[23] The DCFA "protects non-residents as well as residents from unfair or deceptive merchandising practices conducted 'in part or wholly within' the State."

---

[23] The purpose of the DCFA is to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce," 6 Del. C. § 2512, and the Delaware Supreme Court has held that its provisions should be "liberally construed." *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975). The standard for pleading DCFA claims is significantly lower than for common law fraud. *See, e.g., Stephenson*, 462 A.2d at 1074 (DCFA claims differ from fraud in that: (1) information need only have been provided negligently; (2) individual reliance on the misrepresentation is not required; and (3) intent to induce action is not required).

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002). That requirement is satisfied here given that, as Arcelik alleges (Compl. ¶ 93; *see id.* ¶¶ 9, 41-50), "DuPont authored, published, and disseminated [its] misrepresentations from the state of Delaware." *See, e.g., Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 322-23 (D. Del. 2012) (finding sufficient Delaware connection where "the allegedly misleading Rate Renew ads which are the subject of the claims emanated from Delaware"); *Warfarin*, 212 F.R.D. at 248 n.15 ("Plaintiffs have alleged here that defendant's deceptive conduct 'arose, was directed and emanated from Delaware,' which is enough to invoke the [DCFA]."); *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 961-62 (D. Del. 1993) (finding sufficient connection because, "[f]irst, DuPont regularly conducts business in the State of Delaware and, second, the alleged misrepresentation commenced in Delaware").

## C. Arcelik States a Negligent Manufacture Claim

DuPont asserts that Arcelik improperly seeks to disregard the corporate form by failing to bring this claim against DuPont China. (MTD at 14.) DuPont, however, should be held liable under either the apparent manufacturer doctrine or agency principles. (*See supra*, Section I.A.)

## D. Arcelik States a Breach of Implied Warranty Claim

Arcelik's allegations, including the representations DuPont made about Zytel (Compl. ¶¶ 41-50), suffice to state the elements of this claim. *DiIenno v. Libby Glass Div.*, 668 F. Supp. 373, 376 (D. Del. 1987) (claim elements); *Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172, 1175-76 (Del. 1987) (the buyer's "actual knowledge of the particular purpose for which the goods are intended" is not required "if the circumstances are such that the seller has reason to perceive the purpose"). DuPont argues that Arcelik cannot assert this claim because it is not a "natural person." (MTD at 12.) But the logic and purpose of the law would not be served by dismissal where, as here, a company is seeking recovery of payments made to

natural persons (*i.e.*, Arcelik's customers) associated with harm they suffered as a result of the breach. DuPont also argues that Arcelik can only bring a breach of warranty clam against DuPont India, the entity that sold the product. (*Id.* at 13.) As explained above, the apparent manufacturer doctrine and agency principles allow DuPont to be held liable for this conduct. Finally, DuPont argues that Arcelik's implied warranty claim should be rejected in light of terms in the sale agreement between DuPont India and EPCOS India. (*Id.* at 14.) But, as DuPont fails to provide a copy of that contract, the Court has no basis for reaching that conclusion.[24]

## E. Arcelik States a Tortious Interference Claim

Arcelik has stated its tortious interference claim. *See, e.g., Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 250 (D. Del. 2009). Contrary to DuPont's argument (MTD at 19), Arcelik has specifically pled that "DuPont, its subsidiaries, and/or its agents were aware of" the Arcelik-EPCOS contract. (Compl. ¶ 106.) In light of the practical reality that plaintiffs will typically not be privy to a defendant's knowledge pre-discovery, courts do not require more. *See, e.g., Tellabs*, 551 U.S. at 319; *O'Leary v. Telecom Res. Serv., LLC*, C.A. No. 10C-03-108, 2011 WL 379300, at *9 (Del. Super. Ct. Jan. 14, 2011) (allegation that the defendant "knew Plaintiffs had employment contracts with [third parties]" sufficed to state a tortious interference claim). Moreover, Arcelik also pled that DuPont made the representations at issue "to induce, directly or indirectly, end users such as Arcelik to utilize components made from Zytel." (Compl. ¶ 91; *see*

