# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARÇELIK, A.Ş, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-961-LPS |
| | ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dated: December 22, 2015

OF COUNSEL:

Peter L. Haviland (*admitted pro hac vice*)
Scott S. Humphreys (*admitted pro hac vice*)
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: havilandp@ballardspahr.com
        humphreyss@ballardspahr.com

*/s/ Beth Moskow-Schnoll*
Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: moskowb@ballardspahr.com
        caesare@ballardspahr.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Rule 19 Does Not Require a "Claim-By-Claim" Analysis | 1 |
| II. | All Four Foreign Entities are Necessary Parties | 2 |
| | A. EPCOS India and EPCOS AG are Necessary Parties | 2 |
| | B. DuPont China and DuPont India are Necessary, and the U.S. Parent Cannot Be Held Liable for Their Alleged Acts | 3 |
| III. | All Foreign Entities are Indispensable | 5 |
| IV. | Arcelik's Negligent Misrepresentation Claim Fails Because There is No Duty | 7 |
| V. | Arcelik's Fraud and DCFA Claims Fail for Lack of Scienter | 8 |
| VI. | Arcelik's Implied Warranty Claim Fails Because Arcelik is Not a "Natural Person" | 9 |
| VII. | The DCFA Requires a Business-Consumer Relationship, Which is Absent Here | 9 |
| VIII. | DuPont Cannot Be Held Liable for the Acts of DuPont China and DuPont India | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Abry Partners V, L.P. v. F & W Acquisition LLC,*
   891 A.2d 1032 (Del. Ch. 2006) ................................................................................... 11

*Affiliated FM Ins. Co. v. Trane Co.,*
   831 F.2d 153 (7th Cir. 1987) ........................................................................................ 5

*Bassett v. Mashantucket Pequot Tribe,*
   204 F.3d 343, 358-60 (2d Cir. 2000) ............................................................................ 2

*Burkert v. Petrol Plus of Naugatuck, Inc.,*
   579 A.2d 26 (Conn. 1990) ............................................................................................ 5

*Cropper v. Rego Distribution Ctr., Inc.,*
   542 F. Supp. 1142 (D. Del. 1982) ................................................................................. 3

*DRR, L.L.C. v. Sears, Roebuck and Co.,*
   949 F. Supp. 1132 (D. Del. 1996) ............................................................................... 10

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,*
   269 F.3d 187 (3d Cir. 2001) ......................................................................................... 6

*Fluent v. Salamanca Indian Lease Auth.,*
   928 F.2d 542 (2d Cir. 1991) ......................................................................................... 2

*General Refractories Co. v. First State Ins. Co.,*
   500 F.3d 306 (3d Cir. 2007) ......................................................................................... 7

*Grand Ventures, Inc. v. Whaley,*
   632 A.2d 63 (Del. 1993) ............................................................................................. 12

*In re Toyota Motor Corp.,*
   785 F. Supp. 2d 883 (C.D. Cal. 2011) .......................................................................... 7

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002) ................................................................................... 12

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.,*
   201 F.R.D. 337 (D. Del. 2001) ............................................................................ 3, 6, 8

*Lachmund v. ADM Investor Servs., Inc.,*
   191 F.3d 777 (7th Cir. 1999) ........................................................................................ 6

*Lecates v. Hertrich Pontiac Buick Co.,*
   515 A.2d 163 (Del. Super. Ct. 1986) ............................................................................ 9

*Lincoln Nat. Life Ins. Co. v. Snyder,*
   722 F. Supp. 2d 546 (D. Del. 2010) ........................................................................... 10

*LoCurto v. LoCurto,*
   2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008) .............................................................. 2

*Lony v. E.I. Du Pont de Nemours and Co.*,
  935 F.2d 604 (3d Cir. 1991) ............................................................................................... 12

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ............................................................................................... 2

*Martinez v. E.I. DuPont de Nemours and Co.*,
  82 A.3d 1 (Del. Super. Ct. 2012) ........................................................................................ 3

*Outdoor Techs., Inc. v. Allfirst Fin., Inc.*,
  2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001) ............................................................. 9

*Polanco v. H.B. Fuller Co.*,
  941 F. Supp. 1512 (D. Minn. 1996) ................................................................................ 3, 7

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968) ............................................................................................................ 8

