# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARÇELIK, A.Ş,                     ) | |
|                   ) | |
|        Plaintiff,         ) | |
|                   ) | |
|          v.              ) | Civil Action No.: 1:15-cv-961 (LPS) |
|                   ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, ) | |
|                   ) | |
|        Defendant.       ) | |
|                   ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY'S RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated:  March 22, 2017

OF COUNSEL:

Peter L. Haviland (*admitted pro hac vice*)
Scott S. Humphreys (*admitted pro hac vice*)
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone:  (424) 204-4400
Facsimile:   (424) 204-4350
E-mail: havilandp@ballardspahr.com
       humphreyss@ballardspahr.com

Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile:  (302) 252-4466
E-mail: moskowb@ballardspahr.com
          caesare@ballardspahr.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS .......................................................... 1

SUMMARY OF ARGUMENT ................................................................ 2

STATEMENT OF FACTS ..................................................................... 4

ARGUMENT ........................................................................................ 6

I.      Arcelik Has Failed to Join Necessary and Indispensable Parties EPCOS India
        and EPCOS AG Whose Presence Would Destroy Diversity Jurisdiction ......................... 6

        A.      EPCOS India and EPCOS AG are Necessary Parties.............................................. 6

        B.      EPCOS India and EPCOS AG are Indispensable Parties ....................................... 8

II.     All Five Causes of Action Must be Dismissed for Failure to State a Claim ................... 12

        A.      Arcelik's Negligent Misrepresentation and Negligent Manufacturing Claims
                Are Barred by the Economic Loss Rule (Counts I and IV) ................................ 12

        B.      Arcelik's Negligent Misrepresentation Claim Fails because Arcelik had no
                Business Relationship with any DuPont Entity (Count I) .................................... 12

        C.      Arcelik's Fraud Claims Fail on the Face of the Amended Complaint
                (Counts II and III) ............................................................................................. 13

                1.      Fraudulent Misrepresentation (Count II) ................................................. 13

                2.      Delaware Consumer Fraud Act (Count III) ............................................. 15

        D.      Arcelik's Negligent Manufacturing Claim Is Barred by the Economic Loss
                Rule and the Applicable Statute of Limitations (Count IV) ................................ 16

        E.      Arcelik Has Failed to Plead a Claim for Tortious Interference with a
                Contract (Count V) ........................................................................................... 16

        F.      Arcelik's Misrepresentation, Negligent Manufacturing and Tortious
                Interference with Contract Claims Are Time Barred (Counts I, II, IV and V)..... 18

III.    Alternatively, the Amended Complaint May Be Dismissed on *Forum Non
        Conveniens* Grounds ................................................................................................. 19

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 17

*Aspen Advisors LLC v. United Artists Theatre Co.*,
   861 A.2d 1251 (Del. 2004) ............................................................................. 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 17

*Castaldo v. Pittsburg-DesMoines Steel Co.*,
   376 A.2d 88 (Del. 1977) ................................................................................... 7

*Cropper v. Rego Distribution Ctr., Inc.*,
   542 F.Supp. 1142 (D. Del. 1982) .................................................................. 3, 7

*D.R.R., L.L.C. v. Sears, Roebuck and Co.*,
   949 F.Supp. 1132 (D. Del. 1996) ................................................................... 15

*Dalkilic v. Titan Corp.*,
   516 F.Supp.2d 1177 (S.D. Cal. 2007) ............................................................ 18

*Danforth v. Acorn Structures, Inc.*,
   608 A.2d 1194 (Del. 1992) ............................................................................. 12

*Delmarva Power & Light v. Meter-Treater, Inc.*,
   218 F.Supp.2d 564 (D.Del. 2002) .................................................................. 12

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
    619 F.3d 288 (3d. Cir. 2010) ......................................................................... 19

*Eames v. Nationwide Mut. Ins. Co.*,
   Civ. No. 04-1324-JJF-LPS, 2008 WL 4455743 (D.Del. Sept. 30, 2008) .............................. 4, 13

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
   388 F.Supp. 2d 426 (D. Del. 2005) ............................................................... 6, 7

*Field v. Volkswagenwerk AG*,
   626 F.2d 293 (3d Cir. 1980) ............................................................................. 8

*Goodrich v. E.F. Hutton Group, Inc.*,
   542 A.2d 1200 (Del. Ch. 1988) ...................................................................... 15

*In re Asbestos Litig.*,
   2015 WL 5168121 (Del. Super. Ct. Sept. 1, 2015) ......................................... 18

*In re TMJ Implants Prod. Liab. Litig.*,
   872 F.Supp. 1019 (D.Minn. 1995) .................................................................. 13

*In re Toyota Motor Corp.*,
   785 F.Supp.2d 883 (C.D. Cal. 2011) ........................................................ 7, 8, 10

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
   532 A.2d 983 (Del. Ch. 1987) ........................................................................ 16

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
  456 F.Supp. 831 (D. Del. 1978)................................................................................ 8

*Jardel Co., Inc. v. Hughes*,
  523 A.2d 518 (Del. Super. Ct. 1987) ....................................................................... 15

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
  201 F.R.D. 337 (D. Del. 2001) ............................................................................ 6, 11

*Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*,
  844 F.Supp. 2d 519 (D. Del. 2012).................................................................... 12, 13

*Layfield v. Beebe Med. Ctr., Inc.*,
  1997 WL 716900 (Del. Super. Ct. July 18, 1997) ............................................. 17, 18

*Lecates v. Hertrich Pontiac Buick Co.*,
  515 A.2d 163 (Del. Super. Ct. 1986) ....................................................................... 11

