**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARÇELIK, A.Ş.<br><br>    Plaintiff,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND<br>COMPANY,<br><br>    Defendant. | C.A. No.: 1:15-cv-00961 (LPS) |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS**

OF COUNSEL:

Jonathan L. Greenblatt
SHEARMAN & STERLING LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
jgreenblatt@shearman.com

Dated: May 3, 2017

John M. Seaman (DE Bar # 3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
seaman@abramsbayliss.com

*Attorneys for Plaintiff Arçelik A.S.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ....................................................................................2

I.  Dismissal Under Rule 12(b)(7) is Inappropriate Because DuPont Has Failed to Show
    That Any Non-Party is Necessary and Indispensable With Respect to Any Claim ...........3

    A.  The EPCOS Parties are Not Necessary Parties......................................................4

        1.  Claim-by-Claim Rule 19 Analysis..............................................................4

            a.  Misrepresentation Claims ................................................................4

            b.  Tortious Interference....................................................................5

            c.  Negligent Manufacturing Claim .........................................................6

        2.  Aggregated Analysis of the EPCOS Parties' Necessity ............................6

    B.  Even if the EPCOS Entities Are Necessary, They Are Not Indispensable.............9

II.  Arcelik's Complaint Does Not Fail to State a Claim........................................10

    A.  Arcelik States a Claim for Negligent Misrepresentation ......................................11

    B.  Arcelik States its Fraud Claims..........................................................14

        1.  Arcelik States a Fraudulent Misrepresentation Claim ..............................14

        2.  Arcelik States a DCFA Claim................................................................16

    C.  Arcelik States a Negligent Manufacture Claim ...................................................16

    D.  Arcelik States a Tortious Interference Claim.........................................................17

    E.  Arcelik's Claims Are Not Time Barred ...............................................................18

III.  DuPont Again Fails to Establish the Elements for *Forum Non Conveniens* Dismissal.....18

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Page**

*Arkansas v. Texas*, 346 U.S. 368 (1953)................................................................5

*Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011)....................................18

*Atwell v. RHIS, Inc.*, No. 02C-12-003, 2006 WL 2686532 (Del. Super. Aug. 18, 2006)................................................................11

*Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050 (3d Cir. 1988)................................................................9

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000)............................................4

*Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220 (3d Cir. 1995)........................................19

*Bilt–Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005)............................11

*Carello v. PricewaterhouseCoopers LLP*, No. 01C-10-219, 2002 WL 1454111 (Del. Super. July 3, 2002)................................................................13

*Childress v. Gresen Mfg. Co.*, 888 F.2d 45 (6th Cir. 1989)............................................................6

*Del. Art Museum v. Ann BehaArchitects, Inc.*, No. 06-481, 2007 WL 2601472 (D. Del. Sept. 11, 2007) ................................................................14

*Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564 (D. Del. 2002)................................................................14

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87 (3d Cir. 2011) ............................3

*Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014)........................................................19

*E.I. Du Pont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112 (D. Del. 2000) ................................................................5

*Ethypharm S.A. Fr. v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426 (D. Del. 2005) ........................8

*Field v. Volkswagenwerk AG*, 626 F.2d 293 (3d Cir. 1980)........................................................8

*Fitzgibbon v. Ing Bank*, Civil Action No. 07-735JJF, 2008 WL 3977985 (D. Del. Aug. 26, 2008) ................................................................15

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)........................................................10

*Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985) ................................................8

*Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635 (3d Cir. 1998) ..........................................10

*Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306 (3d Cir. 2007) ..................................10

*Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094 (S.D.N.Y. 1982) ....................................19

*Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663 (D. Del. 2012) ........................................................................................................................18

*Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290 (D. Colo. 1984)..........................................15

*H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129 (Del. Ch. 2003)..............................................14

*In re PNC Bank, Delaware v. Berg*, No. 94C-09-208, 1997 WL 527978 (Del. Super. Jan. 31, 1997)................................................................................................................18

*In re Rio Piedras Explosion Litig.*, 179 F.R.D. 59 (D.P.R. 1998) .............................................7, 8

*In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019 (D. Minn. 1995) .................................7

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011) ..............................................8

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).....................................16

*Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166 (E.D. Pa. 2015) ................4, 5, 8

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993) .................8, 9

*Johnson v. Ace Cash Express Inc.*, No. 13-1186, 2015 WL 4397482 (D. Del. July 17, 2015) ....................................................................................................................14

*Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244 (D. Del. 2009) .................................................17

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676 (D. Del. 2010) ........................................................................................................3, 5, 8, 12

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519 (D. Del. 2012) ........................................................................................................................12

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) .........................................................19

*LaMontagne v. E.I. Du Pont De Nemours & Co.*, 41 F.3d 846 (2d Cir. 1994) ..............................6

*LoCurto v. LoCurto*, No. 07-823, 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008) ........................4

*Lony v. E.I. Du Pont de Nemours & Co.*, 821 F. Supp. 956 (D. Del. 1993)................................16

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989) .......................................20

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991) ........................20

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000) ..........................................................11

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ..........................................4

*Martinez v. E.I. DuPont De Nemours & Co.*, 82 A.3d 1 (Del. Super. 2012) ..............7, 8

*Naidu v. Laird*, 539 A.2d 1064 (Del. 1988) ..................................................................11

*O'Leary v. Telecom Res. Serv., LLC*, No. 10C-03-108, 2011 WL 379300 (Del.
   Super. Jan. 14, 2011) ..............................................................................................17

*Outdoor Techs., Inc. v. Allfirst Fin. Inc.*, No. 99C-09-151, 2001 WL 541472 (Del.
   Super. Apr. 12, 2001) ........................................................................................12, 13

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...........................................11

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................19

*Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512 (D. Minn. 1996) ...............................7, 8

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968) ..................10

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114 (D.C. Cir. 1991) ....................8

*Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991) ..................................................20

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983) ......................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (207) ...............................17

*Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802 (D. Del. 2011) ...............18

*Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278 (Del. Sup. 1960) ......15

*Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725 (Del. Ch. 2014) .................11, 12

