# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARÇELIK, A.Ş, | ) |
|         Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 1:15-cv-961 (LPS) |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) |
|         Defendant. | ) ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY'S RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated: May 31, 2017

OF COUNSEL:

Peter L. Haviland
Scott S. Humphreys
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: havilandp@ballardspahr.com
       humphreyss@ballardspahr.com

Beth Moskow-Schnoll (No. 2900)
Erika R. Caesar (No. 5143)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: moskowb@ballardspahr.com
       caesare@ballardspahr.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*

# TABLE OF CONTENTS

|      |                                                                                                                                                                 | Page |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | Rule 19 Does Not Require a "Claim-By-Claim" Analysis                                                                                                            | 1    |
| II.  | The Foreign EPCOS Entities are Necessary Parties                                                                                                                | 2    |
| III. | The Foreign EPCOS Entities are Indispensable                                                                                                                    | 3    |
| IV.  | Arcelik's Negligent Misrepresentation Claim Fails Because There is No Pecuniary Duty                                                                            | 6    |
| V.   | Arcelik's Fraud and DCFA Claims Fail for Lack of Scienter                                                                                                       | 7    |
| VI.  | Arcelik's DCFA Claim Fails for the Additional Reason That There is No Business-Consumer Relationship.                                                           | 8    |
| VII. | Arcelik's Tortious Interference Claim Fails Because DuPont's Statements About Zytel® Were Not Intended to Cause a Breach of the EPCOS-Arcelik Contract.         | 9    |
| VIII.| The Economic Loss Rule Bars Arcelik's Negligent Manufacturing and Negligent Misrepresentation Claims.                                                           | 10   |
| IX.  | Arcelik's Claims Are Time Barred                                                                                                                                | 10   |
|      | CONCLUSION                                                                                                                                                      | 10   |

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bassett v. Mashantucket Pequot Tribe*,
204 F.3d 343 (2d Cir. 2000)...........................................................................................1

*Cropper v. Rego Distribution Ctr., Inc.*,
542 F. Supp. 1142 (D. Del. 1982)...................................................................................2

*Delmarva Power & Light v. Meter-Treater, Inc.*,
218 F.Supp.2d 564 (D. Del. 2002)................................................................................10

*DRR, L.L.C. v. Sears, Roebuck and Co.*,
949 F. Supp. 1132 (D. Del. 1996)...................................................................................8

*Ethypharm S.A. France v. Bentley Pharms., Inc.*,
388 F.Supp.2d 426 (D. Del. 2005)..................................................................................2

*Fitzgerald v. Texaco, Inc.*,
521 F.2d 448 (2d Cir. 1975)............................................................................................4

*General Refractories Co. v. First State Ins. Co.*,
500 F.3d 306 (3d Cir. 2007)............................................................................................5

*Hawkinson v. A.H. Robins Co., Inc.*,
595 F.Supp. 1290 (D. Colo. 1984)..................................................................................8

*In re Toyota Motor Corp.*,
785 F.Supp.2d 883 (C.D. Cal. 2011) ......................................................................2, 3, 4

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) .......................................................................................9

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
201 F.R.D. 337 (D. Del.2001), *aff'd in relevant part*, 65 F. App'x 803 (3d Cir.2003).............3

*Kuhn Contr. Co. v. Ocean & Coastal Consultants, Inc.*,
844 F.Supp.2d 519 (D. Del. 2012)...............................................................................6, 7

*Lincoln Nat. Life Ins. Co. v. Snyder*,
722 F. Supp. 2d 546 (D. Del. 2010).................................................................................7

*LoCurto v. LoCurto*,
No. 07-823, 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008) ...........................................1

*Lony v. E.I. DuPont de Nemours and Co.*,
935 F.2d 604 (3d Cir. 1991).............................................................................................9

*Makah Indian Tribe v. Verity*,
   910 F.2d 555 (9th Cir. 1990) ..................................................................................................1

*Merchant Mut. Ins. Co. v. Artis*,
   Civ. A 93-0796, 1993 WL 429001 (E.D. Pa. Oct. 21, 1993).......................................................4

*Pain v. United Techs. Corp.*,
   637 F.2d 775 (D.C. Cir. 1980) ..................................................................................................3

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..................................................................................................................3

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) ..............................................................................................................4, 5

*Republic of the Philippines v. Pimentel*,
   553 U.S. 851 (2008)..................................................................................................................5

