# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARÇELIK A.Ş, | : |
| Plaintiff, | : |
| v. | : C.A. No. 15-961-LPS |
| E. I. DU PONT DE NEMOURS AND COMPANY, | : |
| Defendant. | : |

John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, DE
Jon C. Weingrat, Jonathan L. Greenbalt, Keith R. Palfin, SHEARMAN & STERLING, Washington DC

    Attorneys for Plaintiff Arçelik A.Ş.

Beth Moskow-Schnoll, BALLARD SPAHR LLP, Wilmington, DE
Peter L. Haviland, Scott S. Humphreys, BALLARD SPAHR LLP, Los Angeles, CA

    Attorneys for Defendant E.I. du Pont De Nemours and Company

## MEMORANDUM OPINION

March 20, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

Plaintiff Arçelik A.Ş. ("Arcelik") sued Defendant E.I. du Pont de Nemours and Company ("DuPont"), seeking damages related to Arcelik's recall of its faulty clothing dryers sold to the public. (D.I. 29 at 1; D.I. 1) Pending before the Court is DuPont's renewed motion to dismiss Arcelik's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Rule 12(b)(7) for failure to join foreign non-parties Epcos AG and/or Epcos India as necessary and indispensable parties. (D.I. 28) The Court will grant in part and deny in part DuPont's motion.

## I. BACKGROUND

Arcelik is a Turkish company. (D.I. 1 ¶ 8) DuPont is a Delaware corporation. (D.I. 1 ¶ 9) Arcelik manufactured electric tumble dryers for drying clothes that used capacitors containing DuPont's "Zytel" product, which is a plastic resin having certain electrical insulation properties. (D.I. 1 ¶ 2-3) A number of these dryers caught fire in the homes of customers, "subjecting Arcelik to significant remediation expenses." (*Id.* ¶¶ 1-3) Arcelik alleges that the cause of the fires was defects in DuPont's Zytel. (*Id.*) Arcelik purchased the capacitors containing the allegedly defective batches of Zytel from a third-party German manufacturer, Epcos AG ("Epcos"). (*Id.* ¶ 16) In turn, Epcos bought those Zytel batches from DuPont and its global subsidiaries. (*Id.* ¶ 17)

Arcelik initially asserted six claims against DuPont: (1) negligent misrepresentation; (2) fraudulent misrepresentation; (3) breach of implied warranty; (4) violation of the Delaware Consumer Fraud Act; (5) negligent manufacture of a defective product; and (6) tortious interference with a contract between Arcelik and Epcos AG. (*See* D.I. 1 ¶¶ 103-10) The Court

1

granted DuPont's motion to dismiss Arcelik's breach of implied warranty claim with prejudice and dismissed all of the other claims without prejudice, due to Arcelik's failure to "adequately allege agency relationships between DuPont and any entities under its direction or control." (D.I. 16 at 6) The Court did "not decid[e] . . . whether or not the facts currently in Plaintiff's complaint would be sufficient to state claims if sufficient agency relationship(s) were alleged." (*Id.*) The Court granted Arcelik leave to file an amended complaint and directed the parties to conduct limited discovery "regarding the corporate relationships between DuPont and its subsidiaries, and regarding the involvement of the Epcos entities (Epcos AG and Epcos India)" in the events relating to the allegations in the complaint. (*Id.* at 2, 6)

Arcelik filed an amended complaint, reasserting the five claims that had been dismissed without prejudice. (D.I. 19) In the amended complaint, Arcelik added allegations regarding the agency relationship between DuPont and its subsidiaries, including that DuPont's global subsidiaries, E.I. DuPont India Private Ltd. ("DuPont India") and E.I. DuPont China Holding Co. Ltd. ("DuPont China"), "acted under the direction and control of DuPont and were agents of DuPont at all relevant times." (*Id.* ¶ 17) Arcelik contends that Epcos bought the purportedly defective Zytel at issue from DuPont India, which acted as a sales agent for and under the control and direction of DuPont. (*Id.* ¶ 18) While acknowledging DuPont's representation in this litigation that the Zytel at issue was manufactured at DuPont China, Arcelik emphasizes that Zytel is still a DuPont product manufactured under the direction and control of DuPont at various manufacturing sites. (*Id.* ¶ 19)

