# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ARÇELIK, A.Ş.

                Plaintiff,

        v.                              C. A. No. 15-961-LPS

E. I. DU PONT DE NEMOURS AND
COMPANY,

              Defendant.

---

**PLAINTIFF ARÇELIK'S RESPONSES AND OBJECTIONS TO DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF (NOS. 1–11)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Arçelik, A.Ş. ("Arcelik"), by and through its undersigned counsel, hereby submits its responses and objections to Defendant E.I. Du Pont de Nemours and Company's ("DuPont's") First Set of Interrogatories (Nos. 1-11) ("Interrogatories," and each, an "Interrogatory"), dated July 19, 2018.

**GENERAL RESPONSES AND OBJECTIONS**

The following general responses and objections apply to each Interrogatory and are incorporated in each response as if fully set forth therein.  From time to time a specific objection may repeat a General Objection for emphasis or for some other reason.  The failure to include any General Objection in any specific objection shall not be interpreted as a waiver of any General Objections to that Interrogatory.

Arcelik objects to the Interrogatories on the following grounds:

1.     Arcelik objects to the Interrogatories and to DuPont's Definitions and Instructions to the extent they seek to impose on Arcelik any discovery obligation greater than or different

from those imposed by the Federal Rules of Civil Procedure ("Federal Rules"), by the Local

Rules of the United States District Court for the District of Delaware ("Local Rules"), or by any

Order entered by the Court in these proceedings or otherwise.  Arcelik assumes no duty to

respond except as specifically required by the Federal Rules, the Local Rules, or an Order of the

Court.

      2.     In responding to the Interrogatories, Arcelik does not in any way waive, or intend

to waive, any privilege or objection, but rather intends to preserve, and is preserving the

following:

      a.     All objections as to the competency, relevancy and admissibility of any

Interrogatory, the response, and the subject matter;

      b.     All objections as to vagueness, ambiguity, or other infirmity in the form of

the Interrogatories and any objections based on the undue burden imposed by the Interrogatories

and each individual Interrogatory contained therein;

      c.     All rights to object on any grounds to the use of any of the responses or

their subject matter in any subsequent proceedings, including the trial of this or any other action;

      d.     All rights to object on any grounds to any further interrogatories,

document requests, or other discovery requests involving or relating to the subject matter of the

Interrogatories; and

      e.     The right to supplement responses to the Interrogatories.

      3.     Arcelik objects to the Interrogatories to the extent they seek the production of

information or documents protected by the attorney-client privilege, the attorney work-product

doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable

privilege, immunity, or protection (collectively, "privileges").  Nothing contained herein is

intended to be or should be construed as a waiver of any privilege. To the fullest extent allowable under Federal Rule of Evidence 502 and any other applicable law, inadvertent identification or production of any such information or documents shall not constitute a waiver of any privilege with respect to the information or documents produced or the subject matter thereof, or a waiver of Arcelik's right to object to the use of any such information during trial or any subsequent proceeding or demand the return of any information or documents so produced.

4.      Arcelik objects to the Interrogatories to the extent they seek information or documents: (i) protected from disclosure by any law (including, but not limited to, foreign laws), court order, or confidentiality or non-disclosure agreement; or (ii) the disclosure of which would violate the privacy rights of any of Arcelik's current or former customers, suppliers, or employees.

5.      Arcelik objects to each Interrogatory to the extent it seeks to: (i) impose an obligation to produce information, documents, and/or things not in the possession, custody, and/or control of Arcelik; (ii) impose a requirement to make an unreasonable search to locate such information, documents, or things; or (iii) impose a requirement to produce information or documents which cannot be located without undue burden or expense.

6.      Arcelik objects to the Interrogatories to the extent they seek information or documents of a confidential nature.  This objection includes information that is confidential, business sensitive, proprietary, and/or pertains to trade secrets of Arcelik.  Arcelik will provide confidential information in accordance with the terms of the Protective Order Governing Discovery and the Use of Confidential Discovery Material entered in this case.

7.      Arcelik's investigation and responses to the Interrogatories are continuing.  As a result, Arcelik's responses are limited to information reasonably obtained to date, and are given

without prejudice to Arcelik's right to amend or supplement its responses after considering information that may be obtained through further investigation.

8.      Arcelik objects to each Interrogatory to the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories actually did or did not occur or exist.  Arcelik hereby denies any such disputed facts or legal conclusions. Any response or objection, including any production of information or documents, is not intended to be, and shall not be construed as, an agreement or concurrence by Arcelik as to DuPont's characterization of any facts or circumstances.

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

9.      Arcelik objects to the Definitions and Instructions to the extent that they request the disclosure of information that does not exist or is not known to Arcelik or is not in Arcelik's possession, custody or control, but rather is within the possession, custody or control of DuPont or third parties.

10.     Arcelik objects to the Definitions and Instructions to the extent that they purport to impose any obligation on Arcelik to conduct anything other than a reasonable and diligent search pursuant to the requirements of the Federal Rules, the Local Rules, or an Order of the Court, where responsive documents or information reasonably would be expected to be found, including to the extent that they seek electronically stored information from sources that are not reasonably accessible under Federal Rule 26(b)(2)(B), or otherwise seek information that exceeds the scope of Federal Rule 26 or this Court's Local Rules, including its Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").  Arcelik limits

its responses to information or documents that are reasonably accessible and can be located, identified, and produced after a reasonable inquiry and without undue burden or expense.

11.     Arcelik objects to the Definitions and Instructions to the extent they are intended to discover information found solely in the working files of counsel or which otherwise did not originate with Arcelik, on the grounds and to the extent that such documents are protected from disclosure by any privileges.

12.     Arcelik objects to DuPont's incorporation by reference of the Definitions contained in DuPont's First Set of Requests for Production of Documents (Nos. 1-24), dated November 21, 2016 into its First Set of Interrogatories Directed to Plaintiff (Nos. 1-11), dated July 19, 2018, as this introduces vagueness and ambiguity.  Arcelik hereby incorporates by reference each of its responses and objections to those Definitions, which are contained in Arcelik's Responses and Objections to Defendant DuPont's Renewed First Set of Requests for Production and Second Set of Requests for Production (Collectively, Nos. 1-86), dated September 4, 2018.

13.     Arcelik objects to Instruction No. 2 to the extent the request for "hearsay" asks Arcelik to provide information that is speculative or unreliable, and to the extent it purports to impose an obligation on Arcelik to provide information that is outside of Arcelik's possession or control or is protected by privilege through reference to Arcelik's "attorneys, experts, and anyone else acting on its behalf."

14.     Arcelik objects to Instructions Nos. 5-11 & 14 on the grounds that they are unduly burdensome and seek to impose on Arcelik obligations beyond those required by the Federal Rules, the Local Rules, or an Order of the Court.  Arcelik undertakes to provide only

such information and details as are required by the Federal Rules, the Local Rules, or an Order of the Court, and as are not unduly burdensome.

15.     Arcelik further objects to Instruction No. 9 to the extent it requests information not reasonably known to Arcelik after the exercise of reasonable diligence, and especially to the extent it purports to require Arcelik to specify what information is not yet known to or discovered by Arcelik.  Arcelik undertakes to provide only such information as is reasonably known to it or is discoverable through diligence proportionate to the value of the requested information relative to the burden or cost of ascertaining or searching for such information and preserves the right to supplement its responses as additional information becomes known.

16.     Arcelik further objects to Instruction No. 10 to the extent it requests information protected from disclosures by any law (including, but not limited to, foreign laws), court order, or confidentiality or non-disclosure agreement; or (ii) the disclosure of which would violate the privacy rights of any of Arcelik's current or former customers, suppliers, or employees, especially with respect to the request for home addresses and telephone numbers.  Arcelik further objects to any communication by Defendant with Arcelik's current or former officers, employees, or consultants; all communication with such individuals shall be through Arcelik's undersigned outside counsel in this matter.

17.     Arcelik further objects to Instruction No. 14 as overly vague, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in so far as it seeks the identity of "all" persons known to Arcelik with knowledge of the requested facts.  Arcelik undertakes to identify only those individuals with material levels of non-duplicative knowledge. Arcelik further objects to Instruction No. 14 to the extent it seeks information that is outside of

its possession or control or is protected by privilege through reference to Arcelik's "representatives."

18.     Arcelik objects to the definition of "person" in Instruction No. 15 as overbroad, unduly burdensome, and vague in so far as it purports to include "any other form of entity."

19.     Arcelik objects to Instructions Nos. 17 & 19 to the extent they seek to impose on Arcelik obligations beyond those required by the Federal Rules, the Local Rules, or an Order of the Court.

20.     Arcelik objects to Instruction No. 18, as vague, ambiguous, and unduly burdensome in that it directs Arcelik to "satisfy in all respects the Instructions contained in DuPont's First Set of Requests for Production of Documents (Nos. 1-24)."  Arcelik hereby incorporates by reference all responses and objections contained in Arcelik's Responses and Objections to Defendant DuPont's Renewed First Set of Requests for Production and Second Set of Requests for Production (Collectively, Nos. 1-86), dated September 4, 2018.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1**

Describe the systems, procedures, testing, analysis, or monitoring Arcelik had in place from January 2010 through December 2013 to ensure that Arcelik's products, their component parts and assemblies, and their constituent raw materials met design specifications for electrical performance from Arcelik's receipt thereof through the performance of the finished product in the field.

**RESPONSE TO INTERROGATORY NO. 1**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 1 as seeking information that is neither relevant to this action nor reasonably calculated to lead to the

discovery of admissible evidence to the extent it (i) seeks information about processes relating to Arcelik products other than the dryers referenced in the Amended Complaint, and thus responds only with respect to such processes as were applicable to Arcelik's "Ares" condenser dryers with the codes DxxxCxx and ExxxCxx[1] ("Ares Condenser Dryers"), the only model of Arcelik dryers referenced in the Amended Complaint or contemplated in Arcelik's calculation of damages, per its Amended Initial Disclosures; and (ii) seeks information about a time period not relevant to the present action, and thus responds only for the period of October 30, 2009, when Arcelik first started manufacturing Ares Condenser Dryers, including with Epcos capacitors incorporating Zytel FR50, to January 18, 2013, when Arcelik stopped using Epcos capacitors incorporating Zytel in all its Ares Condenser Dryers.  Arcelik further objects to Interrogatory No. 1 as vague and ambiguous in so far as the meaning of "systems, procedures, testing, analysis, or monitoring" is neither clear nor defined, and answers Interrogatory No. 1 by describing those processes and procedures that related to ensuring the quality manufacture of Arcelik Ares Condenser Dryers for the specified period.  Arcelik further objects to Interrogatory No.  1 to the extent it seeks information and documents that are not in Arcelik's possession, custody, or

---

[1] Those codes may be understood with reference to the following:



control; are in the possession, custody, or control of, a third party; are publicly available; or are equally available to DuPont, are already in DuPont's possession, custody, or control, or are obtainable by DuPont from another source that is more convenient, less burdensome, or less expensive.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds as follows:

For all Ares Condenser Dryers, Arcelik tests all component parts and the manufactured dryers to ensure their compliance with Arcelik product specifications and applicable international manufacturing standards (as relevant here, the standards promulgated by the International Electrotechnical Commission (the "IEC"), which match or exceed the national European standards applicable to the relevant specifications). The quality control process applied by Arcelik to its Ares Condenser Dryers includes three separate stages: (i) material/component and product approval for first use; (ii) incoming quality control; and (iii) final product controls. Each is described below.