---

[24] DuPont also argues that disclaimers that allegedly accompany its representations bar this claim. (MTD at 14 n.6.) But this argument depends on facts (such as the language and form of any such disclaimers) and is thus not appropriately addressed at this stage. Moreover, there is substantial reason to believe that DuPont's purported disclaimers would not foreclose Arcelik's implied warranty claim, including because the examples DuPont cites and attaches to its complaint (*see* MTD at 3 and Exs. B, C, D) are set forth in tiny, unemphasized text that would not satisfy the conspicuousness requirement. *See, e.g., Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 169 (Del. Super. Ct. 1986) (finding that a "purported disclaimer" "fails to disclaim the implied warranty of fitness for a particular purpose" under the "conspicuousness" requirement because it "is not captioned; nor is it set apart by contrasting type or color").

*id.* ¶¶ 57, 73.)  In other words, DuPont knew that direct purchasers of Zytel like EPCOS would be incorporating that Zytel into products that were sold to third parties, using agreements like the Arcelik-EPCOS contract.  Arcelik's allegations support an inference of the requisite knowledge.

DuPont also challenges the claim on the ground that some of its representations were made before the contract date.  (MTD at 20.)  But some were made after; indeed, the cited representations were examples of statements about Zytel that DuPont repeated year after year.  (*E.g.*, Compl. ¶¶ 43-44, 53.)  Moreover, every time DuPont allowed a batch of Zytel to enter the market without testing it for conformity with its representations, that was also interference.

Finally, DuPont argues that Arcelik failed to allege that DuPont intended to interfere with the Arcelik-EPCOS contract.  (MTD at 19.)  It is not necessary, however, that "the tortfeasor act for the primary purpose of interfering with the contract."  *In re PNC Bank, Del. v. Berg*, C.A. No. 94C-09-208, 1997 WL 527978, at *4 (Del. Super. Ct. 1997).  Liability exists when "the effect of causing the breach is 'known to [the tortfeasor] to be a necessary consequence of his action.'"  *Id.* at *6.  DuPont should have known that its representations, combined with repeated acts of producing Zytel without testing to ensure conformity with its representations, would result in breaching contracts involving purchases of Zytel, such as the Arcelik-EPCOS contract.[25]

---

[25] In a footnote, DuPont asserts that three of Arcelik's claims – implied warranty, negligent manufacture, and tortious interference – are time barred, relying on purported Chinese and Indian statutes.  (MTD at 20, n.10.)  But DuPont does not meaningfully develop any aspect of this argument.  For example, DuPont fails to substantiate either (i) which Chinese or Indian laws would govern these claims, or (ii) that any such laws should apply in the first place.  Application of foreign statutes of limitation is appropriate only where the cause of action accrued in the foreign jurisdiction.  *See, e.g., Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 679 (D. Del. 2012).  DuPont assumes, without supporting evidence or analysis, that a choice of law inquiry would show that these claims accrued in either India or China.  That choice of law inquiry could depend on a number of facts, including whether DuPont China and DuPont India are agents of DuPont with respect to its Zytel business.  Such a determination is thus not appropriately made at this stage.  *See, e.g., Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011) ("Due to the factual inquiry that may be necessary to properly weigh the [choice of law] factors, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage.").  Nor would it be proper for DuPont to provide choice of law evidence or analysis in its reply brief that it neglected to provide in its opening brief.

## **CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

 _/s/ John M. Seaman_____

John M. Seaman (DE Bar # 3868)

OF COUNSEL:

Jonathan L. Greenblatt

Keith R. Palfin

Shearman & Sterling LLP

801 Pennsylvania Ave. NW, Suite 900

Telephone: (202) 508-8000

Facsimile: (202) 508-8100

jgreenblatt@shearman.com

kpalfin@shearman.com

Dated:  December 9, 2015

Abrams & Bayliss LLP

20 Montchanin Road, Suite 200

Wilmington, DE 19807

Telephone:  (302) 778-1000

Facsimile:    (302) 778-1001

seaman@abramsbayliss.com

*Attorneys for Plaintiff Arçelik A.S.*