*Republic of Philippines v. Pimentel,*
  553 U.S. 851 (2008) ............................................................................................................ 8

*S&R Assocs. L.P., III v. Shell Oil Co.*,
  725 A.2d 431 (Del. Super. Ct. 1998) ................................................................................ 11

*Van Roy v. Sakhr Software Co.*,
  2014 WL 3367275 (D. Del. July 8, 2014) ........................................................................ 10

*Yarger v. ING Bank, fsb*,
  285 F.R.D. 308 (D. Del. 2012) .................................................................................... 11, 12

**Other Authorities**

Restatement (Second) of Torts § 400 ................................................................................ 4, 5

Restatement (Second) of Torts § 552 .................................................................................... 8

Restatement (Third) of Torts Product Liability § 14 ............................................................ 5

Defendant E.I. du Pont de Nemours and Company ("DuPont" or "the U.S. Parent") hereby replies to Plaintiff's Opposition to DuPont's Motion to Dismiss the Complaint [Dkt. 10].

Arcelik, a Turkish entity with no sales or business presence in the United States, complaining of a recall it issued in Europe, nevertheless asserts that it "relied to its detriment on representations made by [the U.S. Parent] *DuPont*." (Opp. at 1.) But DuPont made no representations to Arcelik, which was not a purchaser, either direct or indirect, of the Zytel® nylon resin at issue. Any injury to Arcelik, as Arcelik's allegations effectively concede, was caused by capacitors manufactured and sold by EPCOS to Arcelik. Arcelik only alleges that the nylon resin was a component part of the EPCOS capacitors which Arcelik claims caused injury. EPCOS did not re-sell unaltered nylon resin to Arcelik; EPCOS sold allegedly defective capacitors to Arcelik in which EPCOS alone decided how to incorporate the nylon resin into EPCOS capacitors. Yet EPCOS is not a party to Arcelik's action.

Further, Arcelik has made no claim that Zytel® was defectively *designed*. Instead, Arcelik alleges (without any factual foundation), that a particular batch of Zytel® was *manufactured* in a manner inconsistent with un-alleged contractual representations made to the actual purchaser of Zytel®, EPCOS, by Zytel's® manufacturer, DuPont China, or by the seller of Zytel® to EPCOS, DuPont India. Yet DuPont China and DuPont India are also not parties to Arcelik's suit.

Moreover, the "misrepresentations" alleged were made years before the Zytel® at issue was manufactured, making the material element of *scienter* in the "gravamen" of Arcelik's complaint an impossibility.

## I. Rule 19 Does Not Require a "Claim-By-Claim" Analysis

Arcelik incorrectly argues that Rule 19 should be applied on a "claim-by-claim" basis. (Opp. at 4.) Rule 19(b) directs courts to determine whether an "***action*** should proceed among the existing parties or should be dismissed." Arcelik fails to cite any Third Circuit authority supporting a "claim-by-claim" approach. Instead, Arcelik cites an unpublished case, *LoCurto v.*

*LoCurto,* 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008), suggesting that the Second Circuit employs a claim-by-claim approach. Rather than supporting such a categorical rule, the cases cited by *LoCurto* merely reflect the manner in which those appellate courts evaluated a district court's ruling. *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358-60 (2d Cir. 2000); *Fluent v. Salamanca Indian Lease Auth.,* 928 F.2d 542, 548 (2d Cir. 1991). The same is true for *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990), also cited by Arcelik.[1]

Even if these cases were relevant, they are distinguishable in that the claims at issue were not interrelated. *See LoCurto*, 2008 WL 4410091, at *9-10 (claims were not "inextricably intertwined," and determination as to one did not affect another); *Bassett*, 204 F.3d at 358-60 (claims distinguished on basis of who could be held liable); *Makah*, 910 F.2d at 559-60 (procedural claims were narrower than substantive claims, and did not affect interests of absent parties). By contrast, all of Arcelik's claims seek to impose liability for alleged manufacturing defects in a specific batch of Zytel® FR50 NC010 ("Zytel®"). The issues central to all claims—manufacturing, marketing, sale, and incorporation into the capacitors—can be answered only by absent parties namely the foreign EPCOS and DuPont entities. Rule 19 does not allow the kind of piecemeal approach that Arcelik seeks.