*Lincoln Nat. Life Ins. Co. v. Snyder*,
  722 F.Supp. 2d 546 (D. Del. 2000)........................................................................... 14

*Lloyd v. Jefferson*,
  53 F.Supp. 2d 643 (D. Del. 1999) ............................................................................ 17

*Marshall v. Priceline.com, Inc.*,
  2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ................................................. 15

*Martinez v. E.I. du Pont de Nemours and Co.*,
  82 A.3d 1 (Del. Super. Ct. 2012) ..................................................................... 7, 9, 10

*Outdoor Techs., Inc. v. Allfirst Fin. Inc.*,
  2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001) .................................................. 13

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .................................................................................... 4

*Polanco v. H.B. Fuller Co.*,
  941 F.Supp. 1512 (D. Minn. 1996)................................................... 7, 9, 10, 11, 16

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)................................................................................................. 11

*Sellon v. General Motors Corp.*,
  571 F.Supp. 1094 (D. Del. 1983).............................................................................. 18

*Shermoen v. U.S.*,
  982 F.2d 1312 (9th Cir. 1992) .................................................................................. 10

*Stephenson v. Capano Dev., Inc.*,
  462 A.2d 1069 (Del.1983) ........................................................................................ 14

*Travelers Indemnity Co. v. Household Int'l, Inc.*,
  775 F.Supp. 518 (D. Conn. 1991)............................................................................... 9

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  872 A.2d 611 (Del. Ch. 2005) .................................................................................. 15

*Windt v. Qwest Commc'ns Int'l,*
    529 F.3d 183 (3d Cir. 2008) ................................................................ 19, 20

**Statutes**

10 *Del. C.* § 8121 .................................................................................... 18

28 U.S.C. § 1332 ..................................................................................... 8

6 *Del. C.* §§ 2511-2527 ....................................................................... 13, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 2

Fed. R. Civ. P. 12(b)(7) ..................................................................... 1, 2, 6

Fed. R. Civ. P. 19(a) ............................................................................ 6

Fed. R. Civ. P. 19(b) .......................................................................... 9, 11

Fed. R. Civ. P. 9(b) ............................................................................. 13

Fed.R.Civ.P. 19 ................................................................................ 3, 6

**Other Authorities**

India Limitation Act, 1963, Part VII, Section 78 ................................... 19

Law of the People's Republic of China on Product Quality, Article 45 .......... 18

Turkish Code of Obligations, Article 72 ............................................... 18

Turkish Law on Consumer Protection, Article 12 ................................... 19

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Arcelik, A.S. ("Arcelik"), a Turkish entity, filed this action against E.I. du Pont de Nemours and Company ("the U.S. Parent" or "DuPont") on October 22, 2015, seeking damages related to Arcelik's European recall of its faulty clothing dryers sold outside of the United States.  (D.I. 1.)  Arcelik asserted six causes of action:  (1) negligent misrepresentation; (2) fraudulent misrepresentation; (3) breach of implied warranty; (4) violation of the Delaware Consumer Fraud Act; (5) negligent manufacture of a defective product; and (6) tortious interference with contract.  On November 13, 2015, DuPont filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and 12(b)(7) for failure to join four foreign entities -- DuPont China Holding Co. Ltd. ("DuPont China"), E.I. du Pont India Private Limited ("DuPont India"), EPCOS India Private Ltd. ("EPCOS India") and EPCOS AG -- as necessary and indispensable parties under Rule 19.  (D.I. 6.)

On September 29, 2016, the Court in a Memorandum Order granted DuPont's motion to dismiss pursuant to Rule 12(b)(6), dismissing Arcelik's breach of implied warranty claim with prejudice and dismissing all remaining claims without prejudice.  (D.I. 16.)  The Court held that Arcelik had failed to "allege agency relationships between DuPont and any entities under its direction or control" and also stated that "[t]he Court is not deciding at this time whether or not the facts currently in Plaintiff's complaint would be sufficient to state claims for relief if sufficient agency relationship(s) were alleged."  (*Id.*)  The Court granted Arcelik leave to file an amended complaint, directed the parties to submit a proposed schedule for limited initial discovery, and granted DuPont the right to renew its motion to dismiss after conclusion of the limited initial discovery.  (*Id.*)  On October 21, 2016, Arcelik filed an Amended Complaint adding agency allegations regarding the U.S. Parent and the foreign subsidiaries.  (D.I. 19.)

On January 19, 2017, the Court approved the parties' stipulation to mutually withdraw their respective limited initial discovery requests so that DuPont could file a renewed motion to dismiss Arcelik's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim and 12(b)(7) for failure to join foreign non-parties EPCOS AG and/or EPCOS India ("EPCOS") as necessary and indispensable parties.  (D.I. 27.)

## SUMMARY OF ARGUMENT

DuPont agreed to forego early limited discovery because the Amended Complaint, and undisputed facts underlying the Amended Complaint, show that EPCOS is a necessary and indispensable party under Rule 19, and that Arcelik, under black-letter product liability law, cannot state a claim against the U.S. Parent irrespective or any agency relationship between DuPont and its foreign subsidiaries.  The central role of another foreign entity – EPCOS – who was an active participant in all of the pertinent transactions, requires EPCOS' joinder and the dismissal of Arcelik's Amended Complaint.[1]

Any injury to Arcelik, as its Amended Complaint concedes, was caused by electrical capacitors manufactured and sold to Arcelik by EPCOS.  It was EPCOS, not Arcelik, that made the decision to incorporate Zytel® into its capacitors.  Arcelik does not allege that it directed EPCOS to use Zytel®, nor does Arcelik allege that it relied on EPCOS representations to Arcelik that EPCOS used Zytel® in its capacitors.  The Zytel® nylon resin at issue was no more than a component part of EPCOS' capacitors.  EPCOS alone decided how to incorporate the nylon resin into those capacitors, and alone decided a manufacturing and testing process to determine the suitability of each "batch" of its capacitors for Arcelik products.  EPCOS' use of Zytel® as a component part in its capacitors implicates the raw material/component part supplier defenses,