*Weisel Partners LLC v. BNP Paribas*, No. 07-6198, 2008 WL 3977887 (N.D. Cal.
   Aug. 26, 2008) .........................................................................................................19

*Windt v. Qwest Comms. Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008) ............................19, 20

*Yarger v. ING Bank, fsb*, 285 F.R.D. 308 (D. Del. 2012) ..............................................16

*Young v. Joyce*, 351 A.2d 857 (Del. 1975) ....................................................................16

**Statutes & Rules**

6 *Del. C.* § 2512 ..................................................................................................16

Fed. R. Civ. P. 9(b) ........................................................................................14, 15

Fed. R. Civ. P. 12(b)(6)...................................................................................10

Fed. R. Civ. P. 12(b)(7).....................................................................................3

Fed. R. Civ. P. 19 ................................................................................. *passim*

**Other Authorities**

7 Wright, Miller & Kane, Federal Practice and Procedure (3d ed. 2001) ..................................7, 9

Plaintiff Arçelik, A.Ş. ("Arcelik") respectfully submits this Opposition to the Renewed Motion to Dismiss Plaintiff's Amended Complaint (D.I. 29) ("Renewed Motion" or "MTD") filed by Defendant E.I. Du Pont de Nemours and Company ("DuPont").

## PRELIMINARY STATEMENT

In its original motion to dismiss, DuPont asserted three lines of argument in an effort to avoid liability for damages caused by its defective products and misleading representations: (1) the case could not proceed because DuPont India, DuPont China, and certain unrelated third parties (EPCOS) were necessary and indispensable, but had not been joined in the case; (2) even if these parties were not joined, DuPont could not be held liable for the actions of its subsidiaries; and (3) Arcelik failed to properly state claims for which DuPont could be held liable.

Arcelik rebutted each of these arguments. Ultimately, the court granted discovery to explore questions of agency and whether the EPCOS parties were necessary and indispensable. Rather than pursue that discovery, DuPont withdrew any question of agency or the necessity of joining its subsidiaries for purposes of determining its motion to dismiss. DuPont, therefore, has conceded for purposes of this motion that it can be held liable for the actions of its subsidiaries and that its subsidiaries need not be parties to this litigation.

In its Renewed Motion, DuPont did nothing to strengthen its claim that this case should be dismissed.[1] It continues to argue that EPCOS parties are necessary and indispensable. It also reasserts its arguments that Arcelik failed to state claims against DuPont, that certain of its claims are time barred, and that this case should be dismissed on the grounds of *forum non conveniens*. DuPont, however, fails to address the rebuttal arguments presented in Arcelik's

---

[1] DuPont's Renewed Motion essentially recycles the arguments and allegations in its initial motion to dismiss. Arcelik addresses those arguments below. However, Arcelik incorporates by reference the arguments and facts set forth in its initial responsive submission. (D.I. 10.)

original responsive papers. In the limited instances where DuPont cited new cases, those cases either are distinguishable on the facts or affirmatively support Arcelik's position. Under the circumstances, DuPont's arguments remain unpersuasive.

Arcelik incurred damage and loss as a result of faulty batches of Zytel, a DuPont product. Zytel was developed by DuPont, is marketed by DuPont as a DuPont product, and is sold on the strength of the DuPont brand. Every representation about Zytel identified in Arcelik's complaint was made by DuPont in literature it published for the purpose of convincing direct and indirect purchasers to buy and use this DuPont product. Under these circumstances, DuPont's efforts to hide behind EPCOS are unavailing. Arcelik's grievance is with DuPont, not with EPCOS. Moreover, Arcelik has fully and properly articulated its grievances against DuPont. None of DuPont's arguments shield it from liability or otherwise diminish the sufficiency of Arcelik's claims.

Lastly, DuPont's efforts to have this case dismissed on *forum non conveniens* grounds are meritless. DuPont claims that it would be subjected to great inconvenience if this suit were to proceed in Delaware. DuPont, of course, is a Delaware corporation with its headquarters in Delaware. No jurisdiction could be more convenient for DuPont, and courts are rightfully skeptical of claims of inconvenience by defendants sued in their home jurisdictions. DuPont's argument also fails because it has not identified an available and adequate alternative forum in which *it* would be amenable to suit, as opposed to jurisdictions where its subsidiaries could be sued. A *forum non conveniens* dismissal is inappropriate where the defendant has failed to identify an alternative forum where *the defendant itself* would be amenable to suit.

## **STATEMENT OF FACTS**

Arcelik manufactured clothing dryers containing capacitors made from Zytel – a plastic resin designed to insulate electricity that is manufactured, marketed, and sold by DuPont, directly

and through subsidiaries. (Am. Compl. ¶¶ 3, 8.) Arcelik relied on DuPont representations that Zytel had various characteristics which made it suitable for use in Arcelik's dryers. (*Id.* ¶¶ 45-54.)[2] In late 2012 and early 2013, those dryers began catching fire as a result of defective Zytel, which was contaminated in a way that degraded the product's electrical insulation capabilities. (*Id.* ¶¶ 13, 32-41.) The fires damaged the dryers and homes of Arcelik customers, causing costs that customers sought to recoup from Arcelik. (*Id.* ¶ 13.) Arcelik, thus, suffered significant damages, including costs associated with a recall of the affected dryers and with compensating customers for damage to their homes. (*Id.* ¶¶ 64-65.)

## I. Dismissal Under Rule 12(b)(7) is Inappropriate Because DuPont Has Failed to Show That Any Non-Party is Necessary and Indispensable With Respect to Any Claim

DuPont once again seeks dismissal under Rule 12(b)(7) on the grounds that Arcelik failed to join EPCOS India – the alleged direct purchaser of Zytel – and EPCOS AG – which sold Arcelik capacitors incorporating Zytel – under Rule 19. (MTD at 6-11.) "A court, in evaluating such a motion, applies the two-part test found in Rule 19": (1) "whether the absent party is necessary"; and, if so, (2) "whether a necessary party is indispensable to a fair resolution of the issues." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010). "For the purpose of Rule 12(b)(7), the court accepts as true the factual allegations of the complaint." *Id.* The moving party "bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011). DuPont again has failed to meet its burden.