*Rosenzweig v. Brunswick Corp.*,
   No. 08-807, 2008 WL 3895485 (D.N.J. Aug. 20, 2008) ...........................................................4

*Timberlake* v. *Synthes Spine, Inc.*,
   No. V-08-4, 2011 WL 2607044 (S.D. Tex. June 30, 2011)................................................2, 3, 4

*Tullet Prebon PLC v. BGC Partners, Inc.*,
   427 Fed.Appx. 236 (3d Cir. 2011)............................................................................................1

*Van Roy v. Sakhr Software Co.*,
   No. 11-cv-00863-LPS, 2014 WL 3367275 (D. Del. July 8, 2014)............................................8

**STATE CASES**

*ASDI, Inc. v. Beard Research, Inc.*,
   11 A.3d 749, 751 (Del. 2010) ...................................................................................................9

*Grand Ventures, Inc. v. Whaley*,
   632 A.2d 63 (Del. 1993) ...........................................................................................................8

*In re PNC Bank, Delaware v. Berg*,
   1997 WL 527978 (Del. Super. 1997)........................................................................................9

*Martinez v. E.I. DuPont de Nemours and Co.*,
   82 A.3d 1 (Del. Super. 2012).....................................................................................................2

*Outdoor Techs., Inc. v. Allfirst Fin., Inc.*,
   2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001)..................................................................6, 7

*Vichi v. Koninklijke Philips Elecs., N.V.*,
   85 A.3d 725 (Del. Ch. 2014).....................................................................................................6

*Yarger v. ING Bank, fsb*,
   285 F.R.D. 308 (D. Del. 2012) ..................................................................................8

**RULES**

Fed R. Civ. P. 19 ................................................................................................1, 3, 4

Fed. R. Civ. P. 19(b) ..................................................................................................1

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 cmt. a ..............................................................7

Restatement (Second) of Torts § 766, cmt. j .............................................................9

Defendant E.I du Pont de Nemours and Company ("DuPont") hereby replies to Plaintiff's Opposition to DuPont's Renewed Motion to Dismiss ("Opposition") [Dkt. 31].

## I. Rule 19 Does Not Require a "Claim-By-Claim" Analysis

Arcelik incorrectly argues that Rule 19 should be applied on a "claim-by-claim" basis. (Opp. at 4.) Rule 19(b) directs courts to determine whether an "***action*** should proceed among the existing parties or should be dismissed," and the Third Circuit has affirmed a district court's order of dismissal under Rule 19 without employing Arcelik's suggested methodology. *See, e.g., Tullet Prebon PLC v. BGC Partners, Inc.,* 427 Fed.Appx. 236 (3d Cir. 2011).

Arcelik fails to cite any Third Circuit authority supporting a "claim-by-claim" rule. Instead, Arcelik cites an unpublished New York district court case, *LoCurto v. LoCurto,* 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008). (Opp. at 4 n. 3.) But *LoCurto* and the cases it cites are distinguishable because the claims evaluated were asserted against multiple defendants and were not all interrelated. *See LoCurto* at *9-10 (evaluating whether breach of contract claim to which one defendant was indispensable was "inextricably intertwined" with other claims); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358-60 (2d Cir. 2000) (evaluating whether claims against non-tribal defendants required Indian tribe immune from suit); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559-60 (9th Cir. 1990) (procedural claims were narrower than substantive claims, and did not affect absent Indian tribes).[1] By contrast, all of Arcelik's claims seek to impose liability for alleged manufacturing defects in a specific batch of Zytel® used in EPCOS' capacitors. The issues central to all claims -- manufacturing, marketing, sale, and incorporation into the capacitors -- can only be answered by the EPCOS entities.

---

[1] *Bassett* and *Makah Indian Tribe* also addressed sovereign immunity, which applied to claims against tribal defendants, but not other parties.