The parties then agreed that instead of conducting limited discovery along the lines of what the Court had permitted, DuPont would accept, for purposes of a further motion to dismiss,

2

that DuPont China and DuPont India are its agents. (D.I. 27) The parties further agreed that DuPont would file a renewed motion to dismiss on the limited questions of (1) whether Epcos AG and/or Epcos India are necessary and indispensable parties whose joinder would require dismissal of Arcelik's amended complaint, and (2) assuming that DuPont's subsidiaries are agents of DuPont, whether Arcelik has stated any claim upon which relief may be granted in its amended complaint. (*See id.* at 3) The parties have completed briefing on DuPont's renewed motion. (*See* D.I. 29, 31, 34)

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of a complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation

3

marks omitted)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.     Motion to Dismiss for Failure to Join a Necessary and Indispensable Party**

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a party may seek dismissal for failure to join a party under Rule 19. In deciding whether to grant such a dismissal, the Court must first determine whether the party is a necessary party under Rule 19(a). *See generally Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). A party is necessary if, in the absence of the party, (1) complete relief cannot be afforded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a). If the party is necessary under Rule 19(a), the party must be joined, if joinder is feasible. If joinder is necessary, but infeasible, the Court must then determine whether the party is "indispensable" under Rule 19(b). This inquiry requires a

4

balancing of the interests of the plaintiff, the defendant, the absent party, the courts, and the public. *See Feriozzi Co. v. Ashworks, Inc.*, 130 Fed. Appx. 535, 538-39 (3d Cir. 2005) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968))). If an absent party is indispensable, the Court must dismiss the action. *See Gen. Refractories Co.*, 500 F.3d at 312.

The movant "bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011); *see also Camacho v. Major League Baseball*, 297 F.R.D. 457, 461 (S.D. Cal. 2013); *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 346 (D. Del. 2009). "When making a Rule 19 determination, the Court may consider evidence outside the pleadings." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001).

## III. DISCUSSION

### A. Epcos AG And Epcos India Are Not Necessary Parties

DuPont argues that the "Court cannot grant complete relief here without Epcos AG and Epcos India." (D.I. 29 at 6) In DuPont's view, because "Epcos India purchased Zytel as a raw material and then allegedly used it as a component part in its manufacture of electrical capacitors that its German affiliate, Epcos AG, sold to Arcelik, . . . this case implicates the raw material/component part supplier defenses, which cannot be litigated without Epcos." (*Id.* 6-7) (citing *Cropper v. Rego Distribution Ctr., Inc.*, 542 F. Supp. 1142, 1156 (D. Del. 1982) ("It is well established that a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition is not liable to one injured thereby.")). To DuPont, the determination of whether Zytel was defective "turns, at least in part,

5

on the purpose for which" Epcos bought Zytel, "the extent of DuPont India's involvement, if any, in Epcos's decision, as well as factual issues concerning Epcos's incorporation of [Zytel] in its manufacture of the capacitors." (*Id.* 6-7)

The Court disagrees with DuPont. The raw material/component part supplier defense is not implicated where the raw material or component is itself alleged to be defective. *See Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1106 (7th Cir. 1994) ("Strict liability may extend to manufacturers of component parts for injuries caused by design or manufacturing defects in the component part itself."); Restatement (Second) of Torts § 402A, cmt. p (1965) ("If for example, raw coffee beans are sold to a buyer who roasts and packs them for sale to the ultimate consumer, it cannot be supposed that the seller will be relieved of all liability when the raw beans are contaminated with arsenic, or some other poison.").