The material/component and product approval process includes the following steps, which ensure that all components incorporated into Arcelik's Ares Condenser Dryers are not only certified as in compliance with applicable international manufacturing standards, but are also specifically suited to their intended use in Arcelik's Ares Condenser Dryers:

1. Engineering review of technical drawings of the component part for suitability and sufficiency;

2. Dimensional result analysis, which includes review of samples provided by the supplier to confirm their conformity to the dimensions and processing capabilities specified on the technical drawings;

3. Component tests, which involve (i) verification that the tested component complies with any applicable manufacturing regulations or international standards and testing requirements (IEC 60252-1 – which imposes stricter requirements than any corresponding national European regulations – applies to capacitors and includes, for example, a requirement for the 21-day damp heat test); (ii) verification that the tested component further complies with any Arcelik testing or performance requirements; (iii) verification that the component meets any applicable environmental standards and requirements, as well as any similar directives or restrictions (such as the Directive on the Restriction of Hazardous Substances in Electronic Equipment); and (iv) a trial production (the manufacture of  small batches of the component and their testing in the Ares Condenser Dryer, per the below); and

4. The component and dryer approval test, which includes:

   a. Verifying that the Ares Condenser Dryer complies with any applicable national and international standards when operating with the tested component, which most notably include IEC 60335-1 (Household and similar electrical appliances - Safety - Part 1: General requirements) and IEC 60335-2-11 (Household and similar electrical appliances - Safety - Part 2-11: Particular requirements for tumble dryers), which require tests for dryer operation in hot environments, dryer operation after being exposed to humidity, close testing of electrical leakage and

electric strength under stress, testing for dryer resistance to heat and fire, a glow-wire test, and other similar assessments; and

b. Verifying that the Ares Condenser Dryer operating with the tested component passes a specialized 5° C and 35° C 80% Humidity 190-230-250V cycle test, which assesses completed dryers running in a hot and humid environment for a full cycle.

The incoming quality control process is designed to test individual batches of electric parts manufactured for use in Arcelik's Ares Condenser Dryers. Before any batch of component parts delivered by a supplier is incorporated into Arcelik's Ares Condenser Dryers, each individual part is recorded in the SAP QM work list so that they may be tracked; and each batch of electric, electronic, and electromechanical parts (including capacitors) is then subjected to a set of tests by Arcelik's quality assurance department to verify their primary electrical properties. Approximately 1-2 percent of each batch is tested. Only once testing is successfully completed does Arcelik incorporate any element of a batch into its dryers.

The final product controls process is designed to test Arcelik's completed Ares Condenser Dryers before shipping them to points of sale. As part of this process, all Ares Condenser Dryers are subjected to the electrical safety test, wherein every dryer is tested by energizing each of its components to verify that it functions as intended. In addition, a small sample of dryers in every batch is audited by further testing and scrutiny of their function (as well as the finished dryers' aesthetic appearance).

As can further be seen from Arcelik's response to Interrogatory No. 2, Arcelik's manufacturing process for its Ares Condenser Dryers is so rigorous that in approximately 2.5 years of manufacture prior to DuPont's dissemination of defective Zytel, during which 297,347

units of Ares Condenser Dryers were manufactured (approximately half, with Epcos capacitors),

only two incidents of product failure that were not conclusively attributed to external causes

occurred.

**INTERROGATORY NO. 2**

State whether Arcelik experienced product fires or other product failures in its tumble
dryers prior to the fires or failures alleged in the Amended Complaint and what was determined to
be the cause of each of those fires or failures.

**RESPONSE TO INTERROGATORY NO. 2**

Arcelik incorporates its General Objections and Objections to Definitions and

Instructions as if fully set forth herein.  In addition to its General Objections and Objections to

Definitions and Instructions, Arcelik further objects to Interrogatory No. 2 as seeking

information that is neither relevant to this action nor reasonably calculated to lead to the

discovery of admissible evidence to the extent it seeks (i) information relating to Arcelik

products other than the dryers affected by the defective Zytel, and thus responds only with

respect to the Ares Condenser Dryers, the only model of Arcelik dryers referenced in the

Amended Complaint or contemplated in Arcelik's calculation of damages, per its Amended

Initial Disclosures; and (ii) information about a time period not relevant to the present action, and

responds to Interrogatory No. 2 only for the period starting with October 30, 2009, when Arcelik

first started to manufacture Ares Condenser Dryers, until the beginning of May 2012, when

Arcelik started to manufacture Ares Condenser Dryers with Epcos capacitors that incorporated

the defective Zytel batches described in the Amended Complaint.  Arcelik further objects to

Interrogatory No. 2 on the grounds that "other product failures" is vague, ambiguous, overly

broad, unduly burdensome and not reasonably calculated to the discovery of admissible

evidence.  Arcelik responds only with respect to such product failures as affected Arcelik's Ares

Condenser Dryers or any customer property, and not those that were limited to a malfunction of a component part, and thus treated as a warranty issue.  Arcelik further objects to Interrogatory No. 2 to the extent it prematurely seeks information related to expert assessment, opinion, or testimony at a time when no experts have been, or are required to be, retained or designated.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds as follows:

To the best of Arcelik's knowledge, all units for Ares Condenser Dryers using the defective Zytel referenced in Arcelik's Amended Complaint were manufactured between the beginning of May and the end of October of 2012.  In the approximately 2.5 years beginning from October 30, 2009, when Arcelik first started manufacturing the Ares Condenser Dryers, through the end of April 2012, Arcelik produced 297,347 units of Ares Condenser Dryers, approximately half, with Epcos-manufactured capacitors using Zytel as the plastic cap material.  During that time, Arcelik observed only four incidents total.   Of these four, two were determined by an Arcelik expert to have occurred as a consequence of external causes (improper electrical infrastructure and improper use).  For the other two, because the units were so badly damaged, the cause of the incident could not be determined.  One of those two incidents (where the cause of the damage was unknown) occurred while the dryer was switched off.

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory No. 2 is answered, to have material knowledge of the information provided in the above response: Umut Güven, Şafak Tezcan, and Yüksel Onur.

**INTERROGATORY NO. 3**

State the names and functions (*e.g.*, molding, assembly, etc.) of each entity in the supply chain of products containing Zytel® FR50 from EPCOS India's purchase thereof to the use of the components referenced in the Amended Complaint by Arcelik.

**RESPONSE TO INTERROGATORY NO. 3**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 3 as seeking information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks (i) information about a supply chain relating to products other than the Epcos capacitors that incorporated Zytel FR50 and were used in Ares Condenser Dryers, and thus responds only with respect to the Epcos B32332 model capacitors, the only capacitor referenced in the Amended Complaint or contemplated in Arcelik's calculation of damages, per its Amended Initial Disclosures; and (ii) information about a time period not relevant to the present action, and thus responds to Interrogatory No. 3 only for the period of October 30, 2009, when Arcelik first started to manufacture the Ares Condenser Dryers using the Epcos B32332 capacitors, to January 18, 2013, when Arcelik stopped using Epcos B32332 capacitors incorporating Zytel in all Ares Condenser Dryers.  Arcelik further objects to Interrogatory No. 3 to the extent it seeks information and documents that are not in Arcelik's possession, custody, or control; are in the possession, custody, or control of, a third party; are publicly available; or are equally available to DuPont, are already in DuPont's possession, custody, or control, or are obtainable by DuPont from another source that is more convenient, less burdensome, or less expensive.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds as follows:

Epcos B32332 capacitors were at all times incorporated into Arcelik's Ares Condenser Dryers as supplied, without further modification.  They were connected to the dryer's bottom chassis (base part) through a structural fit (by turning the capacitor into its intended space), without use of any adhesive or bonding object like a screw.  Arcelik is not aware of the names and functions (e.g., molding, assembly, etc.) of entities in the supply chain of products containing Zytel from Epcos India's purchase thereof to Arcelik's receipt of the Epcos capacitors.

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory No. 3 is answered, to have material knowledge of the information provided in the above response: Utku Yazıcıoğlu, Umut Güven, Şafak Tezcan, and Yüksel Onur.

**INTERROGATORY NO. 4**

State the factual basis for Arcelik's allegation in paragraph 109 of the Amended Complaint that DuPont was aware of Arcelik's contract with EPCOS.

**RESPONSE TO INTERROGATORY NO. 4**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 4 to the extent the information it seeks is not in Arcelik's possession, custody or control, but rather is within the possession, custody or control of DuPont or third parties.  Arcelik further objects to Interrogatory No. 4 to the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories did or did not occur or exist.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds as follows:

Arcelik's belief that DuPont and its subsidiary and agent DuPont India were aware of Epcos' contract to sell capacitors using Zytel FR50 to Arcelik is based upon discussions with Epcos regarding communications it had with DuPont and Arcelik's commercial experience that manufacturers like Epcos would ordinarily discuss with the manufacturer of a source material the ultimate use – and the likely the ultimate user – for a product to be produced with that raw material. Such knowledge can further be inferred from the fact that Arcelik falls into precisely the category of end users that DuPont contemplated for its Zytel products, as can be seen from, *inter alia*, its March 2003 Zytel® Product Guide, which describes Zytel as a "registered trademark for [a] comprehensive range of nylon resins [that] . . . . find extensive use in many applications including . . . electrical/electronic, domestic appliances . . ." March 2003 DuPont - Zytel® Product Guide and Properties (D.I. 29-4), p. 3.

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory No. 4 is answered, to have material knowledge of the information provided in the above response: Utku Yazıcıoğlu.


**INTERROGATORY NO. 5**

State the date(s) and describe the circumstances by which Arcelik first became aware of the factual basis for each of the counts alleged in the Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 5**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to its General Objections and Objections to

Definitions and Instructions, Arcelik further objects to Interrogatory No. 5 on the grounds that

"circumstances" is vague and ambiguous, and undertakes to provide only what it views to be a

reasonable description of how Arcelik first became aware of the factual basis for each of the

counts alleged in its Amended Complaint.  Arcelik further objects to Interrogatory No. 5 to the

extent it assumes disputed facts or legal conclusions or may be construed as an admission by

Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories did or did

not occur or exist.

Subject to and without waiver of the foregoing and the above General Objections and

Objections to Definitions and Instructions, and based on current information, Arcelik responds

by referring Defendant to the Amended Complaint and as follows:

Claim 1 (Negligent Misrepresentation)

Arcelik first used Epcos B32332 capacitors incorporating Zytel FR50 in its dryers in Q1

of 2008.  Beginning in 2006, Arcelik undertook a suitability assessment to determine whether the

Epcos B32332 capacitors incorporating Zytel FR50 were suitable for use in its dryers.  During

that time, Epcos shared various technical information documents and test results for its B32332

capacitors.[2]  That material specifically referenced DuPont's Zytel FR50 as the material used in

the insulating disk of that capacitor and reported on test results related to its insulation function

in the Epcos capacitor.

Based on this information and data, Arcelik was aware that DuPont's Zytel FR50 was an

essential element of the EPCOS B32332 capacitor.  DuPont is a well-known and respected

manufacturer, with a reputation for providing sound products.  Zytel, likewise, is a well-known

---

[2] Arcelik reserves the right to supplement its responses to these Interrogatories when its
document production is complete and to produce non-privileged documents responsive to this
Interrogatory pursuant to Federal Rule 33(d).

member of DuPont's polyamide family of products and its electrical insulating capabilities are widely publicized and understood.

As part of the suitability testing, Arcelik's review team would have examined Zytel FR50's product specifications and similar documents. This is standard practice within Arcelik for electrical components, such as a capacitor, where the risk of fire is present.

In 2008, Arcelik reviewed Epcos products and their raw materials as part of a process to obtain UL certification on Arcelik's appliances. That review included the Zytel FR50 used by Epcos.