**II.     All Four Foreign Entities are Necessary Parties**

A.     EPCOS India and EPCOS AG are Necessary Parties

Arcelik's opposition ignores the foreign EPCOS entities that manufactured the allegedly defective capacitors and sold them to Arcelik. EPCOS, not Arcelik, purchased the Zytel® at issue. Thus, the EPCOS entities are "more than a witness to the activities at issue in this case – [they are] active participant[s]." *Martinez v. E.I. DuPont de Nemours and Co*., 82 A.3d 1, 21 (Del. Super. Ct. 2012).

Additionally, the raw material/ component part supplier doctrine—which inarguably is at

---

[1]     *Bassett* and *Makah* also appear to be influenced as well by the courts' need to address sovereign immunity, which applied to claims against tribal defendants, but not other parties.

issue—cannot be litigated without the EPCO entities. *Cropper v. Rego Distribution Ctr., Inc.*, 542 F. Supp. 1142, 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby."). Arcelik purchased allegedly defective capacitors from EPCOS. It is not settled that the Zytel® in those capacitors caused the fires in Arcelik's appliances. A host of other causes exists related to EPCOS' manufacturing and/or design activities. Those issues require EPCOS' involvement in this case.

### B. DuPont China and DuPont India are Necessary, and the U.S. Parent Cannot Be Held Liable for Their Alleged Acts

Arcelik disregards the well-settled principle that "when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001); *see also Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1520-22 (D. Minn. 1996) (collecting cases holding that foreign subsidiaries were an indispensable party).

To avoid that rule, Arcelik argues that some of its claims do not require the manufacturer or seller of the Zytel®, because those claims are based on alleged misrepresentations by the U.S. Parent. (Opp. at 4-6.) But to prevail on those claims, Arcelik will have to prove that those statements were false, i.e., that the Zytel® was defectively manufactured, and that it, and not any other aspect of the capacitors, caused the fires. Those arguments require the presence of the two foreign DuPont entities that manufactured and sold the Zytel®, and the EPCOS entities that manufactured and sold the capacitors.[2]

In any event, Arcelik's misrepresentation claims fail. This is a manufacturing—not a design—defect case. That is, Arcelik does not allege that DuPont misrepresented the qualities of

---

[2] Arcelik's opposition on this point also speaks exclusively in terms of liability, and ignores damages entirely. Regardless of the underlying claim, Arcelik's alleged damages are identical. As a result, all entities that may be liable for those damages must be present in order to avoid, for example, a double recovery in a future lawsuit by Arcelik against the foreign entities.

3

Zytel® generally, but rather that an isolated batch of Zytel®, purchased by EPCOS, was defectively manufactured. The public materials that Arcelik points to as "representations" by DuPont predate the manufacturing of that isolated batch (*see* Compl. ¶¶ 41-50), and DuPont is not alleged to have played any role in the manufacturing process. As a result, those representations could not have been made with knowledge of their falsity, or reckless indifference to their truth.

Arcelik also argues, incorrectly, that DuPont's foreign subsidiaries are unnecessary for certain claims "because DuPont should be held liable for their conduct under the apparent manufacturer doctrine." (Opp. at 6-7.)[3] But Delaware has not adopted the apparent manufacturer doctrine. Even if it had, that doctrine applies only to those who supply a product "either by sale or lease or by gift or loan." Restatement (Second) of Torts § 400 cmt. a; *see also Burkert v. Petrol Plus of Naugatuck, Inc.*, 579 A.2d 26, 33 (Conn. 1990) (The doctrine "applies only to those involved in the sale, lease, gift or loan of products."). Because DuPont did not sell, lease, gift, or loan the Zytel® to any entity, including EPCOS or Arcelik, it cannot be an apparent manufacturer. *See Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155-56 (7th Cir. 1987) (doctrine did not apply to product designer "not involved in the manufacture, sale or installation" of the product).

To save its claims, Arcelik argues that the DuPont trademark is alone sufficient to find the U.S. Parent liable. That argument fails for two reasons. First, DuPont is not a trademark licensor here; it is a parent corporation. The apparent manufacturer doctrine is not an end-run around the requirements for piercing the corporate veil. Second, Arcelik's argument represents the minority view, and has not been adopted by Delaware. *Burkert*, 579 A.2d at 34 ("Although [some] cases do interpret [Section] 400 as imposing liability on a trademark licensor with no additional involvement in the stream of commerce, most cases impose liability only after finding

---

[3] This directly undermines Arcelik's Rule 19 argument, i.e., that the U.S. Parent is being sued for its own alleged misconduct, and not based on the conduct of its subsidiaries.