---

[1]     Consistent with the Stipulation entered between the parties, DuPont does not concede the factual existence of any alleged agency relationships and reserves the right to challenge agency if the Amended Complaint survives this renewed motion to dismiss.

which cannot be litigated without EPCOS.  *See, e.g., Cropper v. Rego Distribution Ctr., Inc.,* 542 F.Supp. 1142, 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby.")  Moreover, EPCOS may have used other, non-DuPont resin in capacitors used in Arcelik's clothing dryers.  Yet Arcelik has failed to name EPCOS AG or EPCOS India as defendants in this action.  The reason is transparent:  if EPCOS were added as a defendant it would destroy diversity jurisdiction and Arcelik's claimed access to this Court.  Fed.R.Civ.P. 19.

Applicable substantive law also requires dismissal of each of Arcelik's causes of action. The public materials cited by Arcelik as "representations" by DuPont expressly disclaimed the product's suitability for any particular purpose, and further disclaimed that published data could be relied upon to create specifications for its use as a material for any other product.  Arcelik's negligent misrepresentation claim must be dismissed because Delaware law does not permit such a claim in the absence of a business relationship, which Arcelik did not have with the U.S. Parent or any DuPont subsidiaries regarding the product at issue, Zytel® FR50 NC010.

Arcelik's boilerplate allegations of fraud, devoid of any factual basis, fare no better. Notwithstanding more than one hundred paragraphs of pleading, the Amended Complaint fails once again to include any allegations -- not one -- that the U.S. Parent or any of the foreign subsidiaries was aware of the alleged manufacturing "defect" prior to selling the supposedly "defective" lots of Zytel®.  Likewise, Arcelik's tortious interference with contract claim does not contain any specific factual allegations that DuPont knew of the Arcelik-EPCOS contract, or intended to interfere with that contract.  Arcelik's claims are further barred by the applicable statutes of limitation.

In short, Arcelik's Amended Complaint fails as a matter of procedure and substance, and should be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS

There are approximately 600 different nylon resin products that carry the brand name Zytel®, which are typically sold in pellet form to customers around the world. *See* Declaration of Richard Mayo ("Mayo Decl.") ¶ 2, attached hereto as Exhibit A. Customers process the nylon resin for use in a wide variety of products. *Id*. Those products often are sold to third parties who have no contractual relationship with the Zytel® manufacturer. *Id*. For that reason, among others, no warranty is given for the suitability of any particular Zytel® products for any particular purpose. *Id*. In fact, publications regarding Zytel® contain express disclaimers identical or similar to the following:

> The information provided in this data sheet corresponds to our knowledge on the subject at the date of its publication. This information may be subject to revision as new knowledge and experience becomes available. The data provided fall within the normal range of product properties and relate only to the specific material designated; ***these data may not be valid for such material used in combination with any other materials***, additives or pigments or in any process, unless expressly indicated otherwise. ***The data provided should not be used to establish specification limits or used alone as the basis of design***; they are not intended to substitute for any testing you may need to conduct to determine for yourself the suitability of a specific material for your particular purposes. Since DuPont cannot anticipate all variations in actual end-use conditions ***DuPont makes no warranties and assumes no liability in connection with any use of this information***….[2]

The particular lots of Zytel® at issue here, Zytel® FR50 NC010, were manufactured in China between October 2010 and August 2012 by DuPont China, an indirect DuPont subsidiary

---

[2]  *See, e.g.,* the DuPont™ Zytel® FR50 NC010 Product Information, the DuPont™ Zytel® FR50 BK505 Product Information, the March 2003 DuPont - Zytel® Product Guide and Properties, and the June 2001 DuPont™ Minlon® and Zytel® Design Information – Module II, cited in paragraphs 45-46, 51-52, 54 and 70 of the Amended Complaint, and attached hereto as Exhibits B, C, D, and E, respectively. "A court may consider an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Eames v. Nationwide Mut. Ins. Co.,* Civ. No. 04-1324-JJF-LPS, 2008 WL 4455743 (D.Del. Sept. 30, 2008) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

organized under the laws of and operating in China.  Mayo Decl. ¶¶ 4-5; Am. Compl. ¶ 19.
DuPont India then purchased the lots from DuPont China and sold them to EPCOS India
pursuant to specific terms and conditions.  Mayo Decl. ¶¶ 4-8; Am. Compl. ¶¶ 17-19.  Those
conditions reflect that the Zytel® FR50 NC010 was sold according to "DuPont Standard
Specifications," which were limited to "Ash Content Percentage" and "Water Content at Packout
Percentage."  Mayo Decl. ¶ 8, attachment thereto.  The terms also included the following venue
provision:  "All contracts of the Company are subject to the jurisdiction of the Courts of the State
of Haryana [India] and all claims, actions and petitions arising out of or in connection with this
contract shall be instituted in the courts at Gurgaon [India]."  *Id.*; Terms & Conditions ¶ 22.
EPCOS India apparently used the Zytel® FR50 NC010 as a component part in its manufacture
of electrical capacitors.  Mayo Decl. ¶¶ 7, 11; Am. Compl. ¶¶ 17-18.  EPCOS AG, a German
entity and subsidiary of TDK Corporation, a Japanese corporation, thereafter sold the electrical
capacitors to Arcelik.  Mayo Decl. ¶¶ 7, 11; Am. Compl. ¶¶ 16, 107.