DuPont improperly assumes that the EPCOS parties are necessary and indispensable to

---

[2] All of these representations about Zytel were made by DuPont (the defendant in this action), not by any of DuPont's foreign subsidiaries. (Am. Compl. ¶¶ 45-54, 96.)

this litigation as a whole, rather than addressing the issue on a claim-by-claim basis.[3] Had DuPont done so, the groundless nature of its position would be self-evident. In any event, even under an aggregated analysis advocated by DuPont, the EPCOS entities still are neither necessary nor indispensable.

## A. The EPCOS Parties are Not Necessary Parties

A party is "necessary" if (a) "the court cannot accord complete relief among existing parties" or (b) the absent party has an interest and proceeding in its absence may cause certain specified prejudice. Fed. R. Civ. P. 19(a)(1); *see Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 171 (E.D. Pa. 2015) ("[A] party is necessary only when nonjoinder precludes the court from effecting relief not in some overall sense, but between current parties only."). The EPCOS entities do not meet the requirements of this test to be considered necessary parties.

### 1. Claim-by-Claim Rule 19 Analysis

A claim-by-claim analysis shows that the EPCOS entities are not necessary parties with respect to any of Arcelik's claims.

#### a. Misrepresentation Claims

Arcelik has asserted three misrepresentation claims: negligent misrepresentation, fraudulent misrepresentation, and violation of the Delaware Consumer Fraud Act ("DCFA"). (Am. Compl. ¶¶ 74-97.) These claims are based solely on representations made by DuPont and, thus, the EPCOS entities are not "necessary" in any way. (*Id.*)

---

[3] As Arcelik showed in its initial responsive papers, courts "determine whether individual claims should proceed or should be dismissed under a claim-by-claim application of Rule 19." *LoCurto v. LoCurto*, No. 07-823, 2008 WL 4410091, at *9 (S.D.N.Y. Sept. 25, 2008); *see Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358-59 (2d Cir. 2000) (evaluating Rule 19 challenge claim-by-claim); *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) (finding absent party necessary to some claims but not others). DuPont has not offered any contrary case law in either its reply to that opposition or its Renewed Motion.

In an effort to distract from this simple fact, DuPont claims the EPCOS entities are necessary because they have demanded relief from DuPont's foreign subsidiaries for damage caused by the defective Zytel. (*See* MTD at 8.) Such demands for relief, however, have no impact on Arcelik's claims, which are separate and distinct. Whether DuPont's subsidiaries may be liable to the EPCOS entities for manufacturing defects or contract breaches has no bearing on DuPont's liability to Arcelik for misrepresentations about Zytel. As such, no additional parties are required for the Court to "accord complete relief among" DuPont and Arcelik with respect to Arcelik's misrepresentation claims. *See, e.g.*, *Kuhn*, 723 F. Supp. 2d at 687 ("Because the elements of negligent misrepresentation rely upon the defendants' actions, and not upon the relationship between the defendants and [the absent entity], complete relief can be granted on this count without [the absent entity].").[4]

###### b.    Tortious Interference

DuPont suggests that EPCOS AG is a necessary party to Arcelik's tortious interference claim because it is the counterparty to the contract at issue in the claim. The law clearly provides, however, that tortious interference claims require only the injured party and the party who caused the interference; contractual counterparties are not relevant. *See, e.g.*, *Arkansas v. Texas*, 346 U.S. 368, 370 (1953) (counterparty not indispensable in tortious interference case). DuPont does not address this critical point and has presented no evidence or argument to suggest the controlling law in this district is different, nor has Arcelik found any.

---

[4] *See also E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 124 (D. Del. 2000) (finding DuPont China was not necessary where plaintiff "does not claim damages as a result of a breach of the . . . Contract [to which DuPont China was a party], rather, it claims damages as a result of fraud and misrepresentation"); *Incubadora*, 310 F.R.D. at 171 (absent Mexican subsidiaries in privity with plaintiff were not necessary because the existing parties could "effectively resolve *their* entire controversy despite the Mexican entities' absence").

### c. Negligent Manufacturing Claim

The EPCOS entities are not (and cannot be) necessary parties to Arcelik's negligent manufacturing claim. Arcelik has not claimed that DuPont's Zytel was a component part of a further-manufactured product that proved to be defective. Rather, its claim is that the Zytel itself was defective and led directly to the damages Arcelik incurred. Questions of culpability, therefore, lie solely with DuPont.

### 2. Aggregated Analysis of the EPCOS Parties' Necessity

As shown above, the EPCOS entities are not necessary parties to any of Arcelik's individual claims. However, even if the Court were to assess the issue on an aggregated basis, the EPCOS entities still are not necessary parties.

DuPont argues that complete relief cannot be granted in this case because the raw material/component supplier defense is implicated, a defense that "cannot be litigated without EPCOS." (MTD at 6.) DuPont is wrong. The rationale for this defense is that it would be unreasonable to impose a duty on the supplier of a raw material or component to foresee potential dangers of a final product for which the supplier was not responsible. *See, e.g.*, *LaMontagne v. E.I. Du Pont De Nemours & Co.*, 41 F.3d 846, 856-57 (2d Cir. 1994) ("When the defendant has sold an item that is only a component of the product that allegedly caused the plaintiff's injury, circumstances may well indicate that the seller had no knowledge or ability to know the hazards posed by the finished product."). The raw material/component supplier defense is inapplicable if the *raw material or component itself* was defective. *See id.* at 857 (the defense applies "to the manufacturer of a *non-defective* component part") (emphasis added).[5]

_____

[5] *See also Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989) (noting this defense was rejected in a prior case against a component supplier because "there was an actual defect in the component" there, "whereas in this case the [component] was alleged to be misapplied rather