**II.     The Foreign EPCOS Entities are Necessary Parties**

Arcelik seeks to establish, simply through pleading, that Zytel® alone, to the exclusion of any independent failure by EPCOS in the production of its capacitors, caused the fires in Arcelik's appliances. But it is undisputed that EPCOS purchased the Zytel® in raw form, incorporated the Zytel® into capacitors that EPCOS designed, manufactured and was responsible for testing, and marketed and sold its capacitors to Arcelik. Clearly, the EPCOS entities are "more than a witness to the activities at issue in this case -- [they are] active participant[s]" whose presence is necessary here. *Martinez v. E.I. DuPont de Nemours and Co.,* 82 A.3d 1, 21 (Del. Super. 2012); *Ethypharm S.A. France v. Bentley Pharms., Inc.,* 388 F.Supp.2d 426, 431 (D. Del. 2005) (foreign entity was necessary "because plaintiffs' interactions were almost entirely with [the entity] and not with defendant."); *In re Toyota Motor Corp.,* 785 F.Supp.2d 883, 905-06 (C.D. Cal. 2011) (necessary foreign entities were "active participants" in conduct critical to disposition of the lawsuit); *Timberlake* v. *Synthes Spine, Inc.,* No. V-08-4, 2011 WL 2607044 at *2 (S.D. Tex. June 30, 2011) (foreign entities "responsible for the design, manufacture, sale, distribution, labeling, marketing and foreign approval of foreign products are necessary parties in product liability actions involving such foreign products.")

Additionally, the raw material/component part supplier doctrine -- which is at issue here -- cannot be litigated without the EPCOS entities. *See Cropper v. Rego Distribution Ctr., Inc.,* 542 F. Supp. 1142, 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby.") Arcelik argues that this defense does not apply because it "*alleges* that the Zytel® itself was defective and caused the fires in Arcelik's dryers." (Opp. at 7, emphasis added)). But Arcelik cannot plead away the factual issue of whether it was Zytel® itself or EPCOS' design, manufacturing and testing of its capacitors which caused the

fires in Arcelik's dryers. *See Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del.2001), *aff'd in relevant part,* 65 F. App'x 803 (3d Cir.2003) ("When making a Rule 19 determination, a court may consider evidence outside of the pleadings"). Resolution of this question requires EPCOS' presence as a party to this case.

Arcelik also argues that the EPCOS entities are not necessary because they are "intermediaries in the transaction between DuPont and Arcelik." (Opp. at 7.) This is simply untrue. Arcelik never transacted with DuPont. EPCOS purchased the Zytel® from DuPont, EPCOS incorporated the Zytel® in its capacitors, and EPCOS sold the capacitors to Arcelik. This is precisely why EPCOS is a necessary party. *See Timberlake*, 2011 WL 2607044 at *2; *In re Toyota Motor Corp.,* 785 F.Supp.2d at 906 ("[B]ecause Plaintiffs' claims implicate the entities responsible for the design, manufacture, distribution, and/or sale (or lease) of their vehicles, the Court finds that the foreign entities who undertook these activities with respect to Plaintiffs' vehicles are necessary to afford complete relief.")

### III. The Foreign EPCOS Entities are Indispensable

<u>First Factor: Actual Prejudice</u>. Arcelik does not dispute that its claims could result in actual prejudice to DuPont or its foreign subsidiaries; it argues only that the necessity of a lawsuit by DuPont for indemnity or contribution against EPCOS does not make EPCOS indispensable. (Opp. at 9.) This argument ignores the prejudice DuPont will suffer in this case where it will likely be unable to implead the foreign EPCOS entities due to lack of personal jurisdiction, requiring any contribution claims to be litigated in the foreign jurisdictions where EPCOS is located. Such prejudice also favors dismissal for *forum non conveniens*. *See, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 259 (1981) ("The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland."), citing with approval in note 28, *Pain v. United Techs.*

3

*Corp.,* 637 F.2d 775, 790 (D.C. Cir. 1980) ("The inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction…") (quoting *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 453 (2d Cir. 1975)).

Arcelik also fails to address DuPont's point that no party here will adequately represent the absent EPCOS entities' interests, or that with respect to future claims, EPCOS would be prejudiced by a finding that the Zytel® was not defective, and that fault for the fires lies with EPCOS' capacitors. (Mot. 10.) *See, e.g., In re Toyota Motor,* 785 F.Supp.2d at 908 ("[T]he unnamed foreign entities here would be prejudiced by the denial of an opportunity to defend their product safety and marketing practices."); *Timberlake,* 2011 WL 2607044 at *5 ("the Court finds that [the unnamed entities] have a strong interest in any legal determinations regarding the [] devices they design, manufacture, sell, distribute, label and market in Europe -- interests that Defendants could not adequately represent.") Arcelik's only argument on this point -- that the potential for issue preclusion is "not enough to trigger Rule 19" -- is wrong. The Supreme Court, in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102 (1968), explained that just because "a judgment is not res judicata as to, or legally enforceable against, a nonparty" does not mean that "a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense"; instead "the court must consider the extent to which the judgment may 'as a practical matter impair or impede [the nonparty's] ability to protect' his interest in the subject matter." *Id.* at 110.[2]