Here, Arcelik alleges that Zytel itself was defective at the "time of sale," even before it was used as a raw material by Epcos in the manufacture of its capacitors. (*See* D.I. 19 ¶¶ 102-04) Arcelik is not alleging that Zytel became defective during any step Epcos may have used to process Zytel. Rather Arcelik is alleging that the defect in Zytel occurred as a result of "ionic contamination" of an additive DuPont used when manufacturing Zytel. (*See id.* ¶ 103) It is this contamination during DuPont's own manufacturing process, according to Arcelik, that "severely degraded Zytel's electrical characteristics" and its "suitability for use in electrical appliances," such as Arcelik's dryers. (*See id.* ¶¶ 102, 103) Thus, the amended complaint alleges, the "dryer fires, and Arcelik's resulting injuries were directly and proximately caused by the defective Zytel." (*Id.* ¶ 105) Therefore, based on Arcelik's allegations in the amended complaint, the raw material/component part supplier defenses are inapplicable here.

6

DuPont argues that the foreign Epcos entities are crucial in this case because "by its own admission, Arcelik's communications regarding the electrical capabilities of the capacitors were with Epcos," not with DuPont. (D.I. 29 at 7) Noting that Arcelik has not alleged it had a contract or any other type relationship or even communications with DuPont regarding the use of Zytel in its dryers, DuPont contends that the foreign Epcos entities are "more than a witness to the activities at issue in this case – [they are] active participant[s] whose presence is crucial." (*Id.*)

Again the Court disagrees. The focus of Arcelik's allegations is not on Epcos's manufacture of its capacitors using Zytel, which occurred after DuPont sold Zytel to Epcos. Instead, the focus is on DuPont's own manufacture of defective batches of Zytel, which occurred before DuPont sold those batches to Epcos. Arcelik has not alleged that Epcos itself caused or contributed to any defects in Zytel when Epcos manufactured its capacitors.[1]

The other Rule 19 factors do not support a contrary conclusion. DuPont discusses Epcos AG's and Epcos India's ability to protect their own interests and whether DuPont risks facing multiple or inconsistent obligations. (D.I. 29 at 8) The mere possibility that a potential judgment here against DuPont may have a preclusive effect on the absent Epcos parties is not enough to make the absent parties indispensable and preclude this case from going forward against DuPont. *See Huber v. Taylor*, 532 F.3d 237, 251 (3d Cir. 2008) ("That issue preclusion is possible,

---

[1] The parties dispute whether the Rule 19 analysis should be addressed on a claim-by-claim basis or by considering the litigation as a whole. (*Compare* D.I. 31 at 3-4 *with* D.I. 34 at 1) As the Court would reach the same outcome either way, the Court need not resolve this dispute. Additionally, the Court does not reach the issue of whether the Epcos entities are "indispensable" under Rule 19(b), given the Court's conclusion that they are not necessary parties under Rule 19(a).

7

however, is not enough to trigger a Rule 19(a)(2)(i) finding."). Similarly, the possibility that DuPont may be subjected to multiple obligations in a potential litigation later between the foreign subsidiaries of DuPont and the Epcos parties is not enough to trigger Rule 19. *See Gen. Refractories*, 500 F.3d at 319 ("[A]n outcome adverse to [the defendant] in [the plaintiff's] present action against it does not have any legal effect on whatever right of contribution or indemnification [the defendant] may have against [other parties].").

DuPont has failed to meet its burden to show that the Epcos parties are necessary under Rule 19. Thus, the Court will deny DuPont's motion to dismiss for failure to join the foreign non-parties.

### B. Economic Loss Doctrine Does Not Require Dismissal of the Negligence Claims (Counts I and IV)

DuPont argues that the economic loss doctrine bars Arcelik's negligent misrepresentation (Count I) and negligent manufacturing claims (Count IV). DuPont contends that Arcelik's alleged damages, such as recall expenses and damage to the dryers themselves, are "purely economic." (D.I. 29 at 12, 16)

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992).