 In early 2010, Arcelik participated in the process necessary to obtain UL certification on its "Terra" model tumble dryer. That model dryer also uses Epcos B32332 capacitors incorporating Zytel FR50. Arcelik worked with UL in its review of the "Terra" dryer platform. That review included an examination of the component parts to ensure they complied with UL requirements. As part of that process, Arcelik examined data pertaining to the Epcos B32332 capacitor and its component parts, including the Zyterl FR50 used to manufacture the insulating caps used on the capacitor.

DuPont provides information regarding its products in a variety of formats, including to certifying agencies like the UL and in product specifications published on its website. Arcelik has at all times been aware of DuPont as a prominent manufacturer in the industry, which advertises the quality and consistency of its resins, as well as the suitability of their use for household electric appliances, alongside specifications for each of its products. Indeed, DuPont represented itself as monitoring even minor changes to component materials for its Zytel FR50 product: for example, DuPont notified Epcos via a letter dated October 29, 2008, which Epcos shared with Arcelik, that DuPont would be using a different version of a flame retardant additive,

which would purportedly result in a change to Zytel's color but not to other specifications.[3]
Through such actions and representations, Arcelik understood that DuPont routinely tested and
monitored the Zytel FR50 it manufactured to ensure that it remained consisted with the stated
specifications, and that DuPont would inform end users when deviations from those
specifications were identified.

Arcelik became aware of dryer fires affecting its dyers on or around October 19 and 23,
2012.  Damages arising from such incidents are still accruing.

Arcelik worked to assess the causes of the incidents beginning in or around late October
of 2012.  By sometime between mid-February and March of 2013, Arcelik determined that the
root cause of the accidents was excess surface ionic contamination on the plastic top of the Epcos
B32332 capacitors.  Such contamination degraded the insulating capacity of the plastic tops,
thereby directly causing the dryer fires.  Arcelik's internal review further revealed that the
affected plastic was DuPont's Zytel FR50.  Although DuPont informed end users of a potential
color change in its Zytel FR50, it had not provided any notice that batches of Zytel FR50 were
produced with surface ionic contamination that would materially affect the electric insulating and
fire retardant capacity of the product.

<u>Claim 3 (Violation of the Delaware Consumer Fraud Act)</u>

Arcelik refers DuPont to its responses above.  In addition, Arcelik understands that
DuPont's various specifications regarding Zytel emanate from its Delaware headquarters,
including because they are published or otherwise referenced on the DuPont website and because

---

[3] Arcelik reserves the right to supplement its responses to these Interrogatories when its
document production is complete and to produce non-privileged documents responsive to this
Interrogatory pursuant to Federal Rule 33(d).

the Zytel trademark (generally referenced on such documents) states that "E.I. Du Pont de Nemours and Company Corporation Delaware" is the registrant for that trademark.

      <u>Claim 4 (Negligent Manufacture of a Defective Product)</u>

      Arcelik refers DuPont to its responses above and further states as follows:

      Arcelik became aware that Zytel FR50 was the material used for manufacturing the plastic top component of the Epcos B32332 capacitor on or around April 24, 2006, when Arcelik received a number of technical details and test results relating to that capacitor and its plastic top component (Zytel FR50) from Epcos.[4]  Those included a material test report prepared by the VDE Testing and Certification Institute that assessed the performance of Zytel FR50 on, *inter alia*, the Comparative Tracking Index ("CTI") test, which measures the electrical breakdown properties of an insulating material.[5]  Also included were the results of an endurance test conducted by Epcos, which showed that capacitors using non-defective Zytel FR50 as the insulating material successfully operated at a temperature of $85° \pm 2°$ C and a voltage of 563 VAC (1.25x rated voltage) for 2,000 hours (over 83 days) – conditions far more extreme than those at which the defective Zytel caused incidents in Arcelik's dryers.[6]

      On or around January 21, 2013, a representative from another supplier provided Arcelik with a copy of a DuPont Investigation Report, dated December 3, 2012.  This report stated that

---

[4] Arcelik reserves the right to supplement its responses to these Interrogatories when its document production is complete and to produce non-privileged documents responsive to this Interrogatory pursuant to Federal Rule 33(d).

[5] Arcelik reserves the right to supplement its responses to these Interrogatories when its document production is complete and to produce non-privileged documents responsive to this Interrogatory pursuant to Federal Rule 33(d).

[6] Arcelik reserves the right to supplement its responses to these Interrogatories when its document production is complete and to produce non-privileged documents responsive to this Interrogatory pursuant to Federal Rule 33(d).

DuPont had confirmed that molded parts made from certain batches of Zytel FR50 were exhibiting precipitous drops in insulation resistivity as a consequence of surface ionic contamination caused by use of a raw material that exceeded specifications for surface ionic content.[7]  DuPont's Investigation Report also identified multiple corrective actions DuPont believed were merited by the discovery of defects in its manufacturing process, including providing DuPont customers with Zytel FR50 produced by a different supplier while additional corrective measures were being implemented to address that manufacturing defect.  Arcelik understood from the report that DuPont had already implemented or was in the process of fully implementing the stated remedial actions and, as such, understood that Zytel FR50-based capacitors produced going forward would not suffer from the same defects as those identified in the report.

Arcelik was able to make equivalent root cause findings with the help of a third-party technical assessment by the middle of February 2013.

Claim 5 (Tortious Interference with a Contract)

Arcelik refers DuPont to its responses above and to its response to Interrogatory No. 4.

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory 5 is answered, to have material knowledge of the information provided in the above response: Utku Yazıcıoğlu, Umut Güven, Ümit Gülbay, Erdem Çelik, Şafak Tezcan, and Arif Özarsla.

**INTERROGATORY NO. 6**

---

[7] Arcelik reserves the right to supplement its responses to these Interrogatories when its document production is complete and to produce non-privileged documents responsive to this Interrogatory pursuant to Federal Rule 33(d).

State in detail Arcelik's factual basis for seeking relief from DuPont as to Arcelik's claim for negligent manufacture of a defective product.

**RESPONSE TO INTERROGATORY NO. 6**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 6 to the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories did or did not occur or exist.  Arcelik further objects to Interrogatory No. 6 to the extent it prematurely seeks information related to expert assessment, opinion, or testimony at a time when no experts have been, or are required to be, retained or designated.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds by referring Defendant to the Amended Complaint and as follows:

(i)     DuPont, including through its subsidiaries and affiliates, manufactures Zytel FR50.

(ii)    During the relevant time period, Epcos, including through its subsidiaries and affiliates, manufactured B32332 capacitors that used Zytel FR50 as a plastic insulating top.  Epcos approached Arcelik about the possibility of selling its B32332 capacitors for use in Arcelik dryers in or around June of 2005.

(iii)   Prior to incorporating Epcos capacitors using Zytel FR50 into the manufacturing stream for its dryers, Arcelik performed, or required Epcos to perform, extensive suitability testing of that capacitor, including for proper operation in hot and humid environments.  Arcelik was aware that Zytel FR50 was the material used in the plastic top component of the Epcos capacitor that was responsible for insulation and

undertook, or required Epcos to undertake, extensive testing, including for its electrical and insulating properties, as is described in Arcelik's response to Interrogatory No. 1.  Part of that testing included a 21-day damp heat test, a shorter version of which capacitors using defective Zytel failed during Arcelik's root cause analysis.

(iv)     Arcelik started manufacturing Ares Condenser Dryers using Epcos B32332 capacitors on or around October 30, 2009.

(v)      Between October 30, 2009 and the beginning of May of 2012 (when Epcos capacitors incorporating defective Zytel first made it into Ares Condenser Dryers), Arcelik produced 297,347 Ares Condenser Dryers, approximately half with Epcos capacitors. During that period, Arcelik experienced only four incidents with these dryers (two of which were caused by external factors).

(vi)     On October 19, 2012, Arcelik learned of the first of many incidents that occurred in Ares Condenser Dryers manufactured with Epcos B32332 capacitors containing defective Zytel.  That incident occurred in Turkey.  On or around October 23, 2012, Arcelik learned of a second incident, which occurred in the United Kingdom.

(vii)    Arcelik proactively issued voluntary recalls and otherwise sought to prevent any harm to its customers, but to date, it is aware of 186 such incidents in the Ares Condenser Dryers.  All were determined to have been caused by defective Zytel FR50.

(viii)   Arcelik determined that the root cause of the incidents described in its Amended Complaint was excessive surface ionic content in certain batches of Zytel FR50 that had been used to manufacture the plastic cap of the Epcos B32332 capacitors used in Arcelik's Ares Condenser Dryers.

(ix)   Arcelik's conclusion was the same as DuPont's own root cause analysis.  A version

of that analysis, updated on December 3, 2012, states that certain batches of Zytel

FR50 had been manufactured with levels of free ions that were far higher than normal

(DuPont's Investigation Report specifically states that the ionic content in the raw

material used for manufacturing the affected batches of Zytel "exceeded

specifications"), and thus resulted in dramatically reduced resistivity on parts that had

been conditioned at elevated temperature and humidity.

(x)   Arcelik further understands from DuPont's Investigation Report that DuPont's own

inquiry into the Zytel FR50 defects described above resulted in corrective actions,

including improved verification specifications, new test methods for the detection of

ionized species, and standardizing and improving suppliers' methods for detecting

ionized species and upgrading related analytical certificates (with plans to

periodically validate such certificates from the supplier identified as being responsible

for the defective batches of Zytel FR50 referenced in Arcelik's Amended Complaint).

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory 6

is answered, to have material knowledge of the information provided in the above response:

Yüksel Onur, Şafak Tezcan, Ümit Gülbay, and Murat Göktaş.

**INTERROGATORY NO. 7**

State in detail Arcelik's factual basis for relying on documents relating to products other
than Zytel® FR50 in its Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 7**

Arcelik incorporates its General Objections and Objections to Definitions and

Instructions as if fully set forth herein.  In addition to its General Objections and Objections to

Definitions and Instructions, Arcelik further objects to Interrogatory No. 7 to the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories did or did not occur or exist.  Arcelik further objects to Interrogatory No. 7 to the extent it prematurely seeks information related to expert assessment, opinion, or testimony at a time when no experts have been, or are required to be, retained or designated.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds by referring Defendant to the Amended Complaint and as follows:

The term "Zytel" refers to a family of 66 nylon resins.  DuPont consistently refers to the general Zytel "family" or "product line" when describing Zytel characteristics or suitability for use in particular applications, including electrical ones.  *See, e.g.,* June 2001 DuPont™Minlon® and Zytel® Design Information – Module II (D.I. 29-5), pp. 7, 33, 44; DuPont Zytel®/Minlon® Design Guide – Module II (which appears to have been published by February of 1997), p. 2 ("The Zytel® nylon resins are not considered primary electrical insulators, but their high temperature properties, their toughness and abrasion resistance, and their chemical resistance, combined with electrical properties adequate for most power frequencies and voltages, have made them the choice for a wide variety of electrical applications."); *id.* at 8; DuPont Electrical Plastics Overview Website, http://www.dupont.com/products-and-services/plastics-polymers-resins/thermoplastics/uses-and-applications/electrical-plastics.html?_sm_au_=iVV74tvW5vr0nNSH ("DuPont ™ Zytel® PA6 and PA66 FR (flame retardant) come from an incredibly versatile plastic, which is easy to process, easy to modify to meet specific needs, while being environmentally responsible in production and in reuse. It's

tough, light and resilient in hot, chemically aggressive and humid environments, making it an excellent choice for an electrical plastic."); DuPont™ Zytel® PA: An Ideal Electrical Polymer, http://www.dupont.com/products-and-services/plastics-polymers-resins/thermoplastics/articles/zytel-pa-electrical-polymer.html ("Characteristics that Zytel® offers to electrical component designs and requirements include a[ . . .] high arc ignition resistance of HAI = PLC 0, CTI > 600 V to prevent fire hazards that can be caused by conductor arcing. . . . The extensive collection of the Zytel® family . . . offers a wide range of reinforced and flame retardant grades that meet your different industry and application needs.").  Indeed, those materials indicate that all Zytel products conform to certain minimum parameters, with specialized grades exhibiting additional traits.  Such minimum properties appear to include a volume resistivity of approximately 10^11 ohm cm at a temperature of 80° C.  *See* June 2001 DuPont™Minlon® and Zytel® Design Information – Module II (D.I. 29-5), p. 32, Figure 4.02b; *see also* UL Yellow Card for Zytel FR50, revised May 7, 2012 (D.I. 29-6) (showing volume resistivity value of 10^11 ohm cm); DuPont Zytel®/Minlon® Design Guide – Module II, p. 70, Figure 103 (Zytel volume resistivity measured at 10^11 ohm cm at 80° C).