4

that the licensor had a significant role in the chain of distribution.") (internal citations omitted) (citing cases). The successor to Section 400—Restatement (Third) of Torts Product Liability § 14—further clarifies this point: "[E]ven if purchasers of the product might assume that the trademark owner was the manufacturer, the licensor does not 'sell or distribute as its own a product manufactured by another.' Thus, the manufacturer may be liable . . . but the licensor, who does not sell or otherwise distribute products, is not liable." *Id.* at cmt. d.

Arcelik also wrongly argues that DuPont is liable under agency principles. (Opp. at 6.) Arcelik's Complaint does not even attempt to plead agency. To establish agency, a plaintiff must "demonstrate that the agent was acting on behalf of the principal and that that cause of action arises out of that relationship." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001). Apart from a single allegation that the Zytel® was "developed, manufactured, and marketed by [the U.S. Parent] and sold by the [U.S. Parent], including through its global subsidiaries," (Compl. ¶ 17) Arcelik's Complaint "contains no allegations that [the U.S. Parent] is liable due to a principal-agent relationship with its Subsidiaries or under a joint tortfeasor theory, and it even fails to mention the existence of the Subsidiaries, or the Subsidiaries' involvement in the Transaction." *Jurimex*, 201 F.R.D. at 341.[4] If Arcelik "seek[s] to hold [the U.S. Parent] liable under a principal-agent or joint tortfeasor theory, [it] must so allege in [its] Complaint." *Id.* (granting motion to dismiss under Rule 19 where complaint failed to allege principal's liability for subsidiaries' actions based on a principal-agent relationship); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782-83 (7th Cir. 1999) (a principal-agent relationship must be alleged in the complaint).

III. **All Foreign Entities are Indispensable**

<u>First Factor: Actual Prejudice</u>. Arcelik does not dispute that its claims against the U.S.

---

[4] Arcelik's lone allegation, that the U.S. Parent manufactured the Zytel®, is indisputably false. As stated in the Declaration of Richard Mayo, not contested by Arcelik, DuPont China manufactured the Zytel® product at issue, and DuPont India sold it.

5

Parent could result in actual prejudice to the U.S. Parent's foreign subsidiaries; it argues only that the necessity of a lawsuit by DuPont for indemnity or contribution against the foreign entities does not make those entities indispensable. (Opp. at 8.) Arcelik fails to address that with respect to future claims, DuPont India, the seller and alleged warrantor, would be prejudiced by a finding that the alleged warranty was breached, and DuPont China, the manufacturer, would be prejudiced by a finding that its product was negligently manufactured.[5] Likewise, EPCOS would be prejudiced by a finding that the Zytel® was not defective, and that fault for the fires lies with EPCOS' capacitors. *See In re Toyota Motor Corp.,* 785 F. Supp. 2d 883, 908 (C.D. Cal. 2011) ("[T]he unnamed foreign entities here would be prejudiced by the denial of an opportunity to defend their product safety and marketing practices."); *see also Polanco,* 941 F. Supp. at 1520-23 (D. Minn. 1996) (collecting cases finding that a judgment against the parent company would "speak[] directly and adversely to the quality of [the foreign subsidiary's] products.").

Second Factor: Court's Ability to Lessen Prejudice. Arcelik's argument that this factor "is irrelevant" because there is "no cognizable prejudice" (Opp. at 8) fails for the reasons above. Arcelik also fails to respond to DuPont's point that no modification to a judgment could protect DuPont or the foreign entities from prejudice. (Mot. at 10-11.)

Third Factor: Adequacy of the Judgment. Arcelik incorrectly argues that "the adequacy of the remedy *for the plaintiff* is the proper focus." (Opp. at 8.) *General Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 320-21 (3d Cir. 2007), does not stand for that proposition. Arcelik's other authority, *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111 (1968), states that the plaintiff's interest is <u>not</u> important: "clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them." *See also Republic of Philippines v. Pimentel,* 553 U.S. 851, 870 (2008) ("'adequacy' refers not to satisfaction of [a party's] claims," but "to

---

[5] *See also* Note 2, *supra*, regarding the potential prejudice of double recovery, or inconsistent outcomes.

the 'public stake in settling disputes by wholes, whenever possible.'") (quoting *Provident Bank,* 390 U.S. at 111).