 Arcelik allegedly used the EPCOS capacitors in Arcelik's clothing dryers sold in
numerous countries, but not in the United States.  Mayo Decl. ¶¶ 10-11; Am. Compl. ¶¶ 14, 16.

 Although DuPont India supplied the Zytel® FR50 NC010 at issue to EPCOS India
between October 2010 and August 2012, it was not until in or around November of 2012 that
EPCOS made any complaint to DuPont India concerning the affected Zytel®, and not until
early 2013 that Arcelik complained concerning its alleged product failures.  Mayo Decl. ¶ 12.
Since 2012, EPCOS has continued to assert claims for damages related to the Zytel® FR50
NC010 lots arising out of EPCOS' sale of its capacitors containing Zytel® FR50 NC010 to
Arcelik.  Although EPCOS has not commenced litigation, those claims have not been withdrawn.
*Id.* ¶ 13.  Since early 2013 -- more than two years before Arcelik filed its initial Complaint in
October 2015 -- Arcelik has also intermittently asserted claims against DuPont for damages

related to its use of the EPCOS capacitors.  *Id.*  Arcelik's claims are time-barred by this delay.

(*See infra,* Section II.F.)

<u>**ARGUMENT**</u>

**I.**   <u>**Arcelik Has Failed to Join Necessary and Indispensable Parties EPCOS India and EPCOS AG Whose Presence Would Destroy Diversity Jurisdiction**</u>

Arcelik's Amended Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join two necessary and indispensable parties:  EPCOS India and EPCOS AG. Rule 19 governs when potential parties to an action must be joined.  *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F.Supp. 2d 426, 431 (D. Del. 2005).  "When making a Rule 19 determination, the Court may consider evidence outside the pleadings."  *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001) (citations omitted).

**A.**   **EPCOS India and EPCOS AG are Necessary Parties**

Rule 19(a) dictates that a party is "necessary," and must be joined to a litigation, if: (1) complete relief cannot be afforded to the existing parties in the party's absence, (2) the disposition of the action would impair or impede the absent party's ability to protect its own interest, or (3) any of the existing parties would be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations.  Fed. R. Civ. P. 19(a).

The Court cannot grant complete relief here without EPCOS AG and EPCOS India. It is undisputed that Arcelik did not purchase the Zytel® at issue.  *See* Am. Compl. ¶¶ 16-18*;* Mayo Decl. ¶¶ 4-9.  EPCOS India purchased it as a raw material, and then allegedly used it as a component part in its manufacture of electrical capacitors that its German affiliate, EPCOS AG, sold to Arcelik.  *Id.*  As such, this case implicates the raw material/component part supplier defenses, which cannot be litigated without EPCOS.  To wit:  the determination of whether the Zytel® nylon resin at issue was defective (and thus whether any misrepresentations were made concerning its electrical properties) turns, at least in part, on the purpose for which EPCOS

6

purchased the Zytel®, the extent of DuPont India's involvement, if any, in EPCOS' decision, as well as factual issues concerning EPCOS' incorporation of the nylon resin in its manufacture of the capacitors. *See Cropper,* 542 F.Supp. at 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby.") (citing *Castaldo v. Pittsburg-DesMoines Steel Co.,* 376 A.2d 88, 90 (Del. 1977)).

Nor does Arcelik allege that it had any contractual relationship with, or actually met with or engaged in direct communications concerning Zytel®'s use in its dryers with the U.S. Parent or any DuPont subsidiary prior to the commencement of this dispute. Instead, by its own admission, Arcelik's communications regarding the electrical capabilities of the capacitors were with EPCOS. *See* Am. Compl. ¶¶ 16-17, 107-08. Moreover, Arcelik alleges that EPCOS selected Zytel® for use as a component part in the EPCOS capacitors in reliance on DuPont's alleged representations regarding its electrical characteristics. *Id.* ¶ 110. Clearly, the foreign EPCOS entities are "more than a witness to the activities at issue in this case – [they are] active participant[s]" whose presence here is crucial. *Martinez v. E.I. du Pont de Nemours and Co.,* 82 A.3d 1, 21 (Del. Super. Ct. 2012); *see also Ethypharm,* 388 F.Supp. at 431 (absent foreign entity was necessary "because plaintiffs' interactions were almost entirely with [the foreign entity] and not with defendant" such that the absent foreign entity would "possess the necessary witness and information pertinent to determining what acts were performed, by whom, and whether the acts were wrongful."); *Polanco v. H.B. Fuller Co.,* 941 F.Supp. 1512, 1520-23 (D. Minn. 1996) (foreign manufacturer who was an active participant was a necessary and indispensable party); *In re Toyota Motor Corp.,* 785 F.Supp.2d 883, 905-06 (C.D. Cal. 2011) (unnamed foreign entities were necessary parties because they were "active participants" in wrongful conduct and allegations that were critical to the disposition of the lawsuit).

7

The second and third reasons a party is necessary -- the absent party's ability to protect its own interests and whether an existing party risks multiple or inconsistent obligations -- also require EPCOS presence.  EPCOS AG and EPCOS India have a direct interest in the determination of whether the Zytel® nylon resin incorporated into their capacitors was defective, or if any implied warranties existed or were breached.  Although it has not yet filed a lawsuit, EPCOS has demanded recoveries involving DuPont China and DuPont India, including indemnification for damages asserted by Arcelik against EPCOS.  *See* Mayo Decl. at ¶¶ 12-13. Similarly, if Arcelik were to recover damages or obtain a finding of liability based on negligent manufacture of Zytel® FR50 NC010 in this case, involved foreign subsidiaries of DuPont could be subject to additional liability through a subsequent action filed by the EPCOS entities. *See, e.g., In re Toyota Motor Corp.,* 785 F.Supp.2d at 907 ("A judgment entered against the named Toyota Defendants might have a preclusive effect on the unnamed foreign entities and weaken their bargaining position and/or impair their ability to protect their own interests in any current and future litigation.")