Here, Arcelik has not alleged that a product incorporating Zytel was defective. Rather, Arcelik alleges that the Zytel itself was defective and caused the fires in Arcelik's dryers. (Am. Compl. ¶¶ 102-104). DuPont has recognized the very problems with its Zytel alleged by Arcelik, as reflected in the cautionary notices it sent (*id.* ¶¶ 36-40). DuPont's reliance on the raw material/component supplier defense as a shield to liability, therefore, is misplaced.[6]

The role of the EPCOS entities as intermediaries in the transaction between DuPont and Arcelik similarly does not render them necessary under Rule 19 to afford complete relief.[7] DuPont cites cases for the proposition that an absent party must be joined when it is "more than a witness to the activities at issue in [the] case," and is instead an "active participant[]." (MTD at 7 (quoting *Martinez v. E.I. DuPont De Nemours & Co.*, 82 A.3d 1, 21 (Del. Super. 2012)).)[8] The cited cases, however, are inapposite. In each case, the absent foreign entity was alleged *to have played a role in the wrongful conduct itself*, rather than merely serving as commercial

---

than defectively designed"); *In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019, 1027 (D. Minn. 1995) (this defense applies "[w]here a supplier furnishes a component part *free of defects*") (citation omitted; emphasis added).

[6] Even if there were merit to DuPont's raw material/component supplier defense, the potential that it would raise this defense has no bearing on whether the EPCOS entities are necessary and indispensable under Rule 19. The mere fact that a defense potentially involves the conduct of an absent party does not make that party necessary to afford "complete relief" between the parties. To the contrary, the "complete relief" provision of Rule 19 is "designed to protect those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." 7 Wright, Miller & Kane, Federal Practice and Procedure § 1604 (3d ed. 2001).

[7] The Court in *Polanco*, one of the cases cited by DuPont, distinguished cases where an absent *subsidiary* is argued to be indispensable from cases where an unrelated *intermediary* is argued to be indispensable, noting that "typically it is a *seller* or *similar intermediate party* who is unsuccessfully claimed to be indispensable." *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1521 (D. Minn. 1996) (emphasis added).

[8] Even if there were merit to this argument as applied to Arcelik's negligent manufacturing and tortious interference claims, whether or not the EPCOS entities were "active participants" has no bearing on the misrepresentation claims, given that DuPont, not EPCOS, made the representations that are "alleged as the basis for recovery" with respect to these claims. *See, e.g., In re Rio Piedras Explosion Litig.*, 179 F.R.D. 59, 63 (D.P.R. 1998) (distinguishing prior cases that relied on "active participant" rationale on grounds that they "are contract actions").

intermediaries like the EPCOS entities.[9]  There is no suggestion by either Arcelik or DuPont that

EPCOS engaged in any wrongful conduct.[10]

Finally, DuPont submits that a determination here could raise questions of estoppel or

issue preclusion in subsequent litigation over defective Zytel involving EPCOS and, thus,

EPCOS must be joined.  (MTD at 8.)  That is wrong.  In other words, it is well established that

"[m]ere presentation of an argument that issue preclusion is possible is not enough to trigger

Rule 19."  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir.

1993).[11]  The cases cited by DuPont are inapposite because they involve absent *subsidiaries*,

---

[9] *See Martinez*, 82 A.3d at 25 (absent DuPont foreign subsidiary that owned and operated textile factory which allegedly contained asbestos that gave rise to injury to plaintiffs was "real party in interest, and the immediate wrongdoer in [the] litigation"); *Ethypharm S.A. Fr. v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426 (D. Del. 2005) (absent Spanish subsidiary of U.S. defendant allegedly stole trade secrets, technology, and other confidential information from plaintiff); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512 (D. Minn. 1996) (absent subsidiary manufactured and sold industrial-grade adhesives that represented the subject matter of wrongful death action); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011) (absent foreign subsidiaries and/or sister companies designed and/or manufactured vehicles that were subject of litigation).

[10] Even if this were not the case, there is substantial reason to doubt that the "active participant" theory of joinder is an accurate statement of the law.  These "active participant" cases rely on, and seem to be based on a misinterpretation of a Fifth Circuit decision, *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985).  The *Freeman* decision did *not* find that merely being an "active participant" required joinder; instead, it found joinder was required because the subsidiary "was *more than an active participant* in the conversion alleged by the [plaintiffs]; it was *the primary participant.*"  *Id.* at 559-60 (emphasis added).  Subsequent decisions have cast doubt on this "primary participant" theory of joinder.  *See, e.g., Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1121 (D.C. Cir. 1991) (finding that the *Freeman* decision had improperly "rested indispensability only on the 'primary participant' theory, with no review of Rule 19's checklist of possible risks of non-joinder"); *Rio Piedras*, 179 F.R.D. at 63 ("[T]he primary participant argument has no place in this case.  The joint tortfeasor rule, as it relates to Rule 19, does not allow for gradations in participation.  To hold otherwise would destroy the long established rule against compelled joinder of joint tortfeasors.").

[11] *See also Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980) ("the possibility of a subsequent adjudication that may result in a judgment that is inconsistent" does not "trigger the application of Rule 19"); *Incubadora*, 310 F.R.D. at 172 ("Absent pending litigation between Defendants and the absent parties, there is no real risk of multiple or inconsistent obligations."); *Kuhn*, 723 F. Supp. at 691 (Rule 19 is not triggered "simply because of the possible effect of *stare decisis* on the absent person's rights; rather, the court need only require joinder when the

rather than unaffiliated intermediaries, which are less likely to be bound by collateral estoppel or issue preclusion.

**B.      Even if the EPCOS Entities Are Necessary, They Are Not Indispensable**

Even if the EPCOS entities were found to be necessary parties to any of Arcelik's claims, they are not "indispensable."  Four factors inform whether dismissal is appropriate on grounds that an absent party is indispensable: (1) prejudice to absent or existing parties; (2) whether any such prejudice could be lessened; (3) the adequacy of a judgment rendered in the non-party's absence; and (4) whether the plaintiff would have an adequate remedy if dismissal was ordered. Fed. R. Civ. P. 19(b); *see* 7 Wright, Miller & Kane, Federal Practice and Procedure § 1607 (3d ed. 2001) (courts "evaluate the degree of actual prejudice to the nonparty as opposed to the theoretical possibility that injury will occur").