---

[2] *See also Rosenzweig v. Brunswick Corp.,* No. 08-807, 2008 WL 3895485 at *9 (D.N.J. Aug. 20, 2008) ("As our Supreme Court underscored in *Provident Tradesmens Bank &Trust Co.,* "'[i]t is not necessary that any finding of liability on [the absentees'] part in this action be binding to show prejudice to the absent party' because 'practical prejudice exists to that absent party in the effect the case might have as precedent.'" (citations omitted)); *Merchant Mut. Ins. Co. v. Artis,* Civ. A 93-0796, 1993 WL 429001 (E.D. Pa. Oct. 21, 1993) ("It is not necessary that an absent person be bound by a judgment in a technical manner; it is enough that as a practical matter his rights will be affected." (citing *Provident Tradesmen s Bank*, 390 U.S. at 110)).

4

Second Factor: Court's Ability to Lessen Prejudice. Arcelik's argument that this factor "is irrelevant" because there is "no cognizable prejudice" (Opp. at 10) fails for the reasons above. Arcelik also fails to respond to DuPont's point that no modification to a judgment could protect DuPont or the foreign entities from prejudice. (Mot. at 10.)

Third Factor: Adequacy of the Judgment. Arcelik wrongly argues that this factor assesses only the adequacy of a judgment "*as between the parties to the litigation*." (Opp. at 10). *General Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 320-21 (3d Cir. 2007) does not stand for that proposition, or the proposition that "the remedy *for the plaintiff* is the proper focus" as Arcelik claims. (Opp. at 10 n.12). *Provident Tradesmens Bank & Trust Co.,* 390 U.S. 102, cited by Arcelik (Opp. at 10 n. 13), holds that this factor refers to the "public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them." *Id.* at 111; *see also Republic of the Philippines v. Pimentel,* 553 U.S. 851, 870 (2008) ("adequacy" refers not "to satisfaction of [a party's] claims," but to the "public stake in settling disputes by wholes, whenever possible.")

This dispute is best resolved by judicial proceedings in the foreign countries where the conduct at issue occurred. Arcelik, a Turkish entity who has no sales or business presence in the United States, complains of a product recall it issued in Europe involving allegedly defective capacitors that were manufactured and sold outside the United States by the EPCOS entities. There is no justification to expend U.S. judicial resources on a long and costly lawsuit filed solely against DuPont, a non-party to the relevant transactions. In any event, a judgment in Arcelik's favor would be inadequate because the EPCOS entities "would not be bound by the judgment in an action where they were not parties." *Pimentel,* 553 U.S. at 871.

5

Fourth Factor: Plaintiff's Alternative Remedy. Arcelik does not address the fourth factor, or DuPont's argument that "Arcelik has an adequate alternative remedy: it may sue EPCOS in the European Union, or in India as required by the contract between EPCOS India and DuPont India, which is binding on Arcelik." (Mot. at 11, 19.)

## IV.   Arcelik's Negligent Misrepresentation Claim Fails Because There is No Pecuniary Duty

Under Delaware law, a negligent misrepresentation claim must be dismissed absent "a pecuniary duty to provide accurate information." *Outdoor Techs., Inc. v. Allfirst Fin., Inc.,* No. 99C-09-151-JRS, 2001 WL 541472, at *5 (Del. Super. Ct. Apr. 12, 2001). Arcelik argues that a "pecuniary duty" exists here because DuPont has an "interest in sales of components that incorporate Zytel." (Opp. at 11.) Arcelik selectively quotes from *Vichi v. Koninklijke Philips Elecs., N.V.,* 85 A.3d 725, 763 (Del. Ch. 2014), but fails to mention that a pecuniary duty was found in that case because the plaintiff "had a longstanding business relationship" with the defendant, who owned more than 50% of the joint venture the plaintiff had loaned money to and "was the guarantor of hundreds of millions of dollars" of the joint venture's debt. *Id.* at 735, 764, 822. DuPont has no ownership interest in EPCOS, and its sale of raw Zytel® to EPCOS without any business relationship with Arcelik does not give rise to a pecuniary duty.