Taking the allegations in the amended complaint as true, as the Court must do, the economic loss doctrine does not bar the negligence claims. Arcelik seeks to recover damages not only from its recall of the faulty dryers, but also for losses it incurred due to property damage in

8

the homes of its customers as a result of the dryers catching fire during use. (*See* D.I. 19 ¶¶ 13, 64) Although these losses were initially incurred by Arcelik's customers, they were allegedly passed on to and suffered ultimately by Arcelik. (*See id.* ¶¶ 14, 65)

DuPont also contends that the "alleged damage to customer homes is merely incidental to the core damages sought and therefore does not prevent application of the economic loss rule." (D.I. 34 at 10) At this stage of the proceedings, however, the Court cannot conclude that the damages to the homes of Arcelik's customers are "incidental to the core damages sought" or *de minimis*. The amended complaint plausibly alleges otherwise.

If the evidence the parties develop cannot support a finding that Arcelik itself suffered any damages other than damage to the dryers themselves, then DuPont may have a good faith basis to assert the economic loss doctrine again at a later stage of this litigation. At this point, however, the Court will deny DuPont's motion to dismiss Counts I and IV based on the economic loss doctrine.

**C.     Arcelik Has Sufficiently Pled Negligent Misrepresentation (Count I)**

To plead a negligent misrepresentation under Delaware law, a plaintiff must allege: "(1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance upon the false information." *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012). DuPont contends that Arcelik failed to adequately allege the first element because DuPont insists it had no pecuniary duty to provide accurate information to Arcelik regarding Zytel, as these entities had no contractual or business

9

relationship. (D.I. 29 at 12-13)

As DuPont correctly observes, "[a] pecuniary duty is not dependent on contractual privity; rather, it arises when the parties are in a business relationship, from which they expect pecuniary benefits." *Kuhn*, 844 F. Supp. 2d at 525. In *Kuhn*, however, the plaintiff "acknowledge[d] that only economic losses . . . occurred." *Id.* at 526. Here, by contrast, as noted just above, the alleged damages extend beyond just economic losses.

DuPont cites Section 552 of the Restatement (Second) of Torts, which can make one liable for pecuniary losses caused by one's false information,[2] and contends that this exception to the economic loss doctrine does not apply because DuPont's publications regarding Zytel contain express disclaimers providing no warranty for the suitability of any particular Zytel product for any particular purpose. (D.I. 34 at 7; *see also Kuhn*, 844 F. Supp. 2d at 525 (noting Delaware recognizes § 552 as "a narrow exception to the economic loss doctrine")) The Court has already concluded, based on the allegations, that Arcelik is not seeking purely economic damages, and the economic loss doctrine does not provide a meritorious basis for dismissal, so the Court need not also decide if the § 552 exception to the doctrine applies.

Thus, the Court will deny DuPont's motion to dismiss the negligent misrepresentation claim.

---

[2] Restatement (Second) of Torts § 552 states in relevant part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

## D. Arcelik Has Failed to Plead Fraud (Count II)

"To allege common law fraud by misrepresentation or omission, Delaware courts require a plaintiff to plead (1) the defendant falsely represented or omitted facts the defendant had a duty to disclose; (2) the defendant knew or believed the representation was false or made the representation with reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (5) the plaintiff acted in justifiable reliance on the representation; and (6) the plaintiff was injured by his reliance." *OpenGate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, 2014 WL 3367675, at *12 (D. Del. July 8, 2014) (citing *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005)). "Delaware courts require the circumstances constituting fraud to be stated with particularity, but intent and knowledge may be averred generally." *Id.*