The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory 7 is answered, to have material knowledge of the information provided in the above response: Ümit Gülbay, Utku Yazıcıoğlu, Yüksel Onur, Şafak Tezcan, and Umut Güven.


**INTERROGATORY NO. 8**

State the name and address of each insurance company and the policy number and policy limits of each policy that may cover Arcelik, in whole or in part, for its alleged damages related to the allegations in the Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 8**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 8 as seeking information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, as Arcelik's insurance policies are not relevant to DuPont's liability for its manufacture of defective lots of Zytel FR50.  Arcelik further objects to Interrogatory No. 8 on the grounds that it is vague, overbroad, and unduly burdensome to the extent it seeks information about all Arcelik insurance and the "limits of each policy that may cover Arcelik."  Arcelik undertakes to answer Interrogatory No. 8 only with respect to Arcelik insurance relating to product liability, and only for the period relevant to the Amended Complaint.  Since the first incidents related to Zytel arose in 2012, Arcelik's responses cover only 2012 through the present.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds as follows:

Arcelik's insurance carrier for the period when the product fires caused by DuPont's defective Zytel arose to the present has been Allianz Sigorta A.S., with the following address: Allianz Tower, Küçükbakkalköy Mah., Kayişdaği Cad. No: 1, 34750 Ataşehir/Istanbul, Turkey; www.allianz.com.tr.  Arcelik hereby specifically objects to any direct contact by DuPont or its counsel with Allianz Sigorta A.S.; any such contact must take place through Arcelik's undersigned outside counsel.

Arcelik has a global umbrella insurance policy that is issued in Turkey, with fronting policies issued by local Allianz group companies in each country where Arcelik has a subsidiary.

27

Those policies are limited to a combined total of € 45 million per year.  Arcelik's product

liability policy further limits liability for third party financial losses to € 500,000 per claim year

and excludes punitive damages, product recall costs, financing costs (for Arcelik), and losses

associated with price decreases or other financial losses to Arcelik.  In addition, the products

liability policy includes a deductible, which was € 20,000 per claim year through 2013 for

tumble dryers, and – as a consequence of the costs associated with the defective Zytel –

increased five-fold, to € 100,000 per claim year starting in 2014.

   The policy numbers for Arcelik's insurance through Allianz for the relevant years are as

follows:

| | |
|---|---|
| Year 2012 | : 0001 1310 00665746 |
| Year 2013 | : 0001 1310 00810820 |
| Year 2014 | : 0001 1310 00816965 |
| Year 2015 | : 0001 1310 00824138 |
| Year 2016 | : 0001 1310 00831034 |
| Year 2017 | : 0001 1310 00839286 |
| Year 2018 | : 0001 1310 00848782 |

   The following individuals at Arcelik are known to Arcelik, as of the time Interrogatory 7

is answered, to have material knowledge of the information provided in the above response:

Arda Koçyan and Erdem Çelik.


**INTERROGATORY NO. 9**

   Describe in detail any efforts by Arcelik to mitigate its damages.

**RESPONSE TO INTERROGATORY NO. 9**

   Arcelik incorporates its General Objections and Objections to Definitions and

Instructions as if fully set forth herein.  In addition to its General Objections and Objections to

Definitions and Instructions, Arcelik further objects to Interrogatory No. 9 on the grounds that it

is vague, overbroad, and unduly burdensome.  Arcelik further objects to Interrogatory No. 9 to

the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance or obligation alleged in, or suggested by, the Interrogatories did or did not occur or exist.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds by referring Defendant to the Amended Complaint and as follows:

Arcelik engaged in a rigorous and comprehensive response to the Zytel-caused incidents referenced in its Amended Complaint.  Because the cause of the accidents was not initially known, Arcelik engaged in a sequence of actions corresponding to its best available knowledge at the time and the potential risk to its customers in order to mitigate damages, as described below.

Arcelik learned about the first two incidents referenced in its Amended Complaint, which occurred in Turkey and the United Kingdom, on October 19 and 23, 2012, respectively.  After learning of nine such incidents in its Ares Condenser Dryers by early November, all of which involved Epcos capacitors and all but one of which occurred in the United Kingdom, Arcelik temporarily blocked the shipment of all Ares Condenser Dryers to the United Kingdom and stopped the use of Epcos capacitors in its production of U.K.-bound Ares Condenser Dryers. Arcelik also implemented several design changes in all Ares Condenser Dryers intended to further reduce the risk of fires.

By the middle of November, Arcelik had observed and analyzed enough incidents that it was able to conclude that Epcos 8uF B32332 capacitors manufactured between weeks 11 and 19 of 2012 were consistently involved, and began to limit the scope of its mitigation actions to those capacitors (Arcelik later learned that Epcos ultimately separately determined that those were the

weeks when it had incorporated the defective Zytel into its capacitors).  Specifically, Arcelik pulled all Epcos B32332 capacitors manufactured between weeks 11 and 19 from its manufacturing process and spare parts department, and stopped using Epcos capacitors entirely by January 18, 2013, once its stock of Epcos capacitors manufactured in different weeks ran out. Arcelik also reworked all Ares Condenser Dryers in its warehouses to replace Epcos capacitors from those weeks with an alternative, and initiated a field program to do the same in customer homes.  Arcelik finished this field rework program in March of 2015 after successfully reaching approximately 69 percent of all known customers with 6-7 kg Ares Condenser Dryers that might have been manufactured with Epcos capacitors manufactured in weeks 11 to 19 of 2012.

In addition, Arcelik determined that the incidents it observed by the middle of November constituted a sufficient risk to its customers that it adopted a voluntary decision to recall all of its 6-7 kg Ares Condenser Dryers (the only ones that had experienced incidents at that time), first in the United Kingdom, and later in other European countries where Ares Condenser Dryers were sold.  Arcelik issued corresponding notices to customers.  A formal notice was issued by U.K. authorities on November 30, 2012; others followed.

While most of the incidents Arcelik observed in its Ares Condenser Dryers occurred in the 6-7 kg model using the Epcos 8uF capacitor, by April 2017, Arcelik had also observed 21 incidents in its 8-9 kg model (which used functionally equivalent 9uF capacitors).  By Arcelik's assessment, that number over the longer period of observation reached the threshold where corrective action was appropriate.  Arcelik therefore initiated a voluntary recall of 8-9 kg Ares Condenser Dryers that may have been manufactured with Epcos 9uF capacitors produced in weeks 11-19 of 2012.  The United Kingdom issued a related notice on May 31, 2017.

No regulatory authority has objected to Arcelik's actions or suggested that its conduct has been in any way insufficient.  Arcelik at all times adopted a course of conduct designed to limit harm to its customers and reduce any corresponding damages.

**INTERROGATORY NO. 10**

Identify each document from DuPont that Arcelik contends contains a fraudulent statement, intentional misrepresentation, or negligent misrepresentation, and identify the date when Arcelik first saw the alleged fraudulent statement or misrepresentation.

**RESPONSE TO INTERROGATORY NO. 10**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 10 to the extent it assumes disputed facts or legal conclusions or may be construed as an admission by Arcelik that any fact or circumstance alleged in, or suggested by, the Interrogatories did or did not occur or exist.  Arcelik further objects to Interrogatory No. 10 on the grounds that Defendant's request for each document "from DuPont" is vague and ambiguous.  Arcelik further objects to Interrogatory No. 10 to the extent it seeks information and documents that are not in Arcelik's possession, custody, or control; are in the possession, custody, or control of, a third party; are publicly available; are equally available to DuPont; or are already in DuPont's possession, custody, or control.  Arcelik further objects to Interrogatory No. 10 to the extent it prematurely seeks information related to expert assessment, opinion, or testimony at a time when no experts have been, or are required to be, retained or designated.  Arcelik undertakes to provide only such information as is reasonably known to it or is discoverable through diligence proportionate to the value of the requested information relative to the burden or cost of ascertaining or searching for

such information and preserves the right to supplement its response to Interrogatory No. 10 as additional information becomes known.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds by referring Defendant to the Amended Complaint and stating as follows:

Arcelik will produce documents responsive to this Interrogatory pursuant to Federal Rule 33(d).  They include the following:

(i)     DuPont Zytel / Minlon Design Guide - Module II;

(ii)    Zytel FR50 "Yellow Card" with report date of 8/20/1996;

(iii)   DuPont Zytel Product Information Sheets;

(iv)    June 2001 DuPont Minlon and Zytel Design Information – Module II;

(v)     March 2003 DuPont - Zytel® Product Guide and Properties; and

(vi)    Pages relevant to Zytel on the DuPont Website (dupont.com).

Arcelik reserves the right to supplement its responses to this Interrogatory when its document production is complete.  To the best of Arcelik's present knowledge, Arcelik or one of its agents or employees first saw some or all of these documents either at some point in 2006-2008 (during its suitability testing of the Epcos B32332 capacitors); during 2008, as part of a UL certification process for its appliances; during early 2010, when Arcelik went through a UL assessment for its "Terra" model tumble dryer; or during Q4 of 2012, during its assessment of the root causes of the Zytel-caused incidents described in Arcelik's Amended Complaint.  In addition, Arcelik states that it first saw an October 29, 2008 DuPont letter to "Customer" regarding a change to a Zytel FR50 NC010 "flame retardant additive" on or around December 9, 2008.

**INTERROGATORY NO. 11**

Identify each person who prepared or assisted in the preparation of the responses to these Interrogatories.

**RESPONSE TO INTERROGATORY NO. 11**

Arcelik incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition to its General Objections and Objections to Definitions and Instructions, Arcelik further objects to Interrogatory No. 11 on the grounds that it is vague, overbroad, and unduly burdensome  to the extent it asks without reasonable restrictions for the identity of "each" person who "prepared or assisted in the preparation of" these responses.  Arcelik undertakes to identify only such persons who made a material contribution to the preparation of the responses to the Interrogatories.  Arcelik further objects to Interrogatory No. 11 to the extent it requests information that is (i) protected from disclosures by any law (including, but not limited to, foreign laws), court order, or confidentiality or non-disclosure agreement; or (ii) the disclosure of which would violate the privacy rights of any of Arcelik's current or former customers, suppliers, or employees.  Arcelik undertakes to provide only such information that does not violate such obligations and specifically declines to provide any contact information for its employees, as it objects to communication by Defendant with Arcelik's current or former officers, employees, or consultants; all communication with such individuals shall be through Arcelik's undersigned outside counsel in this matter.