Arcelik further argues that no jurisdiction "could handle all *possible* claims that could *theoretically* be raised" between these parties. (Opp. at 8 (emphasis added).) Rule 19(b) does not impose so strict a standard, and there is no justification to expend U.S. judicial resources on a long and costly lawsuit filed solely against DuPont, a non-party to the relevant transactions. Arcelik and EPCOS AG can resolve their claims in the European Union, and EPCOS India and DuPont India must resolve their claims in India in accordance with the terms of their contract.

In any event, a judgment in Arcelik's favor would be inadequate because the foreign EPCOS entities and subsidiaries of the U.S. Parent "would not be bound by the judgment . . . where they were not parties." *Pimentel,* 553 U.S. at 871; *see also Jurimex*, 201 F.R.D. at 340-41 ("A judgment in Defendant's favor would not be 'adequate' because Plaintiffs could subsequently sue the Subsidiaries in a different forum based on essentially the same facts, while a judgment in Plaintiffs' favor may be 'hollow' because the proper defendant was never joined.").

<u>Fourth Factor: Plaintiff's Alternative Remedy</u>. Arcelik argues that it "does not have an adequate alternative forum." (Opp. at 9 n. 10.) Not so: Arcelik can sue EPCOS in the European Union, or in India as required by the contract between EPCOS India and DuPont India, which is binding on Arcelik. *See Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163, 166 (Del. Super. Ct. 1986) ("A secondary purchaser who claims the protection of a warranty is subject to the same . . . remedy limitation clauses that were the basis of the underlying sales agreement.").

## IV. **Arcelik's Negligent Misrepresentation Claim Fails Because There is No Duty**

Under Delaware law, a negligent misrepresentation claim must be dismissed absent "a pecuniary duty to provide accurate information." *Outdoor Techs., Inc. v. Allfirst Fin., Inc.,* 2001 WL 541472, at *5 (Del. Super. Ct. Apr. 12, 2001). Arcelik argues that a "pecuniary duty" exists here because Arcelik was an "indirect purchaser" of products that incorporate Zytel®.

7

(Opp. at 12-13.) Arcelik provides no authority for its expansive interpretation extending this duty to indirect purchasers. Indeed, "something more than a casual business encounter must be demonstrated before a duty of care will be imposed." *Outdoor Techs.*, 2001 WL 541472, at * 5. Because there is no business relationship, either direct or indirect, between the U.S. Parent and Arcelik, there is no pecuniary duty. Further, Arcelik was not an "indirect purchaser" of Zytel®. EPCOS incorporated Zytel® as a component in EPCOS capacitors, which Arcelik purchased. Arcelik did not purchase Zytel® through EPCOS.

Arcelik's argument also fails because it ignores DuPont's express disclaimer:

> The data provided fall within the normal range of product properties and relate only to the specific material designated; these data may not be valid for such material used in combination with any other materials … unless expressly indicated otherwise. The data provided should not be used to establish specification limits or used alone as the basis of design; they are not intended to substitute for any testing you may need to conduct to determine for yourself the suitability of a specific material for your particular purposes. [Mot. at 3, Exs. B, C, D, and E thereto.]

*See also* Restatement (Second) of Torts § 552 cmt. a ("[I]t does not follow that every user of commercial information may hold every maker to a duty of care . . . one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.").

## V. Arcelik's Fraud and DCFA Claims Fail for Lack of Scienter

Areliks' statutory and common law fraud claims require it to allege that DuPont made a false representation "with knowledge or belief that the representation was false," or "with reckless indifference to the truth." *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546 (D. Del. 2010). Arcelik has not done so.

Arcelik argues that it has pled recklessness by alleging that "DuPont did not test, sample, or take any other action to determine whether the Zytel® it was producing complied with the

representations [it] made." (Opp. at 17.) This is factually false; but in any case reckless indifference requires more than a mere failure to test; it requires a "*conscious* indifference to the decision's foreseeable results." *DRR, L.L.C. v. Sears, Roebuck and Co.,* 949 F. Supp. 1132, 1138 (D. Del. 1996) (emphasis added). "[W]hen a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it." *Van Roy v. Sakhr Software Co.,* 2014 WL 3367275, at *4 (D. Del. July 8, 2014) (quoting *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).