### B.      EPCOS India and EPCOS AG are Indispensable Parties

The foreign EPCOS entities, while necessary, cannot be joined because this Court lacks personal jurisdiction over them and because their joinder would destroy this Court's jurisdiction. *See Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 835-36, n. 6 (D. Del. 1978) ("When an alien sues a citizen of a state and another alien, the rule of complete diversity divests a court of jurisdiction under 28 U.S.C. § 1332"); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980) (the requirement of complete diversity "has been applied to deny jurisdiction in an action by an alien against citizens of a state and another alien."); *In re Toyota Motor Corp.,* 785 F.Supp.2d at 907 (joinder of necessary foreign entities was not feasible where the court lacked personal jurisdiction over them).

Because the EPCOS entities cannot be joined in this action, the Court must next determine if they are indispensable, i.e., "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). This analysis is guided by four factors:

(1)     the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)     the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures;

(3)     whether a judgment rendered in the person's absence would be adequate; and

(4)     whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).   Taking these factors into account, equity and good conscience dictate that the action should be dismissed.

First Factor:  Actual Prejudice.  An action centered on whether a component part of a manufactured product is defective plainly requires joinder of the entities that purchased the component, and then combined it in their manufacture and sale of the finished product.  This is especially true where the plaintiff's contract is with the manufacturer of the finished product. *Polanco,* 941 F.Supp. at 1520 ("a contracting party is the paradigm of an indispensable party") (citing *Travelers Indemnity Co. v. Household Int'l, Inc.,* 775 F.Supp. 518, 527 (D. Conn. 1991)).

As to the prejudice suffered by DuPont, "[a]ny judgment entered without the presence of [the foreign entities] subjects DuPont to being judged solely responsible for a liability which, if it exists at all, it undoubtedly shares." *Martinez*, 82 A.3d at 23.   In that event, DuPont may be forced to pursue a separate lawsuit for indemnity or contribution, "an unnecessary waste of time and expense that would not be incurred if these claims were litigated in the appropriate forum against the proper defendant." *Id*. at 24.  A finding of liability against the U.S. Parent could also result in actual prejudice to the U.S. Parent's foreign subsidiaries:  DuPont India, the seller and alleged warrantor of the Zytel® FR50 NC010, would be prejudiced by a finding that the alleged

9

warranty was breached, and DuPont China, the manufacturer, would be prejudiced by a finding that its product was negligently manufactured. *Id.; Polanco,* 941 F.Supp. at 1520-23.

Likewise, the EPCOS entities would suffer prejudice if an adverse judgment was used against them in a subsequent action, for example a finding that the Zytel® was not defective, and that fault for the fires lies with the EPCOS capacitors. *See, e.g., In re Toyota Motor Corp.,* 785 F.Supp. 2d at 908 ("[T]he unnamed foreign entities here would be prejudiced by the denial of any opportunity to defend their product safety and marketing practices."); *Polanco,* 941 F.Supp. at 1520-23 (collecting cases and finding that a judgment against the parent company would "speak[] directly and adversely to the quality of [the foreign manufacturer's] products.")

Critically, no party to the present action will adequately represent the absent EPCOS entities' interests, requiring their presence in this action. *See Polanco,* 941 F.Supp. at 1522 (adequate representation of an absent party's interests requires consideration of "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.") (quoting *Shermoen v. U.S.,* 982 F.2d 1312, 1318 (9th Cir. 1992)).

<u>Second Factor:  Court's Ability to Lessen Prejudice.</u>  No modification to a judgment could reasonably or adequately protect the U.S. Parent or the absent EPCOS entities from prejudice.  To prevail on its claims, Arcelik will have to prove, among other things, that (1) the EPCOS capacitors were in fact defective; and (2) that EPCOS India and EPCOS AG breached various contracts and warranties.  Those findings are unavoidable, and inarguably prejudicial to the absent EPCOS entities.

<u>Third/Fourth Factors:  Adequacy of the Judgment and Plaintiff's Alternative Remedy.</u>
The U.S. Supreme Court has interpreted the third factor -- whether a judgment rendered in the

absence of necessary parties would be adequate -- as referring to the interests of the court and the public "in settling disputes by wholes, wherever possible." *Republic of Philippines v. Pimentel,* 553 U.S. 851, 870 (2008) (citation omitted).  Although no court may be able to hear all interested parties in a single dispute, Arcelik has an adequate alternative remedy:  it may sue EPCOS in the European Union, or in India as required by the contract between EPCOS India and DuPont India, which is binding on Arcelik.  *See* Mayo Decl. ¶ 8; *see Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163, 166 (Del. Super. Ct. 1986) ("A secondary purchaser who claims the protection of a warranty is subject to the same … remedy limitation clauses that were the basis of the underlying sales agreement.").  But there is no justification for the expenditure of U.S. judicial resources on a lawsuit against the U.S. Parent only, which was not a party to the relevant transactions.  In any event, a judgment in Arcelik's favor would be inadequate because the foreign EPCOS entities "would not be bound by the judgment … where they were not parties." *Pimentel,* 553 U.S. at 871; *see also Jurimex,* 201 F.R.D. at 340-41 ("A judgment in Defendant's favor would not be 'adequate' because Plaintiffs could subsequently sue the [absent foreign subsidiaries] in a different forum based on essentially the same facts, while a judgment in Plaintiffs' favor may be 'hollow' because the proper defendant was never joined.").