**Factor No. 1: Actual Prejudice**.  Neither DuPont nor the EPCOS entities would be prejudiced by allowing Arcelik's claims to proceed.  The only purported prejudice claimed by DuPont is that it "may be forced to pursue a separate lawsuit for indemnity or contribution." (MTD at 9.)  The Third Circuit, however, has held that "[a] defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19."  *Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d Cir. 1988).  DuPont's argument, therefore, is without merit.

DuPont also attempts to show that the EPCOS entities are indispensable by speculating that a judgment here may affect possible future claims by or among those non-parties relating to the bad batches of Zytel.  (MTD at 10.)  As discussed above, however, the "[m]ere presentation of an argument that issue preclusion is possible is not enough to trigger Rule 19."  *Janney*

persuasive effect is not speculative, is direct and immediate, and is encompassed by the rules of collateral estoppel or issue preclusion").

*Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993).

**Factor No. 2: Court's Ability to Lessen Prejudice**.  This factor is irrelevant as there is no cognizable prejudice for purposes of Rule 19.

**Factor No. 3: Judgment Adequacy**.  This factor assesses whether a court could issue a judgment that would be adequate *as between the parties to the litigation*.  It does not assess whether a judgment would be capable of resolving a global dispute among multiple unaffiliated entities.  As Arcelik made clear in its initial responsive papers, a judgment by this Court would resolve the dispute *between Arcelik and DuPont* in its entirety.  *See, e.g., Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 320-21 (3d Cir. 2007) ("[T]his element allows the court to consider whether the relief it grants will prove an adequate remedy *for the plaintiff*.") (emphasis added).[12]  This factor therefore weighs against finding the EPCOS entities are indispensable.[13]

## II.    Arcelik's Complaint Does Not Fail to State a Claim

Arcelik has adequately pled its claims in accordance with applicable pleading standards.[14]

---

[12] As in its original motion to dismiss, DuPont once again ignores ample Third Circuit precedent establishing that the adequacy of the remedy *for the plaintiff* is the proper focus and, instead, wrongly argues that this factor supports dismissal because it reflects an interest "in settling disputes by wholes, whenever possible." (MTD at 11.)  That argument fails, as it is contradicted by applicable law.  Moreover, DuPont does not suggest that such a global resolution is "possible" anywhere; DuPont concedes that there is no jurisdiction capable of resolving what it sees as a global dispute among the parties.  (MTD at 11 ("[N]o court may be able to hear all interested parties in a single dispute"); *id.* (asserting that Arcelik may bring claims against EPCOS "in India as required by the contract between EPCOS India and DuPont India" and "[Arcelik] may sue EPCOS in the European Union").)  Under DuPont's conception of this factor, no court, therefore, would be an adequate forum.

[13] Tellingly, DuPont does not even mention the fourth factor (adequacy of plaintiff's remedy post-dismissal), which "counsels strongly against dismissal" where, as here, a plaintiff does not have an adequate alternative forum.  *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 642 (3d Cir. 1998); *see Provident Tradesmens Bank & Tr.t Co. v. Patterson*, 390 U.S. 102, 109 (1968) ("[T]he strength of this interest obviously depends upon whether a satisfactory alternative forum exists.").

[14] When considering a Rule 12(b)(6) motion, a court accepts "all of the complaint's well-pleaded facts as true," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and draws all

## A.     Arcelik States a Claim for Negligent Misrepresentation

Of the four elements of a negligent misrepresentation claim, *see Atwell v. RHIS, Inc.*, No. 02C-12-003, 2006 WL 2686532, at *1 (Del. Super. Aug. 18, 2006), DuPont challenges only one: the existence of "a pecuniary duty to provide accurate information."  (MTD at 12-13.)  DuPont argues that, because Arcelik did not purchase Zytel directly from DuPont, Arcelik was not in a "contractual or business relationship with DuPont or any of its subsidiaries concerning the Zytel® FR50 NC010 from which it expected to derive a pecuniary benefit."  (MTD at 13.) Courts, however, do not restrict the circumstances that give rise to this duty so narrowly:

> The purpose of the pecuniary duty requirement is "to shield those who gratuitously provide information from liability under the negligent misrepresentation doctrine," by limiting liability to situations in which "the defendant has a pecuniary interest in the transaction in which the information is given."  Thus, to succeed on a negligent misrepresentation claim, a plaintiff must show that the source of the allegedly misleading information was a defendant who "expect[ed] to profit from the course of conduct in which he provide[d] the information, [such that] he c[ould] reasonably be expected to take reasonable care in providing that information."

*Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 763 (Del. Ch. 2014) (citations omitted).[15]

Arcelik's allegations suffice.  DuPont made the representations about Zytel at issue for the purpose of encouraging the purchase and use of Zytel by both direct purchasers and end-users like Arcelik.  (Am. Compl. ¶¶ 60-61.)  DuPont has a pecuniary interest in sales of components that incorporate Zytel (such as the capacitors Arcelik purchased from EPCOS), as those sales create demand for Zytel.  In other words, DuPont "expect[ed] to profit from the

---

reasonable inferences in favor of the plaintiff.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.").

[15] *See also Bilt–Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 286 (Pa. 2005) (the claim does not require that the defendant knew that the plaintiff was a recipient of the information); *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) ("The determination by the court of that duty must be formulated in each particular case in light of its peculiar facts.").

course of conduct in which [it] provide[d] the information, [such that it] c[ould] reasonably be expected to take reasonable care in providing that information." *Vichi*, 85 A.3d at 763.