Arcelik also incorrectly argues that a "pecuniary duty" exists because Arcelik was an "indirect purchaser" of Zytel®. (Opp. at 12.) Arcelik provides no authority other than a citation to *Kuhn Contr. Co. v. Ocean & Coastal Consultants, Inc.,* 844 F.Supp.2d 519, 525 (D. Del. 2012) for the proposition that "[a] pecuniary duty is not dependent on contractual privity." (Opp. at 12.) Arcelik omits the critical, second part of that sentence: "A pecuniary duty is not dependent on contractual privity; *rather, it arises when the parties <u>are in a business relationship</u>, from which they expect pecuniary benefits.*" *Id.* (citing *Outdoor Techs.,* 2001 WL 541472 at *5)

6

(emphasis added).³ Because there is no business relationship with respect to the Zytel® at issue, either direct or indirect, between DuPont and Arcelik, there is no pecuniary duty. Further, Arcelik was not an "indirect purchaser" of Zytel®. EPCOS purchased the Zytel® and then incorporated it as a component in EPCOS capacitors, which Arcelik purchased.

Arcelik's argument also fails because it ignores DuPont's express disclaimer:

> ….[T]hese data may not be valid for such material used in combination with any other materials … should not be used to establish specification limits or used alone as the basis of design; they are not intended to substitute for any testing you may need to conduct to determine for yourself the suitability of a specific material for your particular purposes…DuPont makes no warranties and assumes no liability in connection with any use of this information.... [Mot. at 4]

*See also* Restatement (Second) of Torts § 552 cmt. a ("[I]t does not follow that every user of commercial information may hold every maker to a duty of care . . . Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.").

## V. Arcelik's Fraud and DCFA Claims Fail for Lack of Scienter

Arcelik's statutory and common law fraud claims require it to allege that DuPont made a false representation with "knowledge or belief that the representation was false," or "with reckless indifference to the truth." *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 562 (D. Del. 2010). Arcelik has not done so.

Arcelik concedes it has not pled knowledge of falsity. Instead, Arcelik argues that it has pled recklessness by alleging that "DuPont did not test, sample, or take any other action to determine whether the Zytel® it was producing complied with the representations [it] made."

---

³ Arcelik's reliance on *Kuhn Constr. Co.,* 844 F.Supp.2d at 525, further belies Arcelik's argument that "few courts have cited to [*Outdoor Techs.*] for the proposition that negligent misrepresentation requires a 'business relationship.'" (*See* Opp. at 13.)

7

(Opp. at 15.)[4]  This is factually false; but in any case reckless indifference requires more than a mere failure to test; it requires a "***conscious*** indifference to the decision's foreseeable results." *DRR, L.L.C. v. Sears, Roebuck and Co.,* 949 F. Supp. 1132, 1138 (D. Del. 1996) (emphasis added). "[W]hen a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it." *Van Roy v. Sakhr Software Co.,* No. 11-cv-00863-LPS, 2014 WL 3367275, at *4 (D. Del. July 8, 2014).

## VI. Arcelik's DCFA Claim Fails for the Additional Reason That There is No Business-Consumer Relationship

Arcelik attempts to save its Delaware Consumer Fraud Act ("DCFA") claim by arguing that DuPont's alleged misrepresentations emanated from Delaware. (Opp. at 16.) Arcelik relies on three cases, none of which supports its argument.

In *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 314 (D. Del. 2012), the Court held that the DCFA applied because the defendant, a mortgage lender, "conducted a uniform advertising campaign" directed at "customers and potential customers through its website, direct mail, postcards, emails, electronic and paper statements, and through its call centers." *Id.* at 314. By contrast, Arcelik does not even allege a customer relationship with DuPont. Thus, the business-customer relationship that the DCFA is designed to protect is absent here. *See Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65, 70 (Del. 1993) (the DCFA is "intended to redress wrongs between a business and its customers.")

---

[4] Arcelik's only authority for this argument is an inapposite decision issued more than 30 years ago by a district court applying Colorado law, *Hawkinson v. A.H. Robins Co., Inc.,* 595 F.Supp. 1290 (D. Colo. 1984). That decision involved claims for personal injuries arising from use of an intrauterine contraceptive device. In finding reckless disregard, the district court explained that "[t]he company not only failed to disclose its lack of knowledge, it affirmatively asserted that the [product] was safe, implying full knowledge of all possible consequences." *Id.* at 1312. DuPont made no such representations, and included express disclaimers of any reliance on Zytel® data.