DuPont challenges the sufficiency of the allegations of the first two elements. (*See* D.I. 29 at 14) Arcelik has adequately alleged fraudulent representations or omissions where DuPont had a duty to disclose. (*See, e.g.*, D.I. 19 ¶¶ 60, 86) (alleging "DuPont made numerous, repeated representations that reflected Zytel's suitability for use in home appliances such as dryers that require that the insulation material perform under conditions of high heat and humidity" which "were false and misleading with respect to the defective batches of Zytel") However, Arcelik has failed to adequately and with particularity allege that DuPont made any misrepresentations or omissions knowingly or with reckless indifference to the truth. The complaint is devoid of anything other than a conclusory allegation to this effect. (*See id.* at ¶ 87)

The most Arcelik can state on this point is that DuPont failed to test its Zytel for certain purposes. (*See id.* at ¶ 87) ("DuPont knew that it lacked any basis for [its] representations

11

because it did not measure the electrical resistivity of the Zytel it produced and did nothing to measure or mitigate the risk of ionic contamination of Zytel [and knew that ionic contamination would] severely degrade the product's electrical and flammability characteristics and suitability for use in electrical appliances.")) But this fails to allege that DuPont had a conscious indifference to the results of its failure to conduct certain tests. *See DRR, L.L.C. v. Sears Roebuck and Co.*, 949 F. Supp. 1132, 1138 (D. Del. 1996); *see also Van Roy v. Sakhr Software Co.*, 2014 WL 3367275, at *4 (D. Del. July 8, 2014) ("[W]hen a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it.").

The Court is not persuaded to adopt a contrary outcome based on Arcelik's citation to *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1312 (D. Colo. 1984). While that case did say, as Arcelik quotes, that a defendant's "representations . . . were made with reckless ignorance of their truth or falsity because of the failure to test the [product] and its component parts prior to the marketing campaign, and the failure to place adequate controls on the product's use," it also involved "affirmative[] assert[ions] that the [product] was safe, implying full knowledge of all possible consequences." This latter factor is not present here. Arcelik does not allege that DuPont affirmatively asserted that Zytel was safe for the use to which Epcos was putting it – and, indeed, DuPont has put in the record the express disclaimers it provided to the market. (*See* D.I. 29 at 4)[3]

---

[3]The Court has not been persuaded by the other deficiencies DuPont purports to find in the allegations. DuPont's suggestion that a manufacturing defect, as opposed to a design defect (*see* D.I. 29 at 14), cannot be a basis for a fraud claim, is unsupported by any cited authority.

12

Accordingly, the Court will grant DuPont's motion to dismiss the fraudulent misrepresentation claim.

### E. Arcelik Has Sufficiently Pled a Delaware Consumer Fraud Act Claim (Count III)

Section 2522 of the Delaware Consumer Fraud Act ("DCFA") provides that "[t]he purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade of commerce in part or wholly within this State." *Theis v. Viewsonic Corp.*, 2013 WL 1632677, at *2 (D. Del. Apr. 16, 2013). To state a claim under the DCFA, "a plaintiff must, at a minimum, allege with the required particularity that the defendant negligently omitted or concealed a material fact, and that the defendant 'intended that others rely on the omission or concealment.'" *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008), *aff'd*, 346 F. App'x 859 (3d Cir. 2009) (citing *Stephenson v. Capano Dev. Inc.*, 462 A.2d 1069, 1074 (Del. 1983)). The heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to claims asserted under the DCFA. *See Johnson v. Ace Cash Express Inc.*, 2015 WL 4397482, at *3 (D. Del. July 17, 2015). "Rule 9(b) does not require an exhaustive catalog of facts[;] it merely requires sufficient factual specificity to provide assurance that plaintiff has investigated and reasonably believes that a fraud has occurred." *Id.*

DuPont argues that "Arcelik's DCFA claim fails for the same reasons as its fraudulent

---

Moreover, to the extent DuPont is challenging the sufficiency of the allegations that DuPont knew its representations were false, this dispute appears to turn on a disagreement as to the timing of the representations on which Arcelik is basing its claims, which indicates a fact dispute that cannot be resolved at this stage of the proceedings. (*Compare* D.I. 29 at 14 *with* D.I. 31 at 17)

13

misrepresentation claim." (D.I. 29 at 15) The Court disagrees. Although similar, there are also differences between common law fraud and DCFA claims. *See Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 437 (D. Del. 2006) (noting three differences). One difference especially pertinent here is that "a ***negligent*** misrepresentation is sufficient to violate the statute . . . . [T]he only intent requirement of the Act is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment." *Id.* at 437 (emphasis added).