Subject to and without waiver of the foregoing and the above General Objections and Objections to Definitions and Instructions, and based on current information, Arcelik responds that the individuals who materially prepared or materially assisted in the preparation of responses to the Interrogatories were:

(i)      Umut Güven;

33

(ii)  Arif Özarslan;

(iii)  Arda Koçyan;

(iv)  Murat Göktaş;

(v)  Ümit Gülbay;

(vi)  Şafak Tezcan;

(vii)  Yüksel Onur;

(viii)  Erdem Çelik;

(ix)  Taner Altinay; and

(x)  Utku Yazıcıoğlu.

Dated: September 4, 2018

OF COUNSEL:

Jonathan L. Greenblatt
Christopher M. Ryan
Alexandra Filippova
Shearman & Sterling LLP
401 9th Street, NW, Suite 800
Washington, D.C.  20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
jgreenblatt@shearman.com
christopher.ryan@shearman.com
sasha.filippova@shearman.com

AS TO OBJECTIONS ONLY:

 */s/ John M. Seaman*
John M. Seaman (#3868)
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
seaman@abramsbayliss.com

34

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ARÇELIK, A.Ş.,                          )
                                        )
                    Plaintiff,          )
                                        )   C.A. No. 15-961-LPS
        v.                              )
                                        )
E. I. DU PONT DE NEMOURS AND COMPANY,   )
                                        )
                    Defendant.          )

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING
OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS TO THE
<u>APPROPRIATE JUDICIAL AUTHORITY IN GERMANY</u>**

In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit this request on behalf of the defendant in the above-entitled action, E. I. du Pont de Nemours and Company, located at 974 Centre Road, Wilmington, Delaware 19805, United States of America.

The United States District Court for the District of Delaware presents its compliments to the judicial authorities of Germany and requests international judicial assistance to obtain the evidence specified in Schedule A to be used in a pending civil proceeding before this Court in the above-captioned matter.  This Court requests the assistance described herein as necessary in the interests of justice.  The evidence sought has a direct and necessary link with this dispute, a civil law suit over which the District Court is currently presiding, and is expected to be used at trial in these actions.

1

REQUESTING AUTHORITY:

United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, Delaware 19801-3555
United States of America

CENTRAL AUTHORITY OF THE
REQUESTED STATE:

Präsident des Oberlandesgerichts München
Prielmayerstrasse 5
80097 München
Federal Republic of Germany
Tel.: +49 (89) 5597-02
Fax: +49 (89) 5597-3570
e-mail: poststelle@olg-m.bayern.de

PERSON TO WHOM THE EXECUTED
REQUEST IS TO BE RETURNED:

John A. Sensing, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
United States of America
Tel:  +1 (302) 984-6000
jsensing@potteranderson.com

SPECIFICATION OF THE DATE BY
WHICH THE REQUESTING AUTHORITY
REQUIRES RECEIPT OF THE RESPONSE
TO THE LETTER OF REQUEST

The executed request should be returned as
expeditiously as possible.

NAMES AND ADDRESSES OF THE
PARTIES AND THEIR
REPRESENTATIVES:

Plaintiff:  Arçelik, A.Ş.
Karaağaç Caddesi No: 2-6
Sütlüce 34445
İstanbul
Turkey

2

Plaintiff's Representatives:   John M. Seaman, Esquire
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
United States of America
Tel: +1 (302) 778-1000
seaman@abramsbayliss.com

Jonathan L. Greenblatt, Esquire
Christopher Ryan, Esquire
Jon C. Weingart, Esquire
Alexandra V. Filippova, Esquire
SHEARMAN & STERLING LLP
401 9th Street NW
Washington, DC 20004
United States of America
Tel: +1 (202) 508-8000
jgreenblatt@shearman.com
christopher.ryan@shearman.com
jon.weingart@shearman.com
sasha.filippova@shearman.com

Defendant:   E. I. du Pont de Nemours and Company
974 Centre Road
Wilmington, Delaware 19805
United States of America

Defendant's Representatives:    Somers S. Price, Jr., Esquire
John A. Sensing, Esquire
Jennifer Penberthy Buckley, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
United States of America
Tel:  +1 (302) 984-6000
sprice@potteranderson.com
jsensing@potteranderson.com
jbuckley@potteranderson.com

Peter L. Haviland, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067
United States of America
Tel: +1 (424) 204-4400
havilandp@ballardspahr.com

Dr. Daniel Flore, LL.M.
Hogan Lovells International LLP
Untermainanlage 1
60329 Frankfurt am Main
Germany
Tel: +49 69 962 36 0
daniel.flore@hoganlovells.com

EVIDENCE TO BE REQUESTED FROM:    Andreas Floegel, Executive Vice President
TDK Electronics AG (former EPCOS AG)
Rosenheimer Straße 141 e
81671 München
Federal Republic of Germany
Tel: +49 89 54020 0
Fax: +49 89 54020 2453
info@epcos.com

**The basis for the District Court's request is set forth in more detail below.**

## NATURE AND PURPOSE OF THE PROCEEDINGS

The proceeding for which evidence is sought concerns a civil action that has been filed

by the plaintiff, Arçelik, A.Ş. ("Arcelik") against the defendant, E. I. du Pont de Nemours and

4

Company ("DuPont") alleging negligent misrepresentation, violation of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2511 *et seq.*, negligent manufacture of a defective product, and tortious interference with a contract.  Arcelik contends that a product, Zytel® FR50, which was manufactured by a DuPont subsidiary, caught fire as a result of an alleged defect in the Zytel® FR50.  The Zytel® FR50 was not directly sold to Arcelik or used by it to manufacture its dryers.  Instead, a DuPont subsidiary sold the Zytel® FR50 to EPCOS India Private Limited, which is a subsidiary of EPCOS A.G. ("EPCOS").  The product was then used to manufacture capacitors that EPCOS sold to Arcelik.  These EPCOS capacitors are therefore the only connection between Zytel® FR50 and Arcelik's electric dryers.

## THE EVIDENCE TO BE OBTAINED

This Letter of Request is to obtain evidence that has a direct and necessary link with this action and is expected to be used at trial.

In Arcelik's Amended Complaint, EPCOS is alleged to have manufactured the capacitors that allegedly caused fires in Arcelik's electric tumble dryers.  EPCOS is not, however, a party to Arcelik's lawsuit.  Because Arcelik has claimed that DuPont is responsible for the fires that occurred in Arcelik's tumble dryers, DuPont seeks evidence to use at trial that EPCOS, through its representative Andreas Floegel, has regarding its use of Zytel® FR50 in manufacturing the capacitors for Arcelik.  Such evidence includes the design of the EPCOS capacitors, as well as information about testing that Epcos India performed on the capacitors and/or their component parts.  The attached Schedule A describes the specific testimony that DuPont seeks.

The District Court is satisfied that the evidence sought is critical to the pending proceeding and is likely to be used at trial to assist the Court in resolving the dispute presented.  To assist in the just and efficient resolution of the action before it, the District Court requests, in

the interests of justice, that you issue an order, in accordance with the laws and procedures of the Courts of Germany for the acquisition of evidence for trial, to compel the testimony of Andreas Floegel, Executive Vice President, regarding the specific questions identified in Schedule A.

Under Article 7 of the Hague Evidence Convention, the District Court requests that the United States legal representatives for Arcelik (see Plaintiff's Representatives, above) and DuPont (see Defendant's Representatives, above) be furnished as soon as practicable with a copy of the executed Letter of Request. It is also requested that these legal representatives be informed as soon as practicable of the time and place for providing, or alternative, for examination of the documents and any witnesses as permitted by German law. If possible, it is requested that notice be furnished to these legal representatives at least thirty (30) business days before the date set for the examination.

| | |
|---|---|
| ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED: | It is requested that the witness be placed under oath before answering questions. In the event that the witness cannot be placed under oath, it is requested that the witness answer questions in such manner as provided by local law for taking evidence, including those provisions intended to ensure the veracity or oral testimony. |

SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED (ARTICLE 9):

It is requested that (a) Plaintiff's and Defendant's United States legal representatives be allowed to be present for examination of the witness and to directly address questions to the witness according to German law at the Higher Regional Court of Munich; (b) that the witness be sworn and provide testimony under oath such that the testimony will be admissible evidence in the United States District Court proceeding pursuant to Federal Rule of Evidence 804(b)(1); (c) that the examination take place before a court reporter licensed in one or more states of the United States, an Examiner of your Court, or such other person as your Court shall appoint; (d) that the responses of the witness be preliminary recorded by the  person your Court shall appoint, and that the record of the hearing be created in the form of a verbatim transcript; (e) that the witness be examined as soon as practicable; and (f) that the Court shall take all available measures to protect the confidentiality of the information obtained during the testimony.

REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUESTS AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED:

It is requested that the parties' United States legal representatives identified above be furnished as soon as practicable with a copy of the executed Letter of Request.

It is further requested that the United States legal representatives for Plaintiff and Defendant be informed as soon as practicable of the time and place for examination of the documents and any witnesses. If possible, it is requested that notice be furnished to these legal representatives at least thirty business days before the date set for the examination.

| | |
|---|---|
| SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN: | The privilege or duty to refuse to give evidence in the United States is governed by the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable United States Rules, including if giving such evidence would (1) subject the witness to a real and appreciable danger of criminal liability in the United States, or (2) disclose a confidential and privileged communication between the witness and his or her respective attorneys. |
| THE FEES AND COSTS INCURRED WHICH ARE REIMBURSEABLE UNDER THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE CONVENTION WILL BE BORNE BY: | Equally by both parties, to the extent such fees apply.  Please contact the parties' United States representatives using the contact information provided above to make any necessary financial arrangements. |

The District Court requests that any questions or requests for information relating to this request be directed to the United States representatives for the parties as provided above.  It is respectfully requested, given the importance of the evidence sought, that this Letter of Request be given the highest consideration.  To the extent that any portion of the Request cannot be granted, it is respectfully requested that the remaining parts be granted.  This Court assures the Judicial Authorities in Germany that it will reciprocate with similar assistance in like cases and extends the Judicial Authorities the assurances of its highest consideration.

DATE: _____, 2019

Signature and Seal of the
Requesting Authority:

                                              _____
                                              The Honorable Leonard P. Stark
                                                Chief United States District Court Judge
                                              United States District Court for
                                              the District of Delaware
                                              Wilmington, Delaware
                                              United States of America

DATE: _____

Signature and Seal of the
Executing Authority:               Honorable: _____
                                                Article 2 Competent Authority

9

## SCHEDULE A

## TOPICS OF REQUESTED TESTIMONY FROM ANDREAS FLOEGEL

The District Court requests that Andreas Floegel provide testimony on the below-listed questions based on his knowledge for the time period 2005 through 2013:

1.      How is the the "plastic top" portion of the EPCOS B32332 model capacitor designed?

2.      What was EPCOS' process for selecting materials for use in the "plastic top" portion of the EPCOS B32332 model capacitor?

3.      Why did EPCOS choose Zytel® FR50 for use in the "plastic top" of the EPCOS B32332 model capacitor?  Were any other materials were considered?  If so, what materials?

4.      Did Arcelik have any involvement in the selection of Zytel® FR50 for use in the "plastic top" of the EPCOS B32332 model capacitor?  If so, what involvement did Arcelik have?

5.      What technical information did EPCOS supply to Arcelik relating to EPCOS B32332 capacitors (and their components)?

6.      Did EPCOS supply any technical information to Arcelik relating to the "plastic top" portion of the EPCOS B32332 model capacitor?  If so, what technical information was supplied?

7.      What information or advice did EPCOS supply to Arcelik concerning safety or fitness for use of the EPCOS B32332 capacitors (and their components) in Arcelik's electric dryers?