## VI. Arcelik's Implied Warranty Claim Fails Because Arcelik is Not a "Natural Person"

Arcelik tries to avoid Delaware's "natural person" requirement by arguing that it is "seeking recovery of payments made to natural persons (*i.e.,* Arcelik's customers) associated with the harm they suffered." (Opp. at 18-19.) Once again, Arcelik provides no authority for its attempt to expand the law. It is firmly established that only "natural persons" have standing to bring an implied warranty claim under Section 2-318 of the Delaware UCC. *See S&R Assocs. L.P., III v. Shell Oil Co.,* 725 A.2d 431, 438 (Del. Super. Ct. 1998) (dismissing limited partnership's implied warranty claim for lack of standing). That rule is no accident, but rather the deliberate decision of the Delaware legislature "to exclude legal entities from protection." *Id.*[6]

## VII. The DCFA Requires a Business-Consumer Relationship, Which is Absent Here

Arcelik attempts to save its Delaware Consumer Fraud Act ("DCFA") claim by arguing that DuPont's alleged misrepresentations emanated from Delaware. (Opp. at 17-18.) For support, Arcelik relies on three cases, none of which supports its argument.

In *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 314 (D. Del. 2012), the Court held that the DCFA applied because the defendant, a mortgage lender, "conducted a uniform advertising

---

[6] Arcelik also incorrectly asserts that DuPont "fails to provide a copy of that contract." (Opp. at 19.) The contract is attached to the Declaration of Richard Mayo, submitted as Exhibit A to DuPont's motion to dismiss.

9

campaign" directed at "customers and potential customers through its website, direct mail, postcards, emails, electronic and paper statements, and through its call centers." *Id.* at 314. By contrast, Arcelik does not even allege a customer relationship with DuPont. Thus, the business-customer relationship that the DCFA is designed to protect is absent here. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65, 70 (Del. 1993) ("Unlike the Consumer Fraud Act, the DTPA is not intended to redress wrongs between a business and its customers. . . . [T]he Consumer Fraud Act provides remedies for violations of the 'vertical' relationship between a buyer (the consumer) and a producer or seller.").

The additional cases cited by Arcelik are similarly inapposite. They involve representations about the specific product at issue or a business-customer relationship that is absent here. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 241, 249 (D. Del. 2002) (plaintiffs purchased more expensive drug based on "broad-based, national campaign" consisting of newspaper advertisements, faxes, press releases, and promotional brochures); *Lony v. E.I. Du Pont de Nemours and Co.*, 935 F.2d 604, 606 (3d Cir. 1991) (alleged misrepresentation made in letter about specific product allegedly induced consumer to purchase defendant's product).

## VIII. DuPont Cannot Be Held Liable for the Acts of DuPont China and DuPont India

Arcelik asserts that its negligent manufacturing, breach of implied warranty, and tortious interference claims can be asserted against DuPont under the apparent manufacturer doctrine and agency principles. (*See* Opp. at 18-20.) As explained in Section II.B. above, the apparent manufacturer doctrine has not been adopted in Delaware, and the Complaint does not, and cannot, allege facts sufficient to plead an agency relationship between the U.S. Parent and DuPont China or DuPont India. Accordingly, DuPont cannot be held liable for these claims.

| | |
|---|---|
| Dated: December 22, 2015 | */s/ Beth Moskow-Schnoll* |
| | Beth Moskow-Schnoll (No. 2900) |
| | Erika R. Caesar (No. 5143) |
| OF COUNSEL: | BALLARD SPAHR LLP |
| | 919 N. Market Street, 11th Floor |
| Peter L. Haviland (*admitted pro hac vice*) | Wilmington, DE 19801 |
| Scott S. Humphreys (*admitted pro hac vice*) | Telephone: (302) 252-4465 |
| BALLARD SPAHR LLP | Facsimile: (302) 252-4466 |
| 2029 Century Park East, Suite 800 | E-mail: moskowb@ballardspahr.com |
| Los Angeles, CA 90067 | caesare@ballardspahr.com |
| Telephone: (424) 204-4400 | |
| Facsimile: (424) 204-4350 | |
| E-mail: havilandp@ballardspahr.com | *Counsel for Defendant E.I. du Pont de Nemours* |
| humphreyss@ballardspahr.com | *and Company* |