The conclusion is inescapable:  EPCOS AG and EPCOS India are necessary and indispensable parties to the claims that Arcelik has asserted in this action.  Because joining even one of them would destroy this Court's jurisdiction, "equity and good conscience" require that the Amended Complaint be dismissed with prejudice.  Fed.R.Civ.P. 19(b); *Polanco,* 941 F.Supp. at 1523 ("Equity prohibits this action from proceeding where [the foreign manufacturer] will be unable to defend its products or marketing methods, but may ultimately face liability as a result of legal determinations made in its absence … It will be prejudiced without the opportunity to participate, and the Court cannot fashion any protection against this prejudice.")

## II.    All Five Causes of Action Must be Dismissed for Failure to State a Claim

### A.    Arcelik's Negligent Misrepresentation and Negligent Manufacturing Claims Are Barred by the Economic Loss Rule (Counts I and IV)

Under Delaware law, the economic loss rule "prohibits recovery in tort where a product has damaged only itself (*i.e.,* has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in nature."  *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992) (emphasis in original).  The doctrine "is a complete bar to the recovery of economic loss caused by qualitatively defective products."  *Id.* at 1198.

The damages that Arcelik seeks to recover are for purely economic loss, such as alleged recall expenses and damage to the dryers themselves.  *See* Am.Compl. ¶¶ 64-65, 83, 91, 97, 105, 112, 114.  Arcelik's claimed damages do not fall within the "other property" exception to the economic loss rule because the allegedly defective EPCOS capacitors containing the Zytel were an integrated part of Arcelik's dryers.  *See*, *e.g.*, *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F.Supp.2d 564, 569-71 (D.Del. 2002) (dismissing tort claims where alleged damage involved components combined into a single "integrated unit" and incidental damage to other property did not prevent application of the economic loss rule.)  Therefore, given that economic loss constitutes the entirety of Arcelik's alleged harm, its negligent manufacturing and negligent misrepresentation claims must be dismissed with prejudice.

### B.    Arcelik's Negligent Misrepresentation Claim Fails because Arcelik had no Business Relationship with any DuPont Entity (Count I)

To prove negligent misrepresentation, a plaintiff must establish: "(1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance upon the false information."  *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F.Supp. 2d 519, 525 (D. Del. 2012)

(citation omitted).  Importantly, a "pecuniary duty" arises only "when the parties are in a business relationship, from which they expect pecuniary benefits."  *Id.* (citing *Outdoor Techs., Inc. v. Allfirst Fin. Inc.*, 2001 WL 541472, at \*5 (Del. Super. Ct. Apr. 12, 2001)).

Arcelik has not pled -- and cannot plead -- that it was in a contractual or business relationship with DuPont or any of its subsidiaries concerning the Zytel® FR50 NC010 from which it expected to derive a pecuniary benefit.  Rather, Arcelik admits that its contract was with EPCOS AG only.  *See* Am. Compl. ¶¶ 16, 106-113.  Furthermore, as a mere provider to EPCOS India of nylon resin – in the nature of a raw material – DuPont did not expect to receive any pecuniary benefit from Arcelik or owe Arcelik any duty to provide any information for Zytel®.  *See, e.g., In re TMJ Implants Prod. Liab. Litig.,* 872 F.Supp. 1019, 1027 (D.Minn. 1995) ("[The manufacturer] provided a solvent … to [seller], who combined the solvent with other ingredients, packaged it, and sold it … [The manufacturer] had no opportunity or duty to warn the ultimate consumer.  It neither packaged nor placed the product on the market….") (citation omitted)).

### C.   Arcelik's Fraud Claims Fail on the Face of the Amended Complaint (Counts II and III)

Arcelik has alleged both common law fraud and violation of the Delaware Consumer Fraud Act, 6 *Del. C.* §§ 2511-2527 (the "DCFA").  When fraud is alleged, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The heightened pleading standard applies with equal force to claims under the DCFA.  *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743 (D. Del. 2008) (dismissing DCFA claim for failure to plead fraud with specificity).  Arcelik has failed, yet again, to satisfy this standard in its Amended Complaint.

### 1.   Fraudulent Misrepresentation (Count II)

To establish fraud, a plaintiff must prove: (1) a false representation by the defendant;

13

(2) with knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as the result of such reliance. *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F.Supp. 2d 546, 559-60 (D. Del. 2000) (citing *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983)).  Arcelik has failed to plead at least the first two elements.

Critically, Arcelik has not alleged that Zytel® FR50 NC010 suffers from a ***design*** defect. To the contrary, Arcelik has alleged only that particular batches of Zytel® FR50 NC010 were defectively manufactured based on an issue with a particular supplier.  Am. Compl. ¶¶ 32, 101. In other words, Arcelik has not alleged -- and cannot allege -- that any of the supposed representations by DuPont, to the extent they apply to Zytel® FR50 NC010 generally, were false, which proves fatal to the first element.  In fact, the dates alleged by Plaintiff for DuPont's alleged representations about Zytel® predate by many years the alleged manufacturing concern (*see* Am. Compl. ¶¶ 45-54, alleging certain representations made from 2001 through 2007)[3], which proves fatal to the second element of Arcelik's fraud claim:  knowledge.