DuPont argues that the required "pecuniary duty" can arise only when the parties are in a "business relationship." (MTD at 13.) But DuPont again does not explain what a "business relationship" is in this context, instead assuming that the parties' relationship here would not qualify. (*Id*.) DuPont's restrictive interpretation of what constitutes a "business relationship" is at odds with how Delaware courts have articulated the nature and purpose of the pecuniary duty requirement. *See, e.g., Vichi*, 85 A.3d at 763. To the extent a "business relationship" is required, it exists here by virtue of Arcelik having been an indirect purchaser of DuPont's Zytel; neither privity nor a more direct relationship than this is necessary. *See, e.g.*, *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012) ("A pecuniary duty is not dependent on contractual privity.").

Moreover, it is highly questionable whether a "business relationship" is in fact a required element of a negligent misrepresentation claim of the type that Arcelik has asserted. DuPont relies on an unpublished Delaware Superior Court decision for the proposition that such a requirement exists. *Outdoor Techs., Inc. v. Allfirst Fin. Inc.*, No. 99C-09-151, 2001 WL 541472 (Del. Super. Apr. 12, 2001).[16] *Outdoor*, however, involved different claims that the defendant had "negligently misrepresented facts *by omission*." *Id*. at *5. Claims of liability for *omissions* are generally subject to higher burdens and standards than claims of liability for *false statements*. Indeed, the court in *Outdoor* found that to state a misrepresentation-by-omission claim the plaintiff must plead facts showing "a duty of *complete disclosure*" – not merely a duty "to

---

[16] DuPont also cites a Delaware District Court decision that states, in *dicta*, that there is such a requirement. *Kuhn Constr. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d 519 (D. Del. 2012). However, *Kuhn* cites only to *Outdoor* for this proposition. *Id*. at 525.

provide accurate information." *Id*. In concluding that the claim required a "business relationship," *Outdoor* examined the text of Section 551 of the Restatement, which is entitled "Liability for Nondisclosure." *Id*. While the court in *Outdoor* asserts in *dicta* that both the duties of "complete disclosure" and "to provide accurate information" require such a relationship,[17] it provides no analysis or citations to support that conclusion with respect to the lesser "accurate information" duty. *Id*.[18]

Despite the fact that *Outdoor* was issued nearly 15 years ago, few courts have cited to it for the proposition that negligent misrepresentation requires a "business relationship."[19] DuPont cannot credibly deny that the representations it made were intended to persuade market participants like Arcelik to purchase products that incorporate Zytel. The Court should thus find that DuPont was subject to a "pecuniary duty to provide accurate information" with respect to

---

[17] *Outdoor*, 2001 WL 541472 at *5 ("In each instance, the law contemplates that a duty of disclosure will arise when the parties are in the midst of a 'business relationship' from which they expect to derive 'pecuniary' benefits.").

[18] *Outdoor* is also distinguishable on its facts. The plaintiff had sued banks for refusing to cash a check, despite having had no relationship whatsoever with those banks. *Id.* at *1-3. The check had been given to the plaintiff by a third party that went bankrupt. *Id*. The court's finding that no "business relationship" existed between the banks and plaintiff under those circumstances has no bearing here, and does not suggest that any "business relationship" requirement is as restrictive as DuPont urges.

[19] Arcelik has identified only one decision that both did so and resolved a challenge to a negligent misrepresentation claim on this basis: *Carello v. PricewaterhouseCoopers LLP*, No. 01C-10-219, 2002 WL 1454111, at *7 (Del. Super. July 3, 2002). *Carello*, however, further illustrates that even if a "business relationship" is required, that element would be satisfied here. In *Carello*, plaintiffs brought a negligent misrepresentation claim against an auditor relating to financial statements for Lason, a third-party company. The auditor did not work for the plaintiffs – it worked for Lason – and the auditor argued that it "could not possibly have known" that the plaintiffs would rely on its work. *Id*. at *3. The auditor moved for summary judgment, arguing that the *Outdoor* "business relationship" did not exist. *Id*. The court disagreed, finding that the indirect connection between the parties did not foreclose finding such a relationship. *Id*. at *7 (finding that "it is possible that [the auditor] knew or should have known that third parties might be relying on the [auditor's] work product Plaintiffs claim was negligently prepared" and that "a business relationship between the class members and [the auditor] via Lason and its utilization of [the auditor's] auditing services for the purpose of acquiring members of the class might well impliedly establish the requisite business relationship").

such representations.

DuPont also argues that Arcelik's negligent misrepresentation claim is barred by the economic loss doctrine. This argument should be rejected as a threshold matter because "[d]ecisions as to whether a defendant falls within the exception to the economic loss doctrine are typically made at summary judgment in Delaware." *Del. Art Museum v. Ann BehaArchitects, Inc.*, No. 06-481, 2007 WL 2601472, at *4 (D. Del. Sept. 11, 2007). In any event, the doctrine only bars purely economic recovery "where a product has damaged only itself"; it does not bar recovery when there was damage to "other property." *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564, 568-69 (D. Del. 2002); *see id.* ("[I]n tort, such purely economic recovery cannot occur *in the absence of damage to 'other property.'*") (emphasis added). Arcelik's complaint alleges that the defective Zytel had not "damaged only itself," but rather had damaged the dryers using that Zytel and the homes of Arcelik's customers. (Am. Compl. ¶¶ 13, 64.)

### B. Arcelik States its Fraud Claims

Arcelik has satisfied the requirements of Rule 9(b) with respect to its fraud claims.[20]

#### 1. Arcelik States a Fraudulent Misrepresentation Claim

To state a fraudulent misrepresentation claim under Rule 9(b), a plaintiff must prove five elements:

> (1) a false representation by party A; (2) knowledge or belief by party A [] that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the party B to act or to refrain from acting; (4) party B's

---

[20] "Rule 9(b) does not require an exhaustive catalog of facts[;] it merely requires sufficient factual specificity to provide assurance that plaintiff has investigated and reasonably believes that a fraud has occurred." *Johnson v. Ace Cash Express Inc.*, No. 13-1186, 2015 WL 4397482, at *3 (D. Del. July 17, 2015); *see also H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 146 (Del. Ch. 2003) ("less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party").

action or inaction was taken in justifiable reliance upon the representation; and (5) damages to the party B as a result of such reliance.