8

The other cases cited by Arcelik are similarly inapposite. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 241, 249 (D. Del. 2002) (plaintiffs purchased more expensive drug based on "broad-based, national campaign" consisting of newspaper advertisements, faxes, press releases, and promotional brochures); *Lony v. E.I. DuPont de Nemours and Co.*, 935 F.2d 604, 606 (3d Cir. 1991) (alleged misrepresentation made in letter about specific product allegedly induced consumer to purchase defendant's product).

### VII. Arcelik's Tortious Interference Claim Fails Because DuPont's Statements About Zytel® Were Not Intended to Cause a Breach of the EPCOS-Arcelik Contract

Arcelik argues that it has pled a tortious interference claim because "DuPont ***should have known*** that its representations, combined with its repeated acts of producing Zytel without testing to ensure conformity with its representations, would result in breaches of contracts involving purchases of Zytel, such as the Arcelik-EPCOS contract." (Opp. at 18 (emphasis added)).

The authority cited by Arcelik confirms that a tortious interference claim demands more: it requires that the defendant "knows that the interference is ***certain or substantially certain to occur*** as a result of his action." *In re PNC Bank, Delaware v. Berg,* 1997 WL 527978 at *4 (Del. Super. 1997) (emphasis added) (quoting Restatement (Second) of Torts § 766, cmt. j)). A tortious interference claim additionally requires that "the defendant utilizes '***wrongful means***' to induce a third party to terminate a contract." *ASDI, Inc. v. Beard Research, Inc.,* 11 A.3d 749, 751 (Del. 2010) ("The focus of a claim for tortious interference with contractual relations is upon the defendant's ***wrongful inducement*** of a contract termination ….") (emphasis added).

Arcelik's allegations do not show that DuPont utilized "wrongful means" to induce a breach of the EPCOS-Arcelik contract, nor do they show that DuPont knew the alleged statements were "certain or substantially certain" to cause a breach of that contract, especially where those statements concerned Zytel® generally (not the specific batches of Zytel® at issue)

9

and were subject to express disclaimers, including that the data "may not be valid for such material used in combination with any other materials," and "are not intended to substitute for any testing you may need to conduct to determine for yourself the suitability of a specific material for your particular purpose…." (*See* page 7 *supra; see also* Mot. at 4.)

## VIII. The Economic Loss Rule Bars Arcelik's Negligent Manufacturing and Negligent Misrepresentation Claims

Arcelik argues that the economic loss rule does not bar its claims because it has alleged damage to "other property," namely "the dryers using Zytel and the homes of Arcelik's customers." (Opp. at 14.) Arcelik's dryers are not "other property" because the EPCOS capacitors containing the Zytel® at issue were integrated with Arcelik's dryers. *See, e.g., Delmarva Power & Light v. Meter-Treater, Inc.,* 218 F.Supp.2d 564, 569-71 (D. Del. 2002) (damaged meters integrated with defective component were not "other property"). The alleged damage to customer homes is merely incidental to the core damages sought and therefore does not prevent application of the economic loss rule. *Id.* at 570-71 (economic loss rule barred claims notwithstanding *de minimis* damage to automobiles owned by plaintiff's customers).

## IX. Arcelik's Claims Are Time Barred

Arcelik does not cite any authority establishing that its claims are not time-barred and concedes that "application of foreign statutes of limitation is appropriate only where the cause of action accrued in a foreign jurisdiction." (Opp. at 18 n. 22.) Because DuPont's Renewed Motion to Dismiss establishes that Arcelik's claims accrued in the foreign jurisdictions where the conduct at issue arose (Mot. at 18-19), Arcelik's claims should be dismissed as time-barred.

## **CONCLUSION**

For the foregoing reasons, DuPont respectfully requests that the Court dismiss Arcelik's Amended Complaint in its entirety, with prejudice.

| | |
|---|---|
| Dated: May 31, 2017 | By: *Beth Moskow-Schnoll*<br>Beth Moskow-Schnoll (No. 2900)<br>Erika R. Caesar (No. 5143) |
| OF COUNSEL:<br><br>Peter L. Haviland<br>Scott S. Humphreys<br>BALLARD SPAHR LLP<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067<br>Telephone: (424) 204-4400<br>Facsimile: (424) 204-4350<br>E-mail: havilandp@ballardspahr.com<br>           humphreyss@ballardspahr.com | BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: moskowb@ballardspahr.com<br>           caesare@ballardspahr.com<br><br>*Counsel for Defendant E.I. du Pont de Nemours and Company* |