Taking the allegations in the amended complaint as true and in the light most favorable to Arcelik, which the Court is obligated to do at this stage, there is a plausible claim that DuPont omitted or concealed material facts with the intention that others rely on its statements. (*See, e.g.*, D.I. 19 ¶ 93) ("DuPont's marketing materials, advertisements, product guides, and other materials misrepresented the electrical characteristics of Zytel with the intent that its customers, end-users, and others would rely upon those representations in connection with the sale of Zytel.") Arcelik further alleges that "DuPont also concealed or omitted material facts, including the fact that it had no process for measuring the electrical-resistivity characteristics or detecting ionic contamination of Zytel." (*Id.* ¶ 95) While the amended complaint fails to adequately allege that DuPont made misrepresentations knowingly or recklessly, the Court concludes that it does sufficiently allege that DuPont did so negligently.

DuPont further argues that Arcelik's DCFA claim fails because "no transactions occurred in Delaware." (D.I. 29 at 15) Arcelik alleges, however, that "DuPont authored, published, and disseminated [its] misrepresentations from the state of Delaware." (D.I. 19 ¶ 96; *see also* D.I. 31 at 16) The amended complaint is sufficient on this point. *See Lony v. E.I. du Pont de Nemours*

14

& Co., 821 F. Supp. 956, 961–62 (D. Del. 1993) (finding sufficient connection to Delaware under DCFA as "DuPont regularly conducts business in the State of Delaware and . . . the alleged misrepresentation commenced in Delaware"); *see also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (noting that DCFA "protects non-residents as well as residents from unfair or deceptive merchandising practices conducted in part or wholly within the State") (internal quotation marks and citations omitted).

Nor is there merit to DuPont's contention that the DCFA claim fails due to the lack of allegations of a business-consumer relationship. (D.I. 34 at 8) DCFA "expressly provides a private right of action 'to any victim of a violation of the statute.'" *Chase Bank USA N.A. v. Hess*, 2011 WL 45132, at *11 (D. Del. Jan. 6, 2011) (quoting 6 Del. Code § 2525(a)). Furthermore, "according to its provisions, the [DCFA] should be 'liberally construed and applied to promote its underlying purposes and policies.'" *Id.* (quoting 6 Del. Code § 2512). As an indirect customer of DuPont's Zytel product, Arcelik may seek protection under the required liberal construction of the DCFA. *See id.* at *11.

Thus, the Court will deny DuPont's motion to dismiss the DCFA claim.

### F. Arcelik Has Sufficiently Pled Tortious Interference with Contract (Count V)

A claim for tortious interference with contract under Delaware law requires the following: "(1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of contract; (4) done without justification; and (5) which causes injury." *Kabbaj v. Google, Inc.*, 2014 WL 1369864, at *4 (D. Del. Apr. 7, 2014). DuPont challenges the sufficiency of the pleading of the second and third elements. (*See* D.I. 29 at 16)

15

The Court concludes that the amended complaint adequately states a claim. Arcelik alleges DuPont tortiously interfered with Arcelik's "contract with Epcos for the purchase of capacitors to be used in its line of electrical dryers" (D.I. 19 ¶ 107), which Arcelik alleges "[b]ased on information and belief, DuPont and its subsidiary and agent DuPont India were aware of" (*id.* ¶ 109). Arcelik further alleges "DuPont, through its misrepresentations about Zytel's electrical capabilities and its sale of defective Zytel, caused Epcos not to perform its contractual obligations." (*Id.* ¶ 110) In this way, DuPont is alleged to have taken an intentional act that was a significant factor in Epcos' breach of contract. Determining on the merits whether DuPont wrongfully induced Epcos not to perform its contractual obligations with Arcelik "will require a fact-intensive determination." *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 689 (D. Del. 2013) (internal citation omitted).