8.      What were the terms of the contract, including purchase orders, between EPCOS and Arcelik relating to the sale of EPCOS B32332 capacitors?

9.      What information did EPCOS supply to Arcelik concerning the uses of EPCOS B32332 capacitors?

10.     What information did Arcelik supply to EPCOS concerning the requirements for capacitors (and their components) to be manufactured for Arcelik?

11.     What testing did EPCOS (or some other entity acting on behalf of EPCOS) undertake for EPCOS B32332 capacitors (and their components)?  How frequently were the EPCOS B32332 capacitors (and their components) tested?  Which properties were tested?  What were the results of these tests?

12.     What information or advice did EPCOS supply to Arcelik regarding testing of EPCOS B32332 capacitors (and their components) and the need for Arcelik to conduct its own testing of the capacitors (and their components) or Arcelik's own product?

13.     What information did Arcelik supply to EPCOS concerning Arcelik's own testing of EPCOS B32332 capacitors (and their components) or Arcelik's own product?

14.     Did EPCOS assist or cooperate in Arcelik's investigation into the cause of Arcelik's alleged dryer fires?  What information or assistance did EPCOS provide to Arcelik in this regard?

15.     Did Arcelik ever assert any claims (either formally or informally) against EPCOS arising out of Arcelik's alleged dryer fires?  If so, did EPCOS and Arcelik reach an agreement or settlement of claims Arcelik made against EPCOS?  If any agreement was reached, what was the nature of the agreement, and what were its terms?

A-2

# EXHIBIT C

# Beglaubigte Übersetzung in die deutsche Sprache

Als vom Präsidenten des Landgerichts Kempten öffentlich bestellte und allgemein beeidigte Übersetzerin für die englische Sprache bestätige ich: Nachstehende Übersetzung eines internationalen Rechtshilfeersuchens aus der englischen Sprache, das mir als Word-Datei vorgelegt wurde, ist richtig und vollständig.

Ausgefertigt in 1 Original.
Marktoberdorf, den 7. Juni 2019

In my capacity of a translator for the English language, duly registered, commissioned and sworn by the President of the Landgericht (Regional Court) Kempten, I do herewith certify the following to be a true and complete translation of a Letter of Request by the District Court Delaware, a word file of which was submitted to me.

Made out in 1 original copy.
Marktoberdorf, June 7, 2019

**IM BEZIRKSGERICHT DER VEREINIGTEN STAATEN
FÜR DEN BEZIRK DELAWARE**

| | | |
|---|---|---|
| ARÇELIK, A.Ş., | ) | |
| | ) | |
| Kläger, | ) | |
| | ) | C.A. Nr. 15-961-LPS |
| gegen | ) | |
| | ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) | |
| | ) | |
| Beklagter. | ) | |

**INTERNATIONALES RECHTSHILFEERSUCHEN GEMÄSS DEM HAAGER
ÜBEREINKOMMEN VOM 18. MÄRZ 1970 ÜBER DIE BEWEISAUFNAHME IM
AUSLAND IN ZIVIL- ODER HANDELSSACHEN AN DIE
ZUSTÄNDIGE RECHTSBEHÖRDE IN DEUTSCHLAND**

Gemäß Paragraph 3 des Haager Übereinkommens vom 18. März 1970 über die Beweisaufnahme im Ausland in Zivil- oder Handelssachen hat der unterzeichnende Antragsteller die Ehre, dieses Rechtshilfeersuchen im Namen des Beklagten in der vorstehend genannten Klage, E. I. du Pont de Nemours and Company, mit Sitz in der 974 Centre Road, Wilmington, Delaware 19805, Vereinigte Staaten von Amerika, einzureichen.

Das Bezirksgericht der Vereinigten Staaten für den Bezirk Delaware entbietet den Rechtsbehörden in Deutschland seinen Gruß und ersucht internationale Rechtshilfe, um den in Anhang A spezifizierten Beweis zu erhalten, der in einem anhängigen Zivilverfahren vor diesem Gericht in vorstehend genannter Sache zu verwenden ist. Dieses Gericht ersucht die hier beschriebene Hilfe als im Interesse der Gerechtigkeit notwendig. Der ersuchte Beweis steht in direktem und nötigem Zusammenhang mit diesem Streitfall, einer Zivilklage, bei der das Bezirksgericht derzeit den Vorsitz führt, und er soll in der Gerichtsverhandlung zu diesen Klagen verwendet werden.

1

ERSUCHENDE BEHÖRDE:   Bezirksgericht der Vereinigten Staaten
für den Bezirk Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, Delaware 19801-3555
Vereinigte Staaten von Amerika

ZENTRALE BEHÖRDE DES ERSUCHTEN Präsident des Oberlandesgerichts München
STAATES:   Prielmayerstrasse 5
80097 München
Bundesrepublik Deutschland
Tel.: +49 (89) 5597-02
Fax: +49 (89) 5597-3570
e-mail: poststelle@olg-m.bayern.de

PERSON, AN DIE DAS AUSGEFERTIGTE John A. Sensing, Esquire
ERSUCHEN ZURÜCKZUSENDEN IST: POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Vereinigte Staaten von Amerika
Tel: +1 (302) 984-6000
jsensing@potteranderson.com

ANGABE DES DATUMS, BIS ZU DEM Das ausgefertigte Ersuchen sollte so bald wie
DIE ERSUCHENDE BEHÖRDE DEN möglich zurückgesendet werden.
EMPFANG DER ERWIDERUNG AUF DAS
RECHTSHILFEERSUCHEN BENÖTIGT:

NAMEN UND ADRESSEN DER
PARTEIEN UND IHRER VERTRETER:
          Kläger: Arçelik, A.Ş.
Karaağaç Caddesi No: 2-6
Sütlüce 34445
İstanbul
Türkei

Vertreter des Klägers:   John M. Seaman, Esquire
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Vereinigte Staaten von Amerika
Tel: +1 (302) 778-1000
seaman@abramsbayliss.com

Jonathan L. Greenblatt, Esquire
Christopher Ryan, Esquire
Jon C. Weingart, Esquire
Alexandra V. Filippova, Esquire
SHEARMAN & STERLING LLP
401 9th Street NW
Washington, DC 20004
Vereinigte Staaten von Amerika
Tel: +1 (202) 508-8000
jgreenblatt@shearman.com
christopher.ryan@shearman.com
jon.weingart@shearman.com
sasha.filippova@shearman.com

Beklagter:   E. I. du Pont de Nemours and Company
974 Centre Road
Wilmington, Delaware 19805
Vereinigte Staaten von Amerika

Vertreter des Beklagten:   Somers S. Price, Jr., Esquire
John A. Sensing, Esquire
Jennifer Penberthy Buckley, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Vereinigte Staaten von Amerika
Tel: +1 (302) 984-6000
sprice@potteranderson.com
jsensing@potteranderson.com
jbuckley@potteranderson.com

Peter L. Haviland, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067
Vereinigte Staaten von Amerika
Tel: +1 (424) 204-4400
havilandp@ballardspahr.com

Dr. Daniel Flore, LL.M.
Hogan Lovells International LLP
Untermainanlage 1
60329 Frankfurt am Main
Deutschland
Tel: +49 69 962 36 0
daniel.flore@hoganlovells.com

BEWEIS ZU ERSUCHEN VON:   Andreas Floegel, Stellvertretender
Unternehmensleiter
TDK Electronics AG (ehemals EPCOS AG)
Rosenheimer Straße 141 e
81671 München
Bundesrepublik Deutschland
Tel: +49 89 54020 0
Fax: +49 89 54020 2453
info@epcos.com

**Die Grundlage für das Ersuchen des Bezirksgerichts wird nachstehend genauer aufgeführt.**

## ART UND ZWECK DES VERFAHRENS

Das Verfahren, für das der Beweis ersucht wird, betrifft eine Zivilklage, die vom Kläger, Arçelik, A.Ş. ("Arcelik") gegen den Beklagten, E. I. du Pont de Nemours and Company ("DuPont") eingereicht wurde, in der fahrlässige Falschdarstellung, die Verletzung des Gesetzes von Delaware über die Irreführung von Verbrauchern (Consumer Fraud Act) 6 Del. C. § 2511 ff., die fahrlässige Herstellung eines defekten Produktes sowie die unerlaubte Einmischung in einen Vertrag geltend gemacht wurden. Die Arcelik bringt vor, dass ein Produkt, Zytel® FR50, welches von einer Niederlassung von DuPont hergestellt wurde, in Folge eines angeblichen Defekts im Zytel® FR50 Feuer gefangen hat. Das Produkt Zytel® FR50 wurde nicht direkt an die Arcelik verkauft oder von ihr verwendet, um ihre Trockner herzustellen. Stattdessen verkaufte eine Niederlassung von DuPont Zytel® FR50 an die EPCOS India Private Limited, welches eine Niederlassung der EPCOS A.G. ("EPCOS") ist. Das Produkt wurde dann verwendet, um Kondensatoren herzustellen, die EPCOS an die Arcelik verkauft hat. Diese Kondensatoren von EPCOS sind daher die einzige Verbindung zwischen Zytel® FR50 und den elektrischen Trocknern von Arcelik.

## ZU ERHALTENDER BEWEIS

Dieses Rechtshilfeersuchen dient dazu, einen Beweis zu erhalten, der in direktem und notwendigem Zusammenhang mit dieser Klage steht, und er wird voraussichtlich in der Gerichtsverhandlung verwendet.

In der geänderten Klageschrift von Arcelik hat EPCOS angeblich die Kondensatoren hergestellt, die in den elektrischen Trommeltrocknern von Arcelik angeblich Brände verursacht haben. EPCOS ist jedoch keine Partei im Rechtsstreit von Arcelik. Da Arcelik behauptet hat, DuPont sei verantwortlich für die Brände, die in den Trommeltrocknern von Arcelik auftraten, ersucht DuPont einen Beweis zur Verwendung in der Gerichtsverhandlung, den die EPCOS, durch

ihren Vertreter Andreas Floegel, betreffend die Verwendung von Zytel® FR50 bei der Herstellung der Kondensatoren für Arcelik hat. Ein solcher Beweis umfasst die Ausführung der EPCOS-Kondensatoren sowie Informationen über die Tests, die Epcos Indien an den Kondensatoren und/oder ihren Bauteilen ausgeführt hat. Der beigefügte Anhang A beschreibt die spezifische Zeugenaussage, die DuPont ersucht.

Das Bezirksgericht ist überzeugt, dass der ersuchte Beweis für das anhängige Verfahren entscheidend ist und sehr wahrscheinlich im Gerichtsverfahren verwendet wird, um das Gericht bei der Lösung des vorgestellten Streitfalls zu unterstützen. Um bei der gerechten und wirksamen Lösung der Klage vor dem Gericht zu helfen, ersucht das Bezirksgericht im Interesse der Gerechtigkeit, dass Sie eine Verfügung gemäß den Gesetzen und Verfahren der Gerichte in Deutschland für das Einholen des Beweises für die Gerichtsverhandlung erlassen, um die Zeugenaussage von Andreas Floegel, Stellvertretender Unternehmensleiter, bezüglich der spezifischen Fragen, die in Anhang A angegeben sind, zu erzwingen.