---

[3]       In addition to alleged misrepresentations made by DuPont , the Amended Complaint also alleges that certain misrepresentations were made in "Yellow Cards" issued from 1996 to 2012 by the Underwriters Laboratories LLC ("UL")  (*see* Am. Compl. ¶¶ 55-59.)  However, as Arcelik correctly notes in its Amended Complaint, "UL is an independent safety science company" (*Id.* ¶ 55) and therefore its Yellow Cards cannot be attributed to DuPont.  Furthermore, Yellow Cards issued by UL include the following disclaimer:

> This Yellow Card, the database from which it was generated, and all related materials, support and services, are made by UL for use only by permission and "as is", without any representation or warranty of any kind, express or implied, including but not limited to any implied warranties of merchantability, fitness for a particular purpose or that the products identified in this Yellow Card will satisfy the user's requirement.  UL cannot and does not warrant that the data contained in this Yellow Card is current, accurate, or complete.  The user must independently confirm the conformance of any product to the applicable standards or requirements with the manufacturer of that product …."

An exemplar UL Yellow Card for Zytel® FR50 is attached hereto as Exhibit F.

Arcelik must plead with specificity that the alleged misrepresentations by DuPont were made with knowledge that they were false, or with reckless indifference to their truth. The reckless indifference standard is not an invitation to ignore the knowledge element. To the contrary, in this context, reckless indifference requires a "***conscious*** indifference to the decision's foreseeable results." *D.R.R., L.L.C. v. Sears, Roebuck and Co.*, 949 F.Supp. 1132, 1138 (D. Del. 1996) (quoting *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. Super. Ct. 1987) (emphasis added)). Arcelik's Amended Complaint fails to allege that any DuPont entity had any knowledge of any issues with any allegedly defective Zytel® FR50 NC010 prior to selling the product to EPCOS India. In the absence of such pleading, the Amended Complaint falls well short of pleading fraud, even under the more forgiving standards of Rule 8.

### 2. Delaware Consumer Fraud Act (Count III)

Arcelik's DCFA claim fails for the same reasons as its fraudulent misrepresentation claim: Arcelik has not alleged that any statements by DuPont were false as to Zytel® FR50 NC010 properly manufactured, nor has it alleged that any DuPont entity was aware of any alleged manufacturing defect prior to the sale of the product. But the DCFA claim fails for an even more basic reason: no transactions occurred in Delaware.

The DCFA was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce ***in part or wholly within this State***." 6 *Del. C.* § 2512 (emphasis added). Based on that express purpose, Delaware courts have held that where "no transaction occurred in Delaware, the Delaware Consumer Fraud Act cannot apply." *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 631 (Del. Ch. 2005) (same); *Marshall v. Priceline.com, Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (DCFA is not applicable "to fraudulent transactions which did not occur in Delaware.").

15

Arcelik, a Turkish company, purchased capacitors from EPCOS AG, a German company, containing raw material manufactured in China and sold in India.  Arcelik used those capacitors to manufacture appliances, none of which were sold in the United States, and no U.S. entity was a party to those transactions.  *See* Mayo Decl. at ¶¶ 4-11.  None of these facts implicate trade or commerce within the State of Delaware, or in any way impact Delaware consumers.

### D.    Arcelik's Negligent Manufacturing Claim Is Barred by the Economic Loss Rule and the Applicable Statute of Limitations (Count IV)

Arcelik's negligent manufacturing claim is barred by the economic loss doctrine because it seeks to recover purely economic damages.  *See supra,* Section II.A.  The claim is also time-barred by the applicable two-year statute of limitation in China, the country where the allegedly defective Zytel® was manufactured.  *See supra*, Section II.F.

### E.    Arcelik Has Failed to Plead a Claim for Tortious Interference with a Contract (Count V)

Arcelik's tortious interference claim relies on the allegation that the sale to EPCOS India of allegedly defective Zytel® "caused Epcos not to perform its contractual obligations" with Arcelik.[4]  *See* Am. Compl. ¶ 110.  To establish tortious interference with a contract, a plaintiff must prove:  (1) the existence of a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury.  *Aspen Advisors LLC v. United Artists Theatre Co.,* 861 A.2d 1251, 1265-66 (Del. 2004) (citing *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 993 (Del. Ch. 1987)).  Arcelik fails to plead the second and third elements.

---

[4]    This claim is particularly instructive on the indispensability of EPCOS AG to this litigation. To prevail on this claim, Arcelik must prove that EPCOS failed to perform its contractual obligations.  EPCOS undoubtedly would be prejudiced by such a ruling, and no modification of the judgment can prevent that prejudice.  *See also Polanco,* 941 F.Supp. at 1520 ("a contracting party is the paradigm of an indispensable party") (citation omitted).

First, Arcelik attempts to plead that DuPont knew of the Arcelik-EPCOS contract by way of a single, boilerplate allegation, made "on information and belief," that "DuPont and its subsidiary and agent DuPont India were aware of this contract."  Am. Compl. ¶ 109.  This formulaic recitation of the knowledge element, without any supporting facts, falls far short of the required pleading standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

Second, Arcelik has not alleged, and cannot allege, that DuPont intended to interfere with the Arcelik-EPCOS contract.  "A defendant acts intentionally by desiring his act to cause the breach or by being substantially certain that the act will result in a breach."  *Lloyd v. Jefferson*, 53 F.Supp. 2d 643, 676 (D. Del. 1999) (citing *Layfield v. Beebe Med. Ctr., Inc.*, 1997 WL 716900, at *5 (Del. Super. Ct. July 18, 1997)).  Here again, Arcelik parrots the element of the cause of action, alleging that "DuPont knew that the interference was certain or substantially certain to occur," without pleading any supporting facts.  Am. Compl. ¶ 111.  In addition, the Amended Complaint makes clear that DuPont's alleged misrepresentations, which purportedly caused EPCOS not to perform its contract, occurred years before the Arcelik-EPCOS contract existed.  *See, e.g.,* Am. Compl. ¶¶ 45, 46, 54.  To state the obvious, DuPont could not have intended to interfere with a contract that did not exist.  Similarly, Arcelik cannot allege that any of the representations by DuPont were false.  Arcelik has simply alleged that the Zytel® at issue was part of a "bad," "defective" or "faulty" batch of Zytel® manufactured years after those representations.  Am. Compl. ¶¶ 5, 32, 36, 58, 101.  Thus, DuPont could not have intended to interfere with a contract by misrepresenting its products.