*Fitzgibbon v. Ing Bank*, No. 07-735JJF, 2008 WL 3977985 (D. Del. Aug. 26, 2008) (citing *E.I. DuPont de Nemours and Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999). "Malice, intent, knowledge, and other conditions of a person's mind may be averred generally." Fed. R. Civ. P. 9(b). Scienter is satisfied where the defendant "recklessly makes the representation, without heed for its validity, or makes it under circumstances not justifying belief in its truth." *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278, 284 (Del. Sup. 1960). DuPont only alleges that Arcelik has failed to satisfy elements one and two. As set forth below, Arcelik has adequately pled each element of its fraudulent misrepresentation claim.

DuPont's argument that Arcelik has not alleged a false statement (MTD at 14-15) is baseless. DuPont has made representations regarding the characteristics of Zytel. Arcelik has pled that those representations were false with respect to the defective batches that caused Arcelik's dryers to catch fire. (*See, e.g.*, Am. Compl. ¶¶ 32-41 (DuPont produced bad batches of Zytel); *id.* ¶¶ 38, 40 (DuPont sent notices acknowledging problems with these batches); *id.* ¶¶ 45-54; *id.* ¶¶ 32-40 (the bad batches did not function consistently with DuPont's representations and caused fires).) Arcelik's allegations indicate that DuPont's representations about Zytel were indeed false.

The facts alleged in the complaint also suffice to plead scienter, including by showing that the representations were made recklessly. (*Id.* ¶ 87) Despite making numerous representations that Zytel had certain qualities and characteristics (*id.* ¶¶ 43-54), "DuPont did not test, sample, or take any other action to determine whether the Zytel it was producing complied with the representations [it] made" (*id.* ¶ 63). These allegations show reckless disregard. *See, e.g., Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1312 (D. Colo. 1984) (finding that the

defendant's "representations concerning the safety and effectiveness of the [product] . . . were made with reckless ignorance of their truth or falsity because of the failure to test the [product]").

### 2. Arcelik States a DCFA Claim

DuPont's sole challenge unique to Arcelik's DCFA claim is that it lacks the requisite connection to Delaware. (MTD at 15-16.)[21] The DCFA "protects non-residents as well as residents from unfair or deceptive merchandising practices conducted 'in part or wholly within' the State." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002). That requirement is satisfied here given that, as Arcelik alleges (Am. Compl. ¶ 96; *see id.* ¶¶ 9, 45-54), "DuPont authored, published, and disseminated [its] misrepresentations from the state of Delaware." *See, e.g., Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 322-23 (D. Del. 2012) (finding sufficient Delaware connection where "the allegedly misleading Rate Renew ads which are the subject of the claims emanated from Delaware"); *Warfarin*, 212 F.R.D. at 248 n.15 ("Plaintiffs have alleged here that defendant's deceptive conduct 'arose, was directed and emanated from Delaware,' which is enough to invoke the [DCFA]."); *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 961-62 (D. Del. 1993) (finding sufficient connection because, "[f]irst, DuPont regularly conducts business in the State of Delaware and, second, the alleged misrepresentation commenced in Delaware").

### C. Arcelik States a Negligent Manufacture Claim

DuPont asserts that Arcelik's negligent manufacturing claim is barred by the economic

---

[21] The purpose of the DCFA is to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce," 6 *Del. C.* § 2512, and the Delaware Supreme Court has held that its provisions should be "liberally construed." *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975). The standard for pleading DCFA claims is significantly lower than for common law fraud. *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (DCFA claims differ from fraud in that: (1) information need only have been provided negligently; (2) individual reliance on the misrepresentation is not required; and (3) intent to induce action is not required).

loss doctrine. (MTD at 16.) As noted above, however, this doctrine does not bar recovery, as the Zytel at issue damaged not only itself, but the dryers in which it was used and the homes in which the affected dryers were located. (*See supra*, Section II.A.)

D. **Arcelik States a Tortious Interference Claim**

Arcelik has stated its tortious interference claim. *See, e.g., Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 250 (D. Del. 2009). Contrary to DuPont's argument (MTD at 17), Arcelik has specifically pled that "DuPont and its subsidiary and agent DuPont India were aware of" the Arcelik-EPCOS contract. (Am. Compl. ¶ 109.) In light of the practical reality that plaintiffs typically will not be privy to a defendant's knowledge pre-discovery, courts do not require more. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *O'Leary v. Telecom Res. Serv., LLC*, No. 10C-03-108, 2011 WL 379300, at *9 (Del. Super. Jan. 14, 2011) (allegation that the defendant "knew Plaintiffs had employment contracts with [third parties]" sufficed to state a tortious interference claim). Moreover, Arcelik pled that DuPont made the representations at issue "to induce, directly or indirectly, end users such as Arcelik to utilize components made from Zytel." (Am. Compl. ¶ 94; *see id*. ¶¶ 61, 85.) DuPont knew that direct purchasers of Zytel like EPCOS would incorporate that Zytel into products sold to third parties under agreements like the Arcelik-EPCOS contract. Arcelik's allegations support an inference of the requisite knowledge.

DuPont also challenges this claim on the ground that some of its representations were made before the contract date. (MTD at 17.) But some were made after; indeed, the cited representations were examples of statements about Zytel that DuPont repeated year after year. (*E.g.*, Am. Compl. ¶¶ 47-48, 57.) Moreover, every time DuPont allowed a batch of Zytel to enter the market without testing it for conformity with its representations, that was also interference.

Finally, DuPont argues that Arcelik failed to allege that DuPont intended to interfere with

the Arcelik-EPCOS contract. (MTD at 17.) It is not necessary, however, that "the tortfeasor act for the primary purpose of interfering with the contract." *In re PNC Bank, Delaware v. Berg*, No. 94C-09-208, 1997 WL 527978, at *4 (Del. Super. 1997). Liability exists when "the effect of causing the breach is 'known to [the tortfeasor] to be a necessary consequence of his action.'" *Id.* at *6. DuPont should have known that its representations, combined with its repeated acts of producing Zytel without testing to ensure conformity with its representations, would result in the breach of contracts involving purchases of Zytel, such as the Arcelik-EPCOS contract.