Accordingly, the Court will deny DuPont's motion to dismiss the tortious interference claim.

### G. The Court Will Not Dismiss at this Time based on Statute of Limitations

DuPont argues that "Arcelik's claims are also barred by the applicable statutes of limitations in the foreign countries where those causes of action arose." (D.I. 29 at 18) (contending four of Arcelik's claims are time-barred under relevant Turkish, Chinese, and Indian laws). According to DuPont, "Arcelik alleges that it learned of the basis for its claims at least as early as February 2013. Because the Complaint was filed in October 2015, any claim subject to a limitation period of two years or less is time barred." (D.I. 29 at 18) Arcelik counters that "DuPont assumes without supporting evidence or analysis that a choice of law inquiry would show that these claims accrued in either India or China" and "[s]uch a determination is not

16

appropriate at this stage." (D.I. 31 at 18 n. 22)

The Court agrees with Arcelik. This case (although pending for some time) remains in its early stages. Virtually, no discovery has taken place, and the Court would benefit from a more-developed record. The Court does not find it appropriate at the motion to dismiss stage of this case to undertake a choice of law analysis. *See Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) ("The Court will defer making a choice of law determination until there is development of a more complete factual record.") (citing *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) ("Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.")); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411 (D. Del. 2007) ("This litigation is still in its infancy, and the Court concludes that these complex and sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation.").

Thus, the Court will deny DuPont's motion to dismiss based on time bars.

### H. The Court Will Not Dismiss this Case due to *Forum Non Conveniens*

Alternatively, DuPont argues that Arcelik's amended complaint must be dismissed on *forum non conveniens* grounds. (D.I. 29 at 19) "It is settled that the defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis. This burden comprises two basic elements. The defendant must establish, initially, that an adequate alternative forum exists as to all defendants. If the defendant satisfies this burden, it must then show that the private and public interest factors weigh heavily in favor of dismissal." *Lacey v. Cessna Aircraft*

17

*Co.*, 932 F.2d 170, 180 (3d Cir. 1991); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction.").

DuPont has failed to meet its burden to show that there is another forum where the defendant could be sued. *See Doe v. Exxon Mobil Corp.*, 69 F. Supp.3d 75, 88 (D.D.C. 2014) ("Exxon's argument that Indonesia is available as an alternative forum because [a foreign Exxon subsidiary] is amenable to service there is incorrect. An alternative forum is only available if the entire case and all parties can come within the jurisdiction of that forum.") (internal quotation marks omitted). DuPont argues that "India is an alternative adequate forum to litigate this action" because "[b]oth Epcos India and DuPont India are amenable to process in India." (D.I. 29 at 19) But neither of these entities are parties to this action, while DuPont is, and DuPont has not shown that it is amenable to process in India. *See generally Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160-161 (3d Cir. 2010) (affirming district court's dismissal of complaint under *forum non conveniens* grounds where "[district court initially] found that each of the defendants is amenable to service of process in France and that, in any event, none of the defendants will contest personal jurisdiction there," and thereafter applied private and public interest factors). Although, under the circumstances, the Court will not address each of the factors it would have to consider if DuPont had shown there is another adequate forum, the Court is not persuaded that Delaware is an inconvenient forum in which to litigate for DuPont.

Thus, the Court will deny DuPont's motion to dismiss under *forum non convenience*

grounds.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny DuPont's motion to dismiss for failure to state a claim and for failure to join foreign non-parties. An appropriate order follows.