Gemäß Paragraph 7 des Haager Übereinkommens über Beweise beantragt das Bezirksgericht, dass den gesetzlichen Vertretern von Arcelik (siehe vorstehend Vertreter des Klägers) und von DuPont (siehe vorstehend Vertreter des Beklagten) in den Vereinigten Staaten so bald wie möglich eine Kopie des unterzeichneten Rechtshilfeersuchens ausgehändigt wird. Es wird ebenfalls beantragt, dass diese gesetzlichen Vertreter so bald wie möglich über die Zeit und den Ort zur Bereitstellung, oder alternativ zur Prüfung der Dokumente und zur Vernehmung jeglicher Zeugen, wie es das deutsche Gesetz zulässt, informiert werden. Falls möglich, wird beantragt, dass diesen gesetzlichen Vertretern mindestens dreißig (30) Arbeitstage vor dem für die Prüfung oder Vernehmung festgesetzten Datum eine Mitteilung zugeht.

| | |
|---|---|
| ETWAIGES ERFORDERNIS, DASS DER BEWEIS UNTER EID ODER MIT EIDESGLEICHER BEKRÄFTIGUNG UND JEGLICHER BESONDERER ZU VERWENDENDER FORM AUFGENOMMEN WIRD: | Es wird beantragt, dass der Zeuge vor Beantwortung der Fragen unter Eid genommen wird. Falls der Zeuge nicht unter Eid genommen werden kann, wird beantragt, dass der Zeuge die Fragen so beantwortet, wie es durch das örtliche Recht zur Aufnahme von Beweisen vorgesehen ist, einschließlich der Bestimmungen, durch die die Richtigkeit oder die mündliche Zeugenaussage sichergestellt wird. |
| SPEZIELLE ZU BEFOLGENDE VERFAHREN ODER VORGEHEN (PARAGRAPH 9): | Es wird beantragt, dass es (a) den gesetzlichen Vertretern der Klägerin und des Beklagten in den Vereinigten Staaten gestattet wird, zur Vernehmung des Zeugen anwesend zu sein und ihre Fragen gemäß deutschem Recht am Oberlandesgericht München direkt an den Zeugen zu richten; (b) dass der Zeuge vereidigt wird und ein Zeugnis unter Eid abgibt, so dass die Zeugenaussage ein zulässiger Beweis in dem Gerichtsverfahren im Bezirksgericht der Vereinigten Staaten gemäß der Bundesregelung für Beweise 804(b)(1) ist; (c) dass die Vernehmung vor einem Protokollführer bei Gericht, der in einem oder mehreren Staaten der Vereinigten Staaten lizensiert ist, einem Prüfer Ihres Gerichts oder einer solchen anderen Person, die Ihr Gericht benennt, erfolgt; (d) dass die Antworten des Zeugen vorläufig von der Person, die von Ihrem Gericht zu bestellen ist, aufgezeichnet werden und dass die Aufzeichnung der Anhörung in Form eines wörtlichen Transkripts erstellt wird; (e) dass der Zeuge so bald wie möglich vernommen wird; und (f) dass das Gericht alle verfügbaren Maßnahmen zum Schutz der Vertraulichkeit der während der Zeugenaussage erhaltenen Informationen ergreift. |

7

ANTRAG AUF BENACHRICHTIGUNG ÜBER DIE ZEIT UND DEN ORT FÜR DIE AUSFERTIGUNG DER ANTRÄGE UND DER IDENTITÄT UND ADRESSE JEDER ZU BENACHRICHTIGENDEN PERSON:

Es wird beantragt, dass den gesetzlichen Vertretern der Parteien in den Vereinigten Staaten, die vorstehend angegeben wurden, so bald wie möglich eine Kopie des ausgefertigten Rechtshilfeersuchens zugestellt wird.

Es wird ferner beantragt, dass die gesetzlichen Vertreter der Klägerin und der Beklagten in den Vereinigten Staaten so bald wie möglich über die Zeit und den Ort zur Prüfung der Dokumente und zur Vernehmung jeglicher Zeugen informiert werden. Falls möglich, wird beantragt, dass diesen gesetzlichen Vertretern mindestens dreißig Arbeitstage vor dem für die Vernehmung festgesetzten Datum eine Mitteilung zugeht.

SPEZIFIKATION DES SONDERRECHTS ODER DER PFLICHT, DIE AUSSAGE GEMÄSS DEM GESETZ DES URSPRÜNGLICHEN STAATES ZU VERWEIGERN:

Das Sonderrecht oder die Pflicht, die Aussage in den Vereinigten Staaten zu verweigern, wird von der Bundeszivilprozessordnung, den bundesrechtlichen Beweisregelungen und anderen geltenden Regelungen der Vereinigten Staaten geregelt, einschließlich des Falls, dass eine solche Aussage (1) den Zeugen einer echten und erheblichen Gefahr der strafrechtlichen Verantwortlichkeit in den Vereinigten Staaten aussetzen würde, oder (2) eine vertrauliche und unter das Zeugnisverweigerungsrecht fallende Kommunikation zwischen dem Zeugen und seinen oder ihren jeweiligen Anwälten offenbaren würde.

DIE ENTSTANDENEN GEBÜHREN UND KOSTEN, DIE GEMÄSS DEM ZWEITEN ABSATZ VON PARAGRAPH 14 ODER GEMÄSS PARAGRAPH 26 DES ÜBEREINKOMMENS ERSTATTUNGSFÄHIG SIND, WERDEN GETRAGEN VON:

Zu gleichen Teilen beiden Parteien in dem Maße, wie solche Gebühren gelten. Bitte kontaktieren Sie die Vertreter der Parteien in den Vereinigten Staaten unter Verwendung der Kontaktinformationen, die vorstehend angegeben sind, um alle notwendigen finanziellen Vorkehrungen zu treffen.

8

Das Bezirksgericht ersucht, dass jegliche Fragen oder Ersuchen nach Informationen betreffend dieses Ersuchen an die Vertreter der Parteien in den Vereinigten Staaten, wie vorstehend angegeben, gerichtet werden. Es wird angesichts der Bedeutung des ersuchten Beweises ergeben beantragt, dass diesem Rechtshilfeersuchen höchste Beachtung geschenkt wird. Soweit irgendein Teil des Ersuchens nicht gewährt werden kann, wird ergeben beantragt, dass die restlichen Teile gewährt werden. Dieses Gericht versichert den Gerichtsbehörden in Deutschland im Gegenzug, dass es in ähnlichen Fällen auf ähnliche Weise helfen wird und versichert, den Gerichtsbehörden seine höchste Beachtung zu schenken.

DATUM: _____, 2019

Unterschrift und Siegel der
ersuchenden Behörde:
                                                _____
                                                Der Ehrenwerte Leonard P. Stark
                                                Oberster Richter am Bezirksgericht
                                                der Vereinigten Staaten
                                                Bezirksgericht der Vereinigten Staaten für
                                                den Bezirk Delaware
                                                Wilmington, Delaware
                                                Vereinigte Staaten von Amerika

DATUM: _____

Unterschrift und Siegel der
ausfertigenden Behörde:              Der Ehrenwerte:_____
                                              Paragraph 2 Zuständige Behörde

9

<u>ANHANG A</u>

**THEMEN DER ERSUCHTEN ZEUGENAUSSAGE VON ANDREAS FLOEGEL**

Das Bezirksgericht ersucht, dass Andreas Floegel zu den nachstehend aufgeführten Fragen auf Grundlage seines Wissens für den Zeitraum von 2005 bis 2013 befragt wird:

1.      Wie ist der "obere Kunststoffteil" des Kondensators EPCOS B32332 ausgeführt?

2.      Wie sah der Prozess bei EPCOS für die Auswahl von Materialien zur Verwendung in dem "oberen Kunststoffteil" des Kondensators EPCOS B32332 aus?

3.      Warum wählte EPCOS Zytel® FR50 zur Verwendung in dem "oberen Kunststoffteil" des Kondensators EPCOS B32332? Wurden irgendwelche anderen Materialien in Betracht gezogen? Wenn dies der Fall war, welche Materialien?

4.      War Arcelik in irgendeiner Weise an der Auswahl von Zytel® FR50 zur Verwendung im "oberen Kunststoffteil" des Kondensators EPCOS B32332 beteiligt? Wenn dies der Fall ist, inwiefern war Arcelik beteiligt?

5.      Welche technischen Informationen hat EPCOS Arcelik betreffend die Kondensatoren EPCOS B32332 (und ihrer Bauteile) gegeben?

6.      Hat EPCOS Arcelik irgendwelche technischen Informationen betreffend den "oberen Kunststoffteil" des Kondensators EPCOS B32332 gegeben? Wenn dies der Fall war, welche technischen Informationen wurden gegeben?

7.      Welche Informationen oder welchen Hinweis hat EPCOS Arcelik betreffend die Sicherheit oder Tauglichkeit zur Verwendung der Kondensatoren EPCOS B32332 (und ihrer Bauteile) in den elektrischen Trocknern von Arcelik gegeben?

8.      Welches waren die Vertragsbedingungen, einschließlich Kaufaufträge, zwischen EPCOS und Arcelik betreffend den Verkauf der Kondensatoren EPCOS B32332?

9.      Welche Informationen hat EPCOS Arcelik betreffend die Verwendungen von Kondensatoren EPCOS B32332 gegeben?

10.     Welche Informationen hat Arcelik EPCOS betreffend die Anforderungen an Kondensatoren (und ihrer Bauteile), die für Arcelik hergestellt werden sollten, gegeben?

11.     Welche Prüfungen hat EPCOS (oder irgendeine andere Stelle, die im Auftrag von EPCOS gehandelt hat) an den Kondensatoren EPCOS B32332 (und ihren Bauteilen) ausgeführt? Wie häufig wurden die Kondensatoren EPCOS B32332 (und ihre Bauteile) getestet? Welche Eigenschaften wurden getestet? Was waren die Ergebnisse dieser Tests?

12.     Welche Informationen oder welchen Hinweis hat EPCOS Arcelik betreffend das Testen der Kondensatoren EPCOS B32332 (und ihrer Bauteile) und die Notwendigkeit, dass Arcelik ihre eigenen Tests an den Kondensatoren (und ihren Bauteilen) oder Arceliks eigenem Produkt durchführen muss, gegeben?

13.     Welche Informationen hat Arcelik EPCOS betreffend Arceliks eigene Tests der Kondensatoren EPCOS B32332 (und ihrer Bauteile) oder von Arceliks eigenem Produkt gegeben?

14.     Hat EPCOS Arcelik bei der Untersuchung der Ursache von angeblichen Bränden von Arceliks Trocknern geholfen oder dabei mitgewirkt? Welche Informationen oder welche Unterstützung hat EPCOS Arcelik diesbezüglich zur Verfügung gestellt?

15.     Hat Arcelik jemals Ansprüche (entweder offiziell oder inoffiziell) gegenüber EPCOS geltend gemacht, die sich aus den angeblichen Trocknerbränden bei Arcelik ergaben? Wenn dies der Fall ist, haben EPCOS und Arcelik eine Vereinbarung oder Regelung von Ansprüchen, die Arcelik gegen EPCOS geltend gemacht hat, getroffen? Falls eine Vereinbarung getroffen wurde, welcher Art war die Vereinbarung und was waren die Bedingungen?

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARÇELIK, A.Ş., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-961-LPS |
| v. | ) |
| | ) |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) |
| | ) |
| Defendant. | ) |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE INDIAN CODE OF CIVIL PROCEDURE TO THE
APPROPRIATE JUDICIAL AUTHORITY IN INDIA**

In conformity with Section 78 read with Order XXVI Rules 19–22 of the Indian Code of Civil Procedure, 1908, the undersigned applicant has the honor to submit this request on behalf of the defendant in the above-entitled action, E. I. du Pont de Nemours and Company, located at 974 Centre Road, Wilmington, Delaware 19805, United States of America.

The United States District Court for the District of Delaware presents its compliments to the judicial authorities of India and requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter. This Court requests the assistance described herein as necessary in the interests of justice. The assistance requested is that the appropriate judicial authority of India compel the provision of the evidence specified in Schedule A to be used in pending civil proceedings before the District Court in the above-entitled action. The evidence sought has a direct and necessary link with this dispute, a civil law suit over which the District Court is currently presiding, and is expected to be used at trial in these actions.