17

**F.     Arcelik's Misrepresentation, Negligent Manufacturing and Tortious Interference with Contract Claims Are Time Barred (Counts I, II, IV and V)**

Arcelik's claims are also barred by the applicable statutes of limitation in the foreign countries where those causes of action arose.  Delaware's "borrowing statute," which a federal court sitting in diversity should apply, requires that a court apply the shortest statute of limitations available "[w]here a cause of action arises outside of this State."  10 *Del. C.* § 8121; *In re Asbestos Litig.,* 2015 WL 5168121 (Del. Super. Ct. Sept. 1, 2015); *Sellon v. General Motors Corp.,* 571 F.Supp. 1094, 1097 (D. Del. 1983).  Arcelik alleges that it learned of the basis for its claims at least as early as February 2013.  Am. Compl. ¶ 40.  Because the Complaint was filed in October 2015, any claim subject to a limitation period of two years or less is time barred.

Arcelik's claims for negligent and fraudulent misrepresentation (Counts I and II) would have arisen in Turkey where the alleged representations would have been received by Arcelik.  Those claims are time barred under Turkish law, which sets forth a two-year statute of limitation for tort claims.  *See* Article 72 of the Turkish Code of Obligations; *see also Dalkilic v. Titan Corp.,* 516 F.Supp.2d 1177, 1186 (S.D. Cal. 2007) (dismissing plaintiffs' fraud and negligent misrepresentation claims as time barred by Turkey's former one-year statute of limitations applicable to tort claims.)

Arcelik's negligent manufacturing claim (Count IV) would have arisen in China where the allegedly defective Zytel® was manufactured.  That claim is time barred by China's Product Quality Law, which sets forth a two-year statute of limitation for product defect claims. *See* Law of the People's Republic of China on Product Quality, Article 45 ("The limitation period for bringing an action claiming compensation for the damage done by the defect in a product is two years, counting from the date on which the party concerned knows of or should

know of the infringement of his rights and interests.").[5]

Arcelik's claim for tortious interference with a contract (Count V) would have arisen in India, when DuPont India allegedly made certain misrepresentations concerning Zytel®'s electrical capabilities to EPCOS. That claim is barred by India's Limitation Act, which sets forth a one-year statute of limitations for tort based claims for interference with a contract. *See* India Limitation Act, 1963, Part VII, Section 78, Suits Relating to Torts (a claim for "compensation for inducing a person to break a contract with the plaintiff" must be brought within one year from the date of the alleged breach).

## III.    Alternatively, the Amended Complaint May Be Dismissed on *Forum Non Conveniens* Grounds

A complaint should be dismissed for *forum non conveniens* if (1) an adequate forum exists in which the parties can litigate the claim, and (2) the balance of private and public interest factors favor dismissal. *See Delta Air Lines, Inc. v. Chimet, S.p.A.,* 619 F.3d 288, 294-95 (3d. Cir. 2010); *Windt v. Qwest Commc'ns Int'l,* 529 F.3d 183, 189 (3d Cir. 2008).

India is an alternative adequate forum to litigate this action. Both EPCOS India and DuPont India are amenable to process in India, and the terms of sale for the Zytel® FR50 NC010 at issue, which is binding on Arcelik, included an express forum provision which provides that all disputes shall be litigated in India. *See* Mayo Decl. ¶ 8.

Not only is India proper, but the private and public factors weigh in favor of litigating the case in India or are neutral. Nearly all evidence and witnesses relating to, *inter alia,* why EPCOS purchased either DuPont's nylon resin or other manufacturers'; the terms and conditions

---

[5]    To the extent Arcelik argues that Turkish law applies on grounds that EPCOS delivered its capacitors to Arcelik in Turkey, the applicable two-year statute of limitation bars the claim. *See* Turkish Law on Consumer Protection, Article 12 ("Unless a longer period has been stipulated in the laws or the contract executed between the parties, the liability to the defective good shall be subject to a limitation period of two (2) years from the time of delivery of the goods to the consumer, even if the defect becomes apparent afterwards.")

of the DuPont-EPCOS sales and the EPCOS-Arcelik sales; DuPont's representations and warranties to EPCOS, if any, and EPCOS' representations and warranties to Arcelik; and the manufacturing, testing and quality control processes involved in EPCOS' capacitor manufacture are located in India.  Additional documents and witnesses regarding, among other things, Arcelik's own manufacturing, testing and quality control for the defective clothing dryers at issue are located outside of the United States:  Arcelik itself is located in Turkey and does business in India.  As a foreign citizen, Arcelik's decision to file suit in the United States is afforded little or no deference.  *Windt,* 529 F.3d at 190 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

## <u>CONCLUSION</u>

For the foregoing reasons, DuPont respectfully requests that the Court dismiss Arcelik's Amended Complaint in its entirety, with prejudice.

Dated:  March 22, 2017

OF COUNSEL:

Peter L. Haviland (*admitted pro hac vice*)
Scott S. Humphreys (*admitted pro hac vice*)
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone:  (424) 204-4400
Facsimile:   (424) 204-4350
E-mail: havilandp@ballardspahr.com
             humphreyss@ballardspahr.com

By: *Beth Moskow-Schnoll*
Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile:  (302) 252-4466
E-mail: moskowb@ballardspahr.com
             caesare@ballardspahr.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*