### E.    Arcelik's Claims Are Not Time Barred

DuPont asserts that four of Arcelik's claims – misrepresentation, negligent manufacture, and tortious interference – are time barred, relying on purported Chinese and Indian statutes. (MTD at 18-19.) DuPont does not, however, meaningfully develop any aspect of this argument, as was the case in its original motion to dismiss.[22] The Court should therefore reject DuPont's statute of limitations arguments.

## III.    DuPont Again Fails to Establish the Elements for *Forum Non Conveniens* Dismissal

A *forum non conveniens* dismissal requires: (i) "the existence and adequacy of an alternative forum"; and (ii) that public and private interest factors strongly favor dismissal, when balanced against the deference accorded to the plaintiff's forum choice. *See, e.g., Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 806 (D. Del. 2011). "[T]he defendant bears the

---

[22] For example, DuPont fails to substantiate (i) which Chinese or Indian laws would govern these claims, or (ii) that any such laws should apply in the first place. Application of foreign statutes of limitation is appropriate only where the cause of action accrued in the foreign jurisdiction. *See, e.g., Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 679 (D. Del. 2012). DuPont assumes without supporting evidence or analysis that a choice of law inquiry would show that these claims accrued in either India or China. Such a determination is not appropriate at this stage. *See, e.g., Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011) ("Due to the factual inquiry that may be necessary to properly weigh the [choice of law] factors, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage.").

burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988). DuPont has taken no steps to address the fatal flaws in its *forum non* argument that were pointed out in Arcelik's opposition to the original motion to dismiss, and once again does not come close to satisfying its burden here.

**Adequate Alterative Forum**. A court considering a *forum non* challenge "must first decide whether an adequate alternative forum exists to hear the case." *Lacey*, 862 F.2d at 43. DuPont's assertion that "India is an alternative adequate forum" is belied by the fact that DuPont claims only that *a non-party* (its Indian subsidiary) could be sued there. (MTD at 19.) The well-settled rule that *the defendant itself* must be amenable to suit in the alternative forum thus forecloses a *forum non* dismissal. *See, e.g.*, *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 88 (D.D.C. 2014) ("Exxon's argument that Indonesia is available as an alternative forum because [a foreign Exxon subsidiary] is amenable to service there is incorrect. An alternative forum is only available if 'the entire case and all parties can come within the jurisdiction of that forum.'").[23]

**Forum Choice Deference**. Arcelik's forum choice deserves deference. *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed."). DuPont argues that "a foreign plaintiff's choice deserves less deference." (MTD at 20 (quoting *Windt v. Qwest Comms. Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008)). The very case DuPont cites for this proposition, however, provides that foreign plaintiffs "may

---

[23] *See also Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, 1120 (S.D.N.Y. 1982) ("[A] *forum non conveniens* dismissal is only available if there exists an adequate alternative forum that possesses jurisdiction over the entire action and over all the named defendants."). Even if DuPont had established that it would be amenable to suit in India, DuPont provides no argument or evidence whatsoever to support the conclusion that India would be an adequate forum. Courts—including the Third Circuit—have found that India is not adequate for reasons that apply here. *See, e.g.*, *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995) (India was inadequate due to cases taking longer than 20 years to resolve); *Weisel Partners LLC v. BNP Paribas*, No. 07-6198, 2008 WL 3977887, at *10 (N.D. Cal. Aug. 26, 2008) ("delays in the Mumbai Bench would essentially provide 'no remedy at all'").

bolster the amount of deference due their choice by making a strong showing of convenience." *Windt*, 529 F.3d at 190. The fact that DuPont is headquartered in Delaware (Am. Compl. ¶ 9) – and that DuPont made the representations that are the basis for liability in this case from Delaware (*id*. ¶¶ 45-54, 96) – demonstrates the convenience of this forum.[24] Indeed, courts have held that, "[i]n this unusual situation, where the forum resident seeks [a *forum non*] dismissal, this fact should weigh strongly against dismissal." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991). As the Third Circuit commented when DuPont sought such a dismissal in another case:

> This case is puzzling in that frequently the *forum non conveniens* issue is raised by a defendant sued away from home who seeks to convince the court that the balance of relevant factors should be tipped against requiring it to defend in a forum far from its home jurisdiction. Here, in contrast, Du Pont, which is headquartered in Wilmington, Delaware, and is the largest employer in that state, seeks to move the action against it to a forum more than 3,000 miles away. It is, as Alice said, "curiouser and curiouser."

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991).

**<u>Public and Private Interest Factors</u>**. DuPont does not come close to showing that these factors "tip[] decidedly in favor of trial in the foreign forum." *Windt*, 529 F.3d at 192.[25]

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendant's Renewed Motion to Dismiss.

---

[24] *See, e.g., Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) (the fact that "[t]he foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located . . . in itself has considerable weight in showing that the plaintiff's choice of forum was based on convenience").

[25] Indeed, given the Delaware connections noted above, there is good reason to believe that much of the relevant evidence will be found in Delaware. Moreover, Delaware has a strong interest in ensuring that companies based in the State make accurate representations about their products – especially when inaccuracies risk causing property damage and personal injury.

Respectfully submitted,

 /s/ John M. Seaman

OF COUNSEL:                             John M. Seaman (DE Bar # 3868)
Jonathan L. Greenblatt                   Abrams & Bayliss LLP
Shearman & Sterling LLP                 20 Montchanin Road, Suite 200
401 9th Street, NW                       Wilmington, DE 19807
Washington, DC 20004                     Telephone:  (302) 778-1000
Telephone: (202) 508-8000               Facsimile:   (302) 778-1001
Facsimile: (202) 508-8100               seaman@abramsbayliss.com
jgreenblatt@shearman.com

                                        *Attorneys for Plaintiff Arçelik A.S.*
Dated:  May 3, 2017