1

| REQUESTING AUTHORITY: | United States District Court<br>for the District of Delaware<br>J. Caleb Boggs Federal Building<br>844 N. King Street<br>Unit 26, Room 6124<br>Wilmington, Delaware 19801-3555<br>United States of America |
|---|---|
| CENTRAL AUTHORITY OF THE<br>REQUESTED STATE: | The Registrar General<br>High Court of Judicature at Calcutta<br>3, Esplanade Row West, Kolkata<br>West Bengal, India – 700 001 |
| PERSON TO WHOM THE EXECUTED<br>REQUEST IS TO BE RETURNED: | Clerk of Court<br>United States District Court<br>for the District of Delaware<br>J. Caleb Boggs Federal Building<br>844 N. King Street<br>Unit 26, Room 6124<br>Wilmington, Delaware 19801-3555<br>United States of America |
| SPECIFICATION OF THE DATE BY<br>WHICH THE REQUESTING AUTHORITY<br>REQUIRES RECEIPT OF THE RESPONSE<br>TO THE LETTER OF REQUEST | The executed request should be returned as expeditiously as possible. |

NAMES AND ADDRESSES OF THE
PARTIES AND THEIR
REPRESENTATIVES:

Plaintiff:   Arçelik, A.Ş.
Karaağaç Caddesi No: 2-6
Sütlüce 34445
İstanbul
Turkey

Plaintiff's Representatives:    John M. Seaman, Esquire
                                ABRAMS & BAYLISS LLP
                                20 Montchanin Road, Suite 200
                                Wilmington, Delaware 19807
                                United States of America
                                Tel: +1 (302) 778-1000
                                seaman@abramsbayliss.com

                                Jonathan L. Greenblatt, Esquire
                                Christopher Ryan, Esquire
                                Jon C. Weingart, Esquire
                                Alexandra V. Filippova, Esquire
                                SHEARMAN & STERLING LLP
                                401 9th Street NW
                                Washington, DC 20004
                                United States of America
                                Tel: +1 (202) 508-8000
                                jgreenblatt@shearman.com
                                christopher.ryan@shearman.com
                                jon.weingart@shearman.com
                                sasha.filippova@shearman.com

Defendant:                      E. I. du Pont de Nemours and Company
                                974 Centre Road
                                Wilmington, Delaware 19805
                                United States of America

Defendant's Representatives:    Somers S. Price, Jr., Esquire
                                John A. Sensing, Esquire
                                Jennifer Penberthy Buckley, Esquire
                                POTTER ANDERSON & CORROON LLP
                                Hercules Plaza, 6th Floor
                                1313 N. Market Street
                                Wilmington, Delaware 19801
                                United States of America
                                Tel:  +1 (302) 984-6000
                                sprice@potteranderson.com
                                jsensing@potteranderson.com
                                jbuckley@potteranderson.com

                                Peter L. Haviland, Esquire
                                BALLARD SPAHR LLP
                                2029 Century Park East, Suite 800
                                Los Angeles, California 90067
                                United States of America
                                Tel: +1 (424) 204-4400
                                havilandp@ballardspahr.com

                                Ashish Prasad
                                Mahfooz Nazki
                                Kaustubh Mishra
                                Economic Laws Practice
                                801A 8th Floor Konnectus Tower
                                Bhavbhuti Marg
                                Opp. Ajmeri Gate New Delhi Railway Station
                                Nr. Minto Bridge
                                New Delhi 110 002
                                India
                                Tel: +91 11 4152 8400
                                ashishprasad@elp-in.com
                                mahfooznazki@elp-in.com
                                kaustubhmishra@elp-in.com

EVIDENCE TO BE REQUESTED FROM:    Natarajan Balakrishnan, Managing Director,
                                  or such other individual who, in the opinion
                                  of the Company, is conversant with the facts
                                  of the case.
                                  TDK India Private Limited (formerly EPCOS
                                  India Private Limited)
                                  Kulia Kancharapara, P.O. Netaji Subhas
                                  Sanatorium, Kalyani, Nadia, West Bengal,
                                  India – 741251
                                  Tel: +91-253-22-05-100

4

**The basis for the District Court's request is set forth in more detail below.**

## NATURE AND PURPOSE OF THE PROCEEDINGS

The proceeding for which evidence is sought concerns a civil action that has been filed by the plaintiff, Arçelik, A.Ş. ("Arcelik") against the defendant, E. I. du Pont de Nemours and Company ("DuPont") alleging negligent misrepresentation, violation of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2511 *et seq.*, negligent manufacture of a defective product, and tortious interference with a contract.   Arcelik contends that a product, Zytel® FR50, which was manufactured by a DuPont subsidiary, caught fire as a result of an alleged defect in the Zytel® FR50.   The Zytel® FR50 was not directly sold to Arcelik or used by it to manufacture its dryers. Instead, a DuPont subsidiary sold the Zytel® FR50 to EPCOS India Private Limited, now known as TDK India Private Limited ("TDK India"), which is a subsidiary of EPCOS A.G. ("EPCOS", now known as TDK Electronics AG).   The product was then used to manufacture capacitors that EPCOS sold to Arcelik.   These EPCOS capacitors are therefore the only connection between Zytel® FR50 and Arcelik's electric dryers.

## THE EVIDENCE TO BE OBTAINED

This Letter of Request is to obtain evidence that has a direct and necessary link with this action and is expected to be used at trial.

In Arcelik's Amended Complaint, EPCOS is alleged to have manufactured the capacitors that allegedly caused fires in Arcelik's electric tumble dryers.   The parties have determined that EPCOS did so at least in part through its subsidiary, TDK India.   TDK India is not, however, a party to this suit.   Because Arcelik has claimed that DuPont is responsible for the fires that occurred in Arcelik's tumble dryers, DuPont seeks evidence to use at trial that TDK India has regarding its use of Zytel® FR50 in manufacturing capacitors for Arcelik.   Such evidence includes the design

5

of the EPCOS capacitors, as well as information about testing that TDK India performed on the capacitors and/or their component parts.  The attached Schedule A describes the specific documents and testimony that DuPont seeks.

The District Court is satisfied that the evidence sought is critical to the pending proceeding and is likely to be used at trial to assist the Court in resolving the dispute presented.  To assist in the just and efficient resolution of the action before it, the District Court requests, in the interests of justice, that you issue an order, in accordance with the laws and procedures of the Courts of India for the acquisition of evidence for trial, and to obtain copies of the specific documents identified in Schedule A.  In addition, the District Court requests that you compel the testimony of Natarajan Balakrishnan, Managing Director, or such other individual who, in the opinion of TDK India, is conversant with the facts of the case and the information sought in Schedule A.

The District Court further requests that the United States legal representatives for Arcelik (see Plaintiff's Representatives, above) and DuPont (see Defendant's Representatives, above) be furnished as soon as practicable with a copy of the executed Letter of Request.  It is also requested that these legal representatives receive as soon as possible copies of the documents requested as permitted by Indian law.  It is further requested that these legal representatives be informed as soon as practicable of the time and place for examination of the witness as permitted by Indian law.  If possible, it is requested that notice be furnished to these legal representatives at least thirty (30) business days before the date set for the examination.

| ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED: | It is requested that the witness be placed under oath before answering questions.  In the event that the witness cannot be placed under oath, it is requested that the witness answer questions in such manner as provided by local law for taking evidence, including those provisions intended to ensure the veracity or oral testimony. |

6

SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED:

It is requested that (a) Plaintiff's and Defendant's United States legal representatives be allowed to be present for examination of the witness under oath according to the Indian Code of Civil Procedure and that the examination take place before a court reporter licensed in one or more states of the United States, an Examiner of your Court, or such other person as your Court shall appoint; (b) that counsel for Defendant be allowed to provide a list of questions to the Examiner that conform to the topics set forth in Schedule A to be asked the witness; (c) that the responses of the witnesses be recorded both by the court reporter and by a videographer; (d) that the witness sign the verbatim transcript or other record of his responses to the questions; (e) that the witness be examined as soon as practicable, preferably within a period of 12 weeks from the date of issuance of the Commission by this Court; and (f) that the Court shall take all available measures to protect the confidentiality of the information obtained during the testimony.

REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUESTS AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED:

It is requested that the parties' United States legal representatives identified above be furnished as soon as practicable with a copy of the executed Letter of Request.

It is further requested that the United States legal representatives for Plaintiff and Defendant be informed as soon as practicable of the time and place for examination of the documents and any witnesses. If possible, it is requested that notice be furnished to these legal representatives at least thirty business days before the date set for the examination.

| | |
|---|---|
| SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN: | The privilege or duty to refuse to give evidence in the United States is governed by the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable United States Rules, including if giving such evidence would (1) subject the witness to a real and appreciable danger of criminal liability in the United States, or (2) disclose a confidential and privileged communication between the witness and his or her respective attorneys. |
| THE FEES AND COSTS INCURRED WHICH ARE REIMBURSEABLE UNDER THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE CONVENTION WILL BE BORNE BY: | Equally by both parties, to the extent such fees apply.  Please contact the parties' United States representatives using the contact information provided above to make any necessary financial arrangements. |

The District Court requests that any questions or requests for information relating to this request be directed to the Indian representatives for the parties as provided above.  To the extent that any portion of the Request cannot be granted, it is respectfully requested that the remaining parts be granted.  This Court assures the Judicial Authorities in India that it will reciprocate with similar assistance in like cases and extends the Judicial Authorities the assurances of its highest consideration.

DATE: _____, 2019

Signature and Seal of the
Requesting Authority:

                                    _____

                                      The Honorable Leonard P. Stark
                                      Chief United States District Court Judge
                                      United States District Court for
                                      the District of Delaware
                                      Wilmington, Delaware
                                      United States of America

DATE: _____

Signature and Seal of the
Executing Authority:               Honorable:     _____

                                        High Court of _____

9

## SCHEDULE A

## TOPICS OF REQUESTED DOCUMENTS AND TESTIMONY FROM TDK INDIA PRIVATE LIMITED

The District Court requests that TDK India Private Limited ("TDK India") provide for examination Natarajan Balakrishnan, Managing Director, or such other individual who, in the opinion of TDK India, is conversant with the facts of the case and the below-listed subjects. The District Court further requests that TDK India provide true and correct copies of the documents in its possession relating to these topics and originating from the years 2005 through 2013:

1.      Schematics or drawings showing the design of the EPCOS B32332 model capacitor.

2.      The technical information that TDK India supplied to Arcelik relating to EPCOS B32332 capacitors (and their components).

3.      The contract, including purchase orders, between TDK India and Arcelik relating to the sale of EPCOS B32332 capacitors.

4.      Communications between TDK India and Arcelik concerning the uses of EPCOS B32332 capacitors.

5.      Communications between TDK India and DuPont relating to its contract with Arcelik or the requirements for capacitors to be manufactured for Arcelik.

6.      The requirements Arcelik communicated to TDK India for capacitors (and their components).

7.      A description of the testing completed for EPCOS B32332 capacitors (and their components), including the frequency of such testing, the properties tested, testing data, and test results.

8.      Communications between TDK India and Arcelik regarding testing of EPCOS B32332 capacitors (and their components) and the need for Arcelik to conduct its own testing of the capacitors (and their components) or Arcelik's own product.

9.      Communications between TDK India and Arcelik concerning the investigation into the cause of Arcelik's alleged dryer fires and any settlement of claims Arcelik made against